# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HEATHER HAVENS,

ELIZABETH ROBESON,

ANNA GRUNSETH,

and WILLIAM BOYKIN,

*Plaintiffs,*

v.

U.S. DEPARTMENT OF EDUCATION,
400 Maryland Avenue, SW
Washington, DC 20202

and

LINDA MCMAHON, in her official
capacity as SECRETARY OF
EDUCATION,
400 Maryland Avenue, SW
Washington, DC 20202

*Defendants,*

**Civil Action No.**

# COMPLAINT

**PRELIMINARY STATEMENT**

1.      Millions of student loan borrowers waited almost two years for repayment terms authorized by statute and regulation. During that time, court orders and injunctions prevented the implementation of the Save on a Valuable Education (SAVE) repayment plan and its attendant benefits to student loan borrowers.

2.      On February 27, 2026, the District Court for the Eastern District of Missouri lifted the only legal barrier preventing borrowers from full access to these benefits by dismissing a challenge to the SAVE Final Rule. Borrowers in the SAVE plan are due immediate relief under the regulations promulgated by the Department of Education and ratified by Congress.

3.      The Department of Education, by denying Plaintiffs' requests for relief and through its statements in court filings, press releases, and on its website, has made clear that it refuses to provide affordable student loan repayment as required by the regulation and statute.

4.      Congress designed the federal student loan programs and repayment options to drive economic mobility and protect borrowers from facing a lifetime of unaffordable student loan debt. Throughout the history of the Direct Loan program, Congress has directed the Department to offer income-driven repayment (IDR) plans that tie a borrower's monthly payment to their income and discharge any remaining balance after a specified number of qualifying monthly payments. In all instances, this debt discharge (also known as "loan forgiveness" or "loan cancellation") occurs automatically, by operation of IDR regulations. Borrowers need not apply to have their loans cancelled once they have satisfied the eligibility criteria. Borrowers do not owe the government any additional principal or interest payments beyond this eligibility date.

5.      In 2023, the Department of Education, consistent with this mission to ensure that pursuing an education did not become a life-long economic burden, finalized a new student loan repayment plan that provided an affordable way to finance higher education for millions of

borrowers. The Saving on a Valuable Education ("SAVE") plan modifies existing repayment terms, reducing monthly costs for consumers and simplifying the burden of program administration for the Department of Education. *See* Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program, 88 Fed. Reg. 43,820. By making higher education financing significantly more affordable, the SAVE Plan drives economic mobility and reduces student loan delinquency and default, just as Congress intended.

6.      Nearly a year after the Department published the SAVE Final Rule and implemented significant portions of the new repayment plan – including discharging loans for tens of thousands of borrowers in SAVE – a group of states, led by the Attorney General of Missouri, sued to stop implementation of the Save Final Rule, arguing that the Administration exceeded its executive authority in creating the SAVE Plan. On June 24, 2024, the district court preliminarily enjoined the Department from discharging any additional debt under the SAVE Plan. *Missouri v. Biden*, 738 F.Supp.3d 1113, 1124 (E.D. Mo. 2024). On appeal the Eighth Circuit expanded the preliminary injunction and prevented the Department from implementing the SAVE Final Rule in its entirety. *Missouri v. Biden,* 112 F.4th 531, 538 (8th Cir. 2024).

7.      On February 27, 2026, the District Court dismissed the lawsuit, finding that the Administration's failure to defend the plan robbed the court of jurisdiction, as there was no longer a "live case or controversy" between the parties. Order of Dismissal, *Missouri v. Trump,* 4:24-cv-00520, ECF 94. By dismissing the lawsuit, the Court removed any legal barrier preventing borrowers from full access to the benefits of the rule, including the immediate, automatic discharge of debts for eligible borrowers.

8.      Due to the timing of the injunction, tens of thousands of borrowers are likely eligible today for immediate loan discharge and millions more are eligible for lower monthly

payments.

9.     In the period between the Eighth Circuit's opinion and the District Court's subsequent dismissal of the case, Congress intervened.

10.    The One Big Beautiful Bill Act ("OBBBA") ratified the Department of Education's earlier rulemaking by acknowledging and enshrining the statutory provision authorizing the SAVE Plan. Rather than repeal the Department's authorization to offer SAVE—a change in law debated by Congress and passed by the House of Representatives in an earlier version of this legislation—Congress preserved the Department's authority until July 1, 2028, establishing a long transition period for borrowers currently enrolled in all IDR the plans based on this statute, including SAVE.

