UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HEATHER HAVENS, *et al.*,

              *Plaintiffs,*

v.

U.S. DEPARTMENT OF EDUCATION, *et al.*

              *Defendants*.

No  1:26-cv-816

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION AND ALTERNATIVE REQUEST FOR SHORTER EXTENSION

Plaintiffs respectfully request the Court deny Defendants' motion for a 60-day extension of time to respond, or in the alternative grant a 14-day extension for three reasons.

First, a motion for extension is an inappropriate procedure to raise fundamental merits arguments that are properly addressed through a motion to dismiss.

Second, Defendants mischaracterize the degree to which the cause of action in this case depends on the outcome of *Missouri v. Trump* and in doing so overstate the benefits to judicial economy.

Third, a 60-day extension creates significant prejudice for the Plaintiffs and to the extent that the Defendants' motion rests on counsel's workload, a shorter extension should suffice.

**I.      An Extension Motion is the Wrong Vehicle for Defendants' Dismissal Arguments**

Defendants' motion rests squarely on their contention that the final judgment entered in *Missouri v. Trump* either mooted Plaintiffs' claims or requires amendment of the Complaint. No. 4:24-cv-520 (E.D. Mo. Mar. 10, 2026), ECF 102. Defendants explain that they believe *Missouri* is the "main event" and that the complaint challenges "facts that no longer exist." *See* Defs.' Mot.

1

at 1, 5, ECF No. 8. These are merits arguments directed at dismissal, not scheduling arguments. If the Defendants believe the complaint is mooted or otherwise without merit, the appropriate vehicle for that argument is a Rule 12(b)(6) motion to dismiss.

Here the procedure is important. Embedding merits arguments in the motion for extension prejudices the Plaintiffs by short circuiting the procedural protections provided for in a motion to dismiss. Motions to dismiss have established briefing schedules and the opportunity to fully brief complex arguments. While Plaintiffs appreciate the scheduling order providing an opportunity to respond to this motion, it is not a substitute for a properly filed and briefed motion to dismiss.

Analysis of mootness or vacatur-effect typically requires the Court to examine a range of material including relevant orders and the full procedural history of related cases. Defendants are asserting the effect of the *Missouri* case without developing this record, addressing the scope of the vacatur, or engaging with the impact of the One Big Beautiful Bill Act (OBBBA). Meanwhile, Defendants receive an asymmetric advantage by previewing their merits theory without having to file a responsive motion. This prejudices Plaintiffs by putting them in a position to oversimplify arguments that should have been resolved through proper motions practice.

Finally, the Court is disadvantaged if it allows a motion for extension to rely on significant merits-based argument. Evaluating the strength of Defendants' mootness and vacatur arguments requires examining the underlying orders, the scope of the vacatur, the OBBBA's effect, and Plaintiff's specific claims. None of this can be properly developed in an extension briefing. By making substantive arguments through a motion for extension the Defendants' approach is wasting the Court's time and resources on ineffectively briefing a substantive merits

argument "in piecemeal fashion" that will require "separate and repeated motions." *Pinson v. U.S. Dep't of Justice*, No. 12-1872 (RC), 2015 U.S. Dist. LEXIS 192778, at *4–5 (D.D.C. June 30, 2015).* Furthermore, opening this avenue for substantive briefings will reward the Defendants for using this procedural strategy as a trial balloon of their merits arguments and certainly encourage more aggressive use of this practice in the future.

Plaintiffs are unaware of, and the Defendants do not cite, any circuit precedent for litigating merits claims in this posture. On the other hand, this Court has denied a Rule 6(b) motion for extension where the movant sought to litigate substantive challenges through extension practice rather than through the proper briefing of the dispositive motion. *Id.* (substantive challenges should be addressed within the briefing of the dispositive motion, "not in piecemeal fashion through separate and repeated motions").

## II.      **Judicial Economy Weighs Against Extension**

Granting Defendants' 60-day extension will not promote judicial economy. The cases are not duplicative; significant issues will remain for this Court regardless of *Missouri*'s outcome; and an extension that pushes briefing past the July transition date will likely necessitate emergency motion practice rather than avoiding it. For an extension, courts generally look for a showing of good cause, *Knight v. Riggs Nat. Corp.*, No. 04-7033, 2004 WL 1900571, at *1 (D.C. Cir. Aug. 25, 2004) (denying extension because a party did not demonstrate good cause), and, where good cause exists, courts consider potential prejudice to the parties. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 n.5 (1990). Here, both factors weigh against extension.