11.    As of this filing, the Department maintains a valid Final Rule creating the SAVE Plan, Congress has considered the statutory scheme and provided for a smooth transition away from SAVE in statute at a future date, and there is no court order preventing borrowers from receiving those benefits. Today, the SAVE plan is the law on the books.

12.    The government is required to grant immediate relief to borrowers eligible for loan discharge and begin implementing the other provisions of the SAVE Final Rule.

13.    However, the government has made clear in court filings, public statements, website language, and borrower-specific denials or non-processing, that it is refusing to administer relief required under operative law and regulation.

14.    The burden of this misconduct is already being felt by Plaintiffs. Plaintiffs were denied relief they are entitled to including lower monthly payments and loan discharge. These denials and the Department's inaction may force these Plaintiffs, and the thousands of borrowers like them, into making a decade or more of additional payments – ultimately paying thousands of dollars in extra costs on loans that should be discharged. They also are representative of the

millions of individual borrowers either stuck in involuntary forbearances watching their loan discharge timeline slip further away or saddled with unaffordable payments while the Department of Education prevents them from entering SAVE.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§ 1331, the Mandamus Act, 28 U.S.C. § 1361, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Defendants reside in D.C. and because a substantial part of the events giving rise to these claims occurred in this District.

## PARTIES

17.    Plaintiff Heather Havens is a resident of California. She is enrolled in SAVE and is due for discharge on two of her loans today. On these two loans, Havens has made 303 qualifying payments out of the required 300. Under the existing SAVE regulations or the prior REPAYE regulations, she is entitled to loan discharge with an effective date in November or December of 2025. On the two additional loans that may not be immediately eligible for discharge, Havens is entitled to enroll in the SAVE Plan which would lower her monthly payments significantly.

18.    Plaintiff Elizabeth Robeson is a resident of South Carolina. She is due loan discharge for her two outstanding loans under the SAVE Plan today. On these loans, Robeson has made 325 qualifying payments out of the required 216 required. Under the existing SAVE regulations or the prior REPAYE regulations, she is entitled to have her loans cancelled with an effective date in April 2024.

19.    Plaintiff Anna Grunseth is a resident of Wisconsin. She is currently enrolled in

SAVE and would be due for discharge next month but for the prior injunction. Grunseth has made 105 eligible payments toward the 120 payments she needs to reach loan discharge under SAVE. Under the existing regulations, she is entitled to buy back her final 15 payments from the 20 months of involuntary forbearance she's been in since the start of the injunction. In contrast to Havens and Robeson who are entitled to automatic discharges by operation of the SAVE regulations, Grunseth has both procedural and substantive rights that, when taken together, should allow her to make a single $165 payment to the Department and receive a loan discharge.

20.    Plaintiff William Boykin is a resident of Pennsylvania. He is entitled to re-enroll in SAVE and buy back prior periods of forbearance that would give him enough eligible payments to have his loan cancelled. Boykin was 15 months away from completing the 132 payments required of him for loan discharge under the SAVE plan when it was preliminarily enjoined in 2024. Like Grunseth, Boykin should immediately be allowed to buy back these missing payments to satisfy the SAVE Plan's loan discharge requirement.

21.    Defendant United States Department of Education is a federal agency with its principal place of business at 400 Maryland Avenue SW, Washington, D.C. Defendant is responsible for administering federal student loan and grant programs in the United States.

22.    Defendant Linda McMahon is the Secretary of Education (Secretary). Plaintiffs sue Secretary McMahon in her official capacity. Secretary McMahon is charged with the supervision and management of all decisions and actions of the United States Department of Education, and so all allegations in this complaint against the Department of Education are made against her.

## BACKGROUND

### *Income-Driven Repayment Plans*

23.     In 1965, Congress enacted the Higher Education Act (HEA) because "every citizen is entitled to an education to meet his or her full potential *without financial barriers*." 20 U.S.C. § 1221-1(2) (emphasis added). In other words, Congress aimed to "increase educational opportunities" and help students access the "benefits of postsecondary education." *Biden v. Nebraska*, 143 S. Ct. 2355, 2362 (2023).

24.     In 1994, Congress amended the HEA and created the William D. Ford Federal Direct Loan Program. This program increased the government's ability to directly lend money to students. As a result, the student loan system shifted from one mostly involving private lenders to one in which the U.S. government became a significant creditor of student loans.