### a.      *The cases are not duplicative*

The present case and the *Missouri* litigation are fundamentally different legal questions in different procedural postures making Defendants' argument that judicial economy favors extension baseless. Courts "might well deny a request for an extension of time" that does not help secure a just, speedy, and inexpensive proceeding. 1 Moore's Federal Practice § 6.06 (Matthew Bender 3d ed.). Indeed, "the flow of cases through a busy district court is aided, not hindered, by adherence to deadlines." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). Here, judicial economy can only be served by denying the Defendants' request because it will not reduce the workload of Defendants or the Court and would merely prolong this litigation.

Defendants argue that the present matter "hinges on the Eastern District of Missouri's dismissal." Defs.' Mot. at 3. However, Defendants oversimplify and assert without legal or factual support that these two matters are duplicative.

The present matter is about whether, during a period when the SAVE Final Rule was in effect, the Defendants unlawfully withheld agency action by refusing to grant the rights under the SAVE Plan and whether those denials and representations about the status of the SAVE Final Rule were arbitrary and capricious or exceeded Defendants' statutory authority. It is a challenge to final agency actions based on the statutory and regulatory laws in place at the time those actions occurred. In *Missouri*, the same plaintiffs from this case are seeking to intervene for the limited purpose of seeking reconsideration of the remedy granted by Judge Ross. Framed differently, the legal questions presented in the two cases are fundamentally different. They do not rely on the resolution of the other, and waiting will not relieve the Court or Defendants of the need to address the arguments presented here.

      *b.*         ***The primary issues in this case remain exclusively for this Court***

Even if intervention is successful, the procedural posture and substantive arguments leave significant issues for this Court to address that have not been resolved by any court to date and are not currently under consideration. In *Missouri*, the Plaintiffs are challenging whether the district court had authority to issue any type of vacatur given several aspects of that case: the parties' agreement that the rule was not illegal, the lack of adversarial testing, the effect of the OBBBA on the court's authority to vacate, and the failure to consider the *Allied-Signal* factors in crafting an Administrative Procedure Act (APA) remedy. Memorandum in Support of Granting Mot. for Reconsideration, *Missouri v. Trump*, No. 4:24-cv-520 (E.D. Mo. Mar. 13, 2026), ECF No. 106-1, at 12-25; *see Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993).[1] If the *Missouri* court agrees and ultimately enters a final judgment of remand without vacatur, Defendants will still have to explain why they did not provide benefits when requested by borrowers who were legally entitled to them and why they regularly misrepresented the legal status of the Rule to Plaintiffs and other borrowers.

If the *Missouri* court disagrees, Defendants still must answer the same question. But the Defendants' motion glosses over critical legal questions. Defendants may believe *Missouri* is the main event because it suits their interests, but the most important legal questions remain clearly in front of this Court. No court has addressed when benefits under the SAVE Final rule accrued or when the Department was obligated to take action to effectuate those benefits. Nor has any court addressed the effect of the OBBBA on the statutory obligations of the Department. Likewise, no court has addressed whether denials for benefits during a period when the SAVE

---

[1] Even on the role of the OBBBA, the legal questions are different and resolution in Missouri will not resolve the questions before this Court. In Missouri, the motion for reconsideration argues that the OBBBA passage prohibits that Court from granting vacatur as a remedy. Here, the complaint argues that the Department of Education has an obligation to provide benefits under the SAVE Rule because of the Congressional mandate. Even if the Missouri action stands, no court has addressed whether the OBBBA endorsed SAVE and such a finding would not be inconsistent with any reasoning from the 8th Circuit.

Final Rule was effective are APA violations or considered the legal implications of the series of misinformation about the legal status of SAVE promulgated by the Department of Education. Those questions are not before the *Missouri* court and can only be resolved here. Delaying this action will not relieve Defendants or the Court of addressing the substantive issues detailed in the complaint.

Regardless of how the *Missouri* court resolves the question of vacatur versus remand, this Court can still decide whether the Department of Education violated the APA by failing to provide Plaintiffs the benefits to which they were legally entitled at the time. Defendants present no legal rationale explaining why the actions of the *Missouri* court should dictate that answer. *Missouri* does not even present that question.[2]

### c.    *Granting the extension will erode judicial economy*

Defendants' argument assumes intervention in *Missouri* will be granted, but that assumption is premature. As it stands, Plaintiffs are non-parties to the *Missouri* case with no formal role in the proceedings. They were not parties at the outset and currently cannot make their case before the judge. The pace of proceedings in *Missouri* is uncertain and while the motion for intervention is fully briefed, the timeline for consideration of the substantive motion will likely be significant. Moreover, Defendants expressly reserve the right to seek additional extensions or a stay. Defs.' Mot. at 4. Granting the requested 60-day extension establishes momentum for further delays keyed to *Missouri*'s uncertain pace.