25.     Today, the United States Government, through the Department, is the country's largest student loan creditor. There are roughly 42.8 million federal student loan borrowers, with approximately $1.833 trillion outstanding in debt.

26.     Congress has provided access to income-driven repayment options for Direct Loan borrowers since the program's inception. These programs have fallen under two statutory grants of authority; income-based repayment (IBR) and income-contingent repayment (ICR).

27.     Congress directed the Secretary of Education to offer IBR plans, saying: the "Secretary shall carry out a program under which a borrower . . .who has a partial financial hardship . . . may elect, during any period the borrower has the partial financial hardship, to have the borrower's aggregate monthly payment for all such loans not exceed" a payment formula set by statute. 20 U.S.C. § 1098e(b).

28.     Second, Congress required that the Department of Education provide access to, "an income contingent repayment plan" for Direct Loan borrowers (except Direct PLUS loan

borrowers). 20 U.S.C. § 1087e(d)(1)(D). This statute directs the Secretary to establish, by regulation, a payment schedule that varies in relation to "the appropriate portion of the annual income of the borrower (and the borrower's spouse, if applicable)…" 20 U.S.C. § 1087e(e)(1)(D).

29.    Since first authorized by statute, the Department of Education has conducted numerous rulemakings establishing or modifying the three primary ICR based repayment plans: the Income-Contingent repayment plan, Pay as You Earn (PAYE), and Revised Pay as You Earn (REPAYE). The REPAYE Plan was renamed SAVE in the 2023 Final Rule (SAVE Final Rule) and the two names are used interchangeably in the existing regulation.[1]

30.    In every instance, the regulations promulgated to offer IDR plans provide both immediate payment relief by tying monthly payments to borrowers' income and a path to automatic loan discharge after a specified number of qualifying monthly payments. These repayment options, by design, provide payment relief and debt discharge schemes.

31.    The Department finalized regulations establishing REPAYE under the Secretary's ICR statutory authority in 2015. The plan was modeled on the existing PAYE plan, but allowed all Direct Loan borrowers to enroll regardless of when they took out the loans. By contrast, PAYE eligibility is restricted to what the regulation referred to as "new borrowers." For many borrowers, REPAYE reduced monthly payments, provided subsidies for interest accrual, and cancelled Direct Loan balances after 20 or 25 years of repayment, among other benefits.

32.    The Department has acknowledged its mandatory obligation to offer an ICR-based plan to Direct loan borrowers. *See* 90 Fed. Reg. 3695 (Jan. 15, 2025) (explaining that certain changes were being made to meet the "Department's statutory obligation under the HEA to offer borrowers an income-contingent repayment plan.").

---

[1] When discussing benefits or eligibility for SAVE/REPAYE under the 2023 SAVE Final rule this complaint refers to the SAVE Plan or SAVE Benefits. For eligibility or benefits under the prior 2015 Final Rule, the complaint refer to the REPAYE Plan or REPAYE Benefits.

### *Saving on a Valuable Education*

33.     The Department issued the SAVE Final Rule to, "create a stronger safety net for Federal student loan borrowers, helping more borrowers avert delinquency and default … afford their Federal loan payments, while also increasing homeownership, retirement savings, and small business formation."

34.     In the Rule, the Department renamed the "REPAYE Plan" the "SAVE Plan," and made changes so that it would be the best option for the bulk of student loan borrowers. *See* Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program, 88 Fed. Reg. 43,820.

35.     The SAVE Plan increases the amount of income protected from the monthly payment calculation from 150% to 225% of the federal poverty line, waives unpaid interest, reduces the time consumers who borrowed less than $22,000 need to repay their loans under an IDR plan, and reduces undergraduate borrowers' payments to five percent of discretionary income.

36.     These changes provide lower monthly payments, faster paths to debt discharge, and no accumulation interest – dramatically easing the financial burden of federal student loans for borrowers with access to the Plan.

37.     Many provisions of the Rule were designated for early implementation and went into effect in 2023. *See* 88 Fed. Reg. 43,820; 88 Fed. Reg. 72,685.