Second, granting an extension is likely to erode judicial economy as it compresses the window before the harm becomes irreparable. When this action was filed, the SAVE plan was

---

[2] If Defendants believe that the effect of vacatur is to nullify the benefits of SAVE retroactively to some prior point in time, that argument requires proper briefing and delaying the response will not relieve the parties of having to address the issue.

live, and even in the intervening period, there has been a lack of clarity about the timeline and procedure for implementing the settlement agreement in the Missouri case. Plaintiffs did not seek immediate injunctive relief because none was necessary at that time. Defendants' proposed timeline puts Plaintiffs in a position where such additional motions may be necessary.

### III.    A 60-Day Extension Will Severely Prejudice Plaintiffs

A 60-day extension will impose concrete and substantial prejudice on Plaintiffs that significantly exceeds any prejudice Defendants face from a denial.

#### a.    *Defendants overstate the prejudice they face if the motion is denied*

Defense cites to this court's decision in *Caison v. DeJoy* , No. 23-2414 (LLA), 2024 U.S. Dist. LEXIS 66032 (D.D.C. Apr. 11, 2024), for the premise that a heavy workload is sufficient grounds to grant an extension. Defs.' Mot. at 5. However, *Caison* is a meaningfully different situation. In that case, this Court found good cause where DOJ counsel was personally handling 70 cases and sought a three-week extension. *Id*. at *7.

Here, counsel identifies five matters and seeks 60 days. The extension sought is more than three times longer for a caseload less than one-tenth the size. Finally, this prejudice could be addressed by staffing decisions by the government itself. The DOJ Federal Programs Branch has substantial institutional resources. To the extent the workload of a single trial attorney makes compliance with the response deadline difficult, Defendants could allocate additional staff to this matter or to those listed in the motion.

#### b.    *Delay severely prejudices Plaintiffs*

The prejudice to Plaintiffs from a 60-day extension is concrete and substantial. Defendants are responsible for the timetable and financial consequences that make a 60-day

extension highly prejudicial to Plaintiffs. Beginning in July 2026, the Department of Education will begin notifying SAVE enrollees that they will be transitioned off the Plan within 90 days. Press Release, U.S. Dep't of Educ., U.S. Department of Education Announces Next Steps for Borrowers Enrolled in the Unlawful SAVE Plan (March 27, 2026), https://www.ed.gov/about/news/press-release/us-department-of-education-announces-next-steps-borrowers-enrolled-unlawful-save-plan. The 60-day extension Defendants seek pushes their response deadline beyond the date of these notifications. By the time the Defendants file any responsive pleading, their operational plan to move borrowers off SAVE will already be underway.

If moved to a new repayment plan, plaintiffs Havens's and Robeson's effective dates for loan cancellation will be adjusted automatically to 2026, triggering a significant tax consequence that they would not otherwise face. Compl. ¶¶ 90-94, 98-101, ECF No. 1. For Robeson, this could result in a tax obligation on $90,000 of income in discharged loans compared to her 2025 adjusted gross income of $8,000. Compl. ¶¶ 98-100.

Second, Defendants' choice in operationalizing the *Missouri* settlement significantly increases the prejudice faced by Plaintiffs if an extension were to be granted. At the very least, Plaintiffs enrolled in SAVE should have access to the prior plan, REPAYE. *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (vacatur of agency rescission has the effect of reinstating the rules previously in force). If Defendants simply transition borrowers currently enrolled in SAVE into REPAYE (reversing the 2023 automatic transition of borrowers in REPAYE into SAVE), plaintiffs Havens and Robeson would not face the same tax consequences and plaintiff Grunseth would be eligible for lower monthly payments than any repayment plan Defendants plan to make available. Rather than taking this sensible course of

action, Defendants decided to administratively move all borrowers enrolled in SAVE into a different repayment plan significantly increasing the injuries to Plaintiffs.

Defendants are responsible for the timeline we are operating on, and the severity of the injuries Plaintiffs will face. Any further extension would reward Defendants for contributing to Plaintiffs' injuries in the short term while allowing them to simultaneously delay responding in court.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for a 60-day extension or, in the alternative, grant no more than a 14-day extension. A proposed order is filed herewith.

Date: May 1, 2026

Respectfully submitted,

*/s/ William Austin Hinkle*
William Austin Hinkle
DC Bar No. 90043756
Public Goods Practice, LLP
1502 W 7th St.
STE 100
Erie, PA 16502
(215) 931-9240
austin@publicgoodspractice.com

Paul Delaney Mayer
DC Bar No. 1671773
Public Goods Practice, LLP
1717 N Street N, STE 1
Washington, DC 20036
(202) 893-9970
paul@publicgoodspractice.com

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that on May 1, 2026 a true and accurate copy of the forgoing document was electronically filed through the Court's CM/ECF System. This document was distributed via that system.

*/s/ William Austin Hinkle*
William Austin Hinkle