38.     As a result, millions of student loan borrowers enrolled in the SAVE Plan in 2023 and the first half of 2024.

### *Missouri v. Trump*

39.     In April 2024, a group of states sued the Department to challenge the Rule in the U.S. District Court for the Eastern District of Missouri. *Missouri v. Trump,* 4:24-cv-00520, (E.D. Mo. Apr. 9, 2024). On June 24, 2024, the U.S. District Court for the Eastern District of Missouri

preliminarily enjoined the Department from providing loan discharge under the SAVE Rule. *Missouri v. Biden*, 738 F.Supp.3d 1113, 1124 (E.D. Mo. 2024).

40.     On cross appeal, the Eighth Circuit initially granted to states' emergency motion for an administrative stay and preliminary injunction prohibiting the United States from "any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions." *Missouri v. Biden,* 112 F.4th 531, 538 (8th Cir. 2024).

41.     On February 18, 2025, the Eighth Circuit Court of Appeals issued its opinion on the preliminary injunction. It affirmed the District Court's injunction and expanded it to further enjoin the entire SAVE Rule. *Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025).

42.     Rather than reverting to the prior rule implementing the Income-Contingent Repayment requirements of the Higher Education Act, the Department also continued to arbitrarily deny borrowers' access to the precursor to SAVE, Revised Pay as You Earn (REPAYE).

43.     On December 9, 2025 the Department of Education and plaintiff states jointly announced a proposed settlement to the case which would, among other things, prevent the Department from forgiving loans under the SAVE Plan using its ICR authority and enrolling new borrowers in SAVE.[2]

44.     In addition, the proposed settlement would obligate the Department to engage in a rulemaking process to formally repeal SAVE and sunset the other two repayment plans authorized under the ICR statutory grant of authority – ICR and PAYE.

45.     The proposed settlement went even further than restricting access to SAVE, it

---

[2] Press Release, U.S. Dep't of Ed., U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan (Dec. 9, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-announces-agreement-missouri-end-biden-administrations-illegal-save-plan.

purported to prohibit the Department from enforcing, "the original REPAYE rule or otherwise enroll any borrowers, including SAVE borrowers, into the original REPAYE Plan."

46.     Without presenting the settlement agreement to the Court, the Department and plaintiff states jointly asked the District Court to enter a final judgment on the merits of the case vacating the Final Rule.

47.     On February 27, 2026, the District Court did not take the parties up the invitation. Rather, citing the lack of adversity between the parties – evidenced, in part, by the fact that no attempt has yet been made to promulgate new regulations in order to phase out the SAVE Plan, the Court dismissed the case as moot. Order of Dismissal, *Missouri v. Trump,* 4:24-cv-00520, ECF 94.  No court has made a final ruling on the merits of the SAVE plan.

48.     The states requested that the District Court stay the dismissal on March 2 which the court denied on March 4. The states subsequently noticed their appeal of the dismissal the same day.  No injunction currently bars relief for Plaintiffs, who were entitled to relief by operation of law as soon as the injunction was dismissed.

### *One Big Beautiful Bill Act*

49.     The One Big Beautiful Bill Act (OBBBA) became law on July 4, 2025, making significant changes to student loan repayment.

50.     In effect, the OBBBA directed the Department to end all ICR plans authorized under section 455(e) by July 1, 2028. The legislation treats SAVE and other ICR plans equally.

51.     Despite the prevalence of the SAVE plan in the media, and the opportunity and desire to reform student loan repayment, the OBBBA did not terminate or otherwise invalidate the SAVE plan specifically.

52.     It also did not repeal section 455(e) immediately—an option debated by Congress during the consideration of the OBBBA and included in an earlier version of this legislation passed by the U.S. House of Representatives. Ultimately, Congress elected to preserve section

455(e) of the Higher Education Act for nearly three full calendar years following the enactment of OBBBA.

53.    It is clear that, if Congress intended to repeal the SAVE Plan effective immediately, it would have done so.  It did not. In fact, by grouping all the ICR related repayment plans together the OBBBA provides for the continuation of the benefits under these plans during the transition period to the new repayment system envisioned by the statute.

### *Department of Education Rulemaking*

54.    The Department of Education moved quickly to implement some of these statutory changes. Within a month of the OBBBA's passage, the Department of Education announced it was establishing a negotiated rulemaking committee to implement changes to Title IV, HEA programs.

55.    The committee convened and negotiated on the Department's rules related to student loan repayment between September 29 and October 3, 2025.

56.    The committee included representatives from the Department and a student loan servicer trade association, among other constituencies. This included the President of the National Council of Higher Education Resources, a trade association representing student loan servicers, guaranty agencies, lenders, secondary markets, and private collection agencies.

57.    The committee reached consensus, which requires that none of the members dissent to the proposed regulatory text.

58.    The Department published the Notice of Proposed Rulemaking (NPRM) on January 30, 2026, using the consensus regulatory text as required by the negotiated rulemaking process.

59.    In addressing borrower eligibility for IDR plans, the NPRM considered and, in fact, modified borrower eligibility for SAVE under § 685.209(c)(2). These modifications specified that Direct Loan borrowers will remain eligible to repay their loans under the REPAYE

plan through June 30, 2028, provided they do not take out any new loans after July 1, 2026.

60.    In effect, the proposed rule – as agreed to by the Department of Education – sets a clear termination date for SAVE eligibility of June 30, 2028 - in line with the OBBBA requirements.

61.    The NPRM otherwise leaves the terms of SAVE largely in place, including § 685.209(k)(6) which allows borrowers to 'buy back' credit toward discharge for certain months in which the borrower was in an otherwise ineligible deferment or forbearance.

62.    To date, ED has not taken any regulatory action to terminate the SAVE plan earlier than the statutorily defined end date, June 30, 2028.

## FACTUAL ALLEGATIONS

### *Millions of Borrowers Benefit Under SAVE*

63.    The SAVE plan provides significant financial benefits to Direct Loan borrowers that they have not receive during the preliminary injunction or under any alternative repayment plan.

64.    Consumers are entitled to loan discharge based on their original loan balance and years in repayment. Specifically, the SAVE Final Rule provides loan discharge for borrowers who received loans for undergraduate study after 240 monthly payments, or after 300 monthly payments for borrowers who are repaying at least one loan received for graduate or professional study.

65.    Notwithstanding this general loan discharge timeline, the Final Rule provides for loan discharge after 120 monthly payments if the borrower's total original principal balance on all loans that are being paid under SAVE was less than or equal to $12,000, plus an additional 12 monthly payments for every $1,000 if the total original principal balance is above $12,000.

66.    Many of the more than 7 million borrowers enrolled in the SAVE Plan are

entitled to loan discharge under the terms of the plan immediately.

67.    The discharge of eligible borrowers' loans occurs automatically. The Department does not require borrowers to apply for loan discharge. The right to this debt discharge vests immediately upon a borrower's satisfaction of the eligibility criteria described above.

68.    Under the longstanding regulatory requirements, some periods of forbearance and deferment, including the current forbearance borrowers enrolled in SAVE are in, do not count toward IDR loan discharge.

69.    However, under the SAVE Final Rule, borrowers may obtain credit toward cancellation for these otherwise ineligible periods of forbearance and deferment if they make an additional payment equal or greater than their current IDR payment.

70.    Borrowers can functionally "buy back" periods of deferment or forbearance that occurred after July 1, 2024 and that ended within three years of the date of the buy back.

71.    In effect, the SAVE Final Rule allows any borrower who was enrolled in SAVE during the pendency of the Eighth Circuit's preliminary injunction to buy back those periods in which they were placed into involuntary forbearance at the rate they are paying under their existing IDR plan.

72.    For borrowers still enrolled in SAVE, the buy back amount is the SAVE payment amount.

73.    For borrowers enrolled in other IDR plans, the buy back amount is the amount owed under the appropriate calculation of monthly payment under those plans.

74.    Finally, the SAVE Plan provides significant reductions in monthly payments for borrowers by increasing the amount of protected income and reducing the percentage of income required.

75.    Following the dismissal of *Missouri v. Trump*, borrowers are entitled to the full

benefits provided under the SAVE Final Rule.

### The Department is Denying SAVE Benefits and Refusing to Enforce the Law

76.     Following the dismissal of *Missouri v. Trump*, the Department of Education failed to follow the law by affirmatively denying Plaintiffs benefits and failing to take any action to implement SAVE.

77.     As of this filing, the Federal Student Aid website is erroneously informing borrowers that the non-existent injunction continues to prevent it from implementing the SAVE Plan.

78.     On March 5, 2026, the plaintiffs in *Missouri v. Trump* filed an appeal of the District Court's dismissal. In the filing, plaintiffs represented that the United States agreed to the relief requested in the motion which included a request that the court stay the dismissal order, reviving the preliminary injunction, or reverse the dismissal and direct the District Court to enter final judgement against the United States.

79.     One Plaintiff, Anna Grunseth, is enrolled in SAVE and would be due for discharge next month but for the prior injunction. She borrowed $8,583 to attend Mid-State Technical College in Wisconsin Rapids, WI in 2014. Grunseth made 105 eligible payments toward the 120 payments she needs to reach loan discharge under SAVE. Under the existing SAVE regulations, she is entitled to buy back the periods of forbearance she was forced into following the injunction. Under this program, she should immediately be allowed to buy back her missing 15 payments from the 20 months of forbearance she's been in since July of 2024 for $165.

80.     If the Department of Education is not required to follow the law, Grunseth could be forced to continue making payments for more than 15 years under the best available IDR option.

81.     The Department of Education denied Grunseth IDR buy back and subsequent loan discharge under SAVE.

82.     Grunseth called the Department's "Loan Discharge and Forgiveness Customer Support" line on March 6, 2026, to ask about IDR buy back and SAVE loan discharge.

83.     The agent informed Grunseth that IDR buy back was not available.

84.     The agent said that "The SAVE program is not something we acknowledge at the moment," and that "we do not recommend you stay in the SAVE program."

85.     When Grunseth pressed further and informed the agent that she heard SAVE was back in effect because of the recent court decision, the Department of Education agent state that was not true.

86.     Plaintiff William Boykin is entitled to enroll in the SAVE Plan and buy back prior periods of forbearance that would give him enough eligible payments to have his loan cancelled. Boykin was 15 months away from completing the 132 payments required of him for loan discharge under the SAVE plan when it was preliminarily enjoined in 2024. Believing public statements that the SAVE plan was illegal and that it would not be available again, Boykin applied for a different repayment plan in January 2025, which was not processed until January of 2026. In total, Boykin remained in an involuntary forbearance for 17 months.

87.     Like Grunseth, Boykin is entitled to buy back those months of forbearance to reach the required number of payments for discharge.

88.     If the Department of Education is not required to follow the law, Boykin could be forced to make payments for more than 10 years under the best available IDR option.

89.     On March 6, 2026, Boykin attempted to change his repayment plan to SAVE using the IDR application on studentaid.gov but neither SAVE nor REPAYE was available

online. There was no other notice or communication about its availability and, in fact, the website informed him that the SAVE plan was enjoined by the Eighth Circuit.

90.    Plaintiff Heather Havens is enrolled in SAVE and due for discharge on two of her loans today. On these two loans, Havens has made 303 qualifying payments out of the required 300 for her consolidation loans used to pay off debt she incurred to attend the University of California, Santa Cruz and University of Washington. Under the existing SAVE regulations or prior REPAYE regulations, she is entitled to have her loans cancelled with an effective date in November or December of 2025.

91.    If Havens changed repayment plans, she would also be entitled to loan discharge, but the effective date would be the month she was enrolled in the new payment plan.

92.    The American Rescue Plan Act excluded discharge of student loan debt from taxation through December 31, 2025. The Department determines whether to issue a 1099-C form showing taxable income based on discharged debt, based on the *effective* date of the discharge rather than the date the actual date of discharge. Plaintiffs understand that the effective date of discharge cannot be any earlier than the date of enrollment in the IDR plan that makes the borrower eligible for discharge.

93.    If the Department of Education is not required to follow the law, Havens may be forced to pay income taxes on loan discharge that she would not otherwise owe.

94.    The Department of Education denied Havens's loan discharge under SAVE.

95.    Havens called the servicer of her federal student loan, Aidvantage at 12:16 p.m. on March 6, 2026. Havens explained that she was eligible for loan discharge under the SAVE plan and asked how she could apply. The agent explained that Havens did not need to apply for IDR loan discharge. That if she was eligible under one of the plans, it would be processed automatically.

96.    Havens asked specifically about loan discharge under SAVE. In response, the agent told Havens that the SAVE plan was no longer being offered, so Havens would have to apply for another IDR plan.

97.    Finally, Havens is entitled to enroll in the SAVE plan to repay the remaining balance on the two loans do not already qualify for loan discharge. If the Department is not required to follow the law, Havens could be forced to pay more than $500 per month more under the best available IDR option.

98.    Plaintiff Elizabeth Robeson is due loan discharge for her two outstanding loans under SAVE today. On these loans, Robeson has made 325 qualifying payments out of the 216 required. Robeson remaining student loan debt stems from her graduate study at the University of Mississippi where she borrowed less than $12,000, but today she owes over $90,000. Under the existing SAVE regulations or prior REPAYE regulations, she is entitled to have her loans cancelled with an effective date in April of 2024 – when she first enrolled in SAVE.

99.    Like Havens, changing repayment plans could have significant tax consequences.

100.    Today, Robeson relies on her part-time job and Social Security payments to make ends meet. Her adjusted gross income for 2025 was approximately $8,000.

101.    If the Department of Education is not required to follow the law, Robeson may be forced to pay income taxes on $90,000 of loan discharge – an amount that may be more than she makes in an entire year.

102.    The Department of Education denied Robeson loan discharge under SAVE.

103.    Robeson called the Department of Education's "Loan Discharge and Forgiveness Customer Support" on March 4, 2026.

104.    Robeson inquired about loan discharge under SAVE. In response, the agent

informed her that the only way to get loan discharge would be to apply for another IDR plan.

105.    The agent explained that she knew nothing about the injunction being lifted, nor was she updated about the status of the SAVE plan following the dismissal of *Missouri v. Trump*.

106.    Millions of borrowers are entitled to lower monthly payments under SAVE. Many of these borrowers will likely default on their loans as a result of the Department's decisions not to follow the law.

### *Department of Education Refuses to Implement (or Repeal) Save Plan*

107.    In February 2025, the Department mischaracterized the state of the law when it said that "the Eighth Circuit Court of Appeals held that the SAVE Plan is unlawful." That statement overstated the procedural posture because, while the Eighth Circuit affirmed preliminary injunctive relief and addressed likelihood of success, no final merits judgment was entered in the case.

108.    The Department has repeatedly made statements contrary to law regarding the SAVE Plan, demonstrating that Plaintiffs' injury is immediate and that the Department of Education refuses to implement the SAVE Final Rule.

109.    For example, a December 9, 2025, press release from the Department repeatedly refers to the SAVE plan as the "illegal SAVE plan" despite the fact that no court has found the Plan to be illegal on the merits, and Congress has taken no action to immediately alter the SAVE Plan.

110.    The Department *thanked* the State of Missouri and other plaintiffs for bringing the lawsuit that ultimately was dismissed for lack of subject matter jurisdiction.[3] As the District

---

[3] Press Release, U.S. Dep't of Ed., U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan (Dec. 9, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-announces-agreement-missouri-end-biden-administrations-illegal-save-plan (quoting the Under Secretary of Education, saying, "thanks to the State of Missouri and other states" for bringing the lawsuit).

Court noted, it is incumbent upon the Department of Education and Congress, not the courts, to change the law if they see fit.

111.     The Department further acknowledges that the "settlement" must be "approved by the courts" to take effect, but continued to proceed as if the settlement had already been effectuated.

112.     The Department consented to an emergency stay of the current law, both demonstrating the lack of controversy present in the action and indicating the Department's refusal to allow borrower's access to the SAVE plan continues to the present day.

113.     The problem, of course, is that neither Congress nor the Department has taken legal action to end the SAVE plan; apparently relying on the courts to do what should properly be done through legislation or rulemaking.

114.     In that light, these inaccurate statements about the legality of the SAVE Final Rule and the Department's refusal to provide SAVE benefits to borrowers or take any action to resume implementation of the SAVE Rule are arbitrary and capricious agency actions and evidence of the Department's decision to illegally ignore these regulations.

## CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

*Unlawful Withholding of Agency Action in Violation of the*

*Administrative Procedure Act, 5 U.S.C. § 706(1)*

115.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

116.    The APA authorizes this Court to "compel agency action" that has been "unlawfully withheld." 5 U.S.C. § 706(1).

117.    As alleged above, the Secretary has a mandatory statutory and regulatory duty to fully implement the SAVE Final Rule.

118.    As alleged above, the Secretary has a mandatory statutory and regulatory duty to cancel eligible Direct Student Loans under the SAVE Plan.

119.    As alleged above, the Secretary has a mandatory statutory and regulatory duty to offer borrowers access to the SAVE Plan.

120.    As alleged above, the Secretary has a mandatory statutory and regulatory duty to provide Direct Loan borrowers with the opportunity to obtain credit toward discharge for certain months in which a borrower was in an otherwise ineligible deferment or forbearance by making an additional payment equal to or greater than their current IDR payment.

121.    Following the end of the preliminary injunction, Defendants are unlawfully preventing Plaintiffs from accessing the benefits of the SAVE Final Rule.

## SECOND CAUSE OF ACTION

*Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act, 5*

*U.S.C. § 706(2)(A)*

122.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

123.    The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

124.    The Department's denials or constructive denials of Plaintiffs' requests for benefits under the SAVE Final rule constitutes a final agency action under the APA.

125.    The Department's decision not to fully implement the Final Rules implementing the ICR statutory scheme constitutes a final agency action under the APA.

126.    The Department's decision to leave inaccurate information on its website and to provide inaccurate information directly to borrowers about the legal status of the SAVE plan constitutes a final agency action under the APA.

127.    Defendants have acted in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law by, among other actions:

    a.    The Department's denial of Havens's request for loan discharge under SAVE.

    b.    The Department's denial of Robeson's request for loan discharge under SAVE.

    c.    The Department's representations that SAVE plan enrollment and discharge were not available to Havens, Robeson, Boykin and Grunseth.

    d.    The Department's denial of and refusal to process Grunseth's request for IDR buy back.

    e.    The Department's representation to Grunseth that "the SAVE program is not something we acknowledge at the moment."

f.   The Department's representations that the SAVE Final Rule is enjoined.

### **THIRD CAUSE OF ACTION**

*Agency Action in Excess of Statutory Jurisdiction, Authority, or Limitations, or Short of Statutory Right  in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C)*

128.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

129.   The APA prohibits agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

130.   The Department's denials or constructive denials of Plaintiffs' requests for benefits under the SAVE Final rule constitutes a final agency action under the APA.

131.   The Department's decision not to fully implement the Final Rules implementing the ICR statutory scheme constitutes a final agency action under the APA.

132.   The Department's decision to leave inaccurate information on its website and to provide inaccurate information directly to borrowers about the legal status of the SAVE plan constitutes a final agency action under the APA.

133.   Defendants have acted in a manner that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right by among other actions:

a.   The Department's denial of Havens's request for loan discharge under SAVE.

b.   The Department's denial of Robeson's request for loan discharge under SAVE.

c.   The Department's representations that SAVE plan enrollment and discharge were not available to Havens, Robeson, Boykin, and Grunseth.

d.   The Department's denial of and refusal to process Grunseth's request for IDR buy back.

e.   The Department's representation to Grunseth that "the SAVE program is not

something we acknowledge at the moment."

    f.   The Department's representations that the SAVE Final Rule is enjoined.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

A.  Declare that the Department is unlawfully withholding benefits under the SAVE Final Rule;

B.  Declare that the Department's actions to deny Plaintiffs relief under the SAVE Final Rule are unlawful;

C.  Declare that the Department's actions to provide incorrect information about the legal status of the SAVE Final Rule unlawful;

D.  Order the Department to immediately cancel all Direct Loans that meet the discharge requirements under the SAVE Final Rule;

E.  Order the Department to resume immediately implementation of the SAVE Final Rule;

F.  Issue preliminary and permanent injunctive relief:

    a.   Preventing the Department of Education from collecting from borrowers who are eligible for loan discharge under the SAVE Plan if they were permitted to enroll in it, until the Department satisfies its statutory and regulatory obligations under the SAVE Final Rule.

    b.   Requiring the Department of Education to allow borrowers it induced to leave the SAVE plan the option to rejoin the SAVE Plan and receive relief under the Plan.

G.  Award attorneys' fees as authorized by law; and

H.  Grant such further relief as may be just and proper.

1.    attorneys' fees for services over a significant period of time.

Date March 9, 2026                          Respectfully submitted,

                                            */s/ Angel E. Reyes*
                                            Angel E. Reyes
                                            Bar ID 1708508
                                            Power to the People Law PLLC
                                            1601 Connecticut Ave NW, Suite 800
                                            Washington, DC 20009
                                            (202) 952-3200
                                            Angel@powertothepeoplelaw.com


                                            W. Austin Hinkle (pro hac vice pending)
                                            Public Goods Practice LLP
                                            1502 W 7th St., STE 100
                                            Erie, PA 16502
                                            (215) 931-9240
                                            austin@publicgoodspractice.com

                                            Paul Delaney Mayer  (pro hac vice pending)
                                            DC Bar No. 1671773
                                            Public Goods Practice LLP
                                            1717 N Street N, STE 1
                                            Washington, DC 20036
                                            (202) 893-9970
                                            paul@Publicgoodspractice.com


                                            Counsel for Plaintiffs