# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF MISSOURI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Civil Action No. 4:24-cv-00520-JAR |

**<u>MEMORANDUM IN SUPPORT OF GRANTING MOTION FOR LEAVE TO INTERVENE</u>**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

BACKGROUND ........ 1

I. Procedural History ........ 1

II. Factual Background ........ 2

ARGUMENT ........ 4

III. Proposed Intervenors Have Article III standing Because Borrowers are the Group Most Affected by the Court's Decision ........ 4

A. Proposed Intervenors will face significant financial injuries if the SAVE Rule is Vacated ........ 5

B. Proposed Intervenors' injuries are directly and fairly traceable to the vacatur of the SAVE Final Rule ........ 7

C. Proposed Intervenors' injuries would be addressed by a favorable decision ........ 8

IV. Proposed Intervenors Have a Right to Intervene Under Rule 24(a)(2). ........ 10

V. Proposed Intervenors' Motion is Timely ........ 10

D. Proposed Intervenors Did Not Delay Once it Was Clear they Had an Interest that was not Protected by the Parties. ........ 12

E. The stage of litigation. ........ 14

F. Prejudice to existing parties. ........ 14

VI. Proposed Intervenors' Have Significant Protectable Interests in the SAVE Final Rule 15

VII. Vacatur of the SAVE Final Rule Directly Impairs Proposed Intervenors' Ability to Protect Their Interests ........ 17

VIII. Proposed Intervenors are not Adequately Represented ........ 18

IX. Alternatively, Proposed Intervenors Should be Permitted to Intervene under Rule 24(b) 20

CONCLUSION ........ 21

## TABLE OF AUTHORITIES

### Cases

*Agred Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069 (8th Cir. 2021) .................................... 7
*Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267 (2022) ..................................11, 12
*Chiglo v. City of Preston*, 104 F.3d 185 (8th Cir. 1997)............................................................. 18
*Corby Recreation, Inc. v. General Electric Co.*, 581 F.2d 175 (8th Cir. 1978)............................ 10
*Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017) ......................................................... 5, 6
*Demarais v. Gurstel Chargo*, P.A., 869 F.3d 685 (8th Cir. 2017). ............................................... 5
*Dep't of Commerce v. New York*, *Dep't of Commerce v. New York*, 588 U.S. 752 (2019) ............. 7
*Donaldson v. United States*, 400 U.S. 517 (1971) ...................................................................... 15
*Eischeid v. Dover Const.*, Inc., 217 F.R.D. 448 (N.D. Iowa 2003 ............................................... 17
*Kuehl v. Sellner*, 887 F.3d 845 (8th Cir. 2018)............................................................................ 5
*Larson v. Valente*, 456 U.S. 228 (1982) ..................................................................................8, 9
*Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996)........................................................................ 15
*Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 989 F.2d 994 (8th Cir. 1993)...11, 12
*Missouri v. Trump*, Nos. 24-2332/24-2351 (8th Cir. Mar. 5, 2026) ................................................ 9
*North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015 .................... 18
*Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861 (8th Cir. 1977)... 15
*Sierra Club v. Kimbell*, 623 F.3d 549, 556 (8th Cir. 2010) ........................................................... 5
*Std. Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567 (8th Cir. 1998)........ 17
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................................. 5
*TransUnion LLC v. Ramirez, 594 U.S. 413 (2021).* ..................................................................... 5
*Tweedle v. State Farm Fire & Cas. Co.*, 527 F.3d 664 (8th Cir. 2008)..........................................11
*U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829 (8th Cir. 2009). ............................................... 4
*Union Elec.*, 64 F.3d 1152.............................................................................................................. 15
*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977)................................................................11
*Uzuegbunam v. Preczewski, 592 U.S. 279 (2021* ..................................................................... 8, 10
*Warth v. Seldin*, 422 U.S. 490 (1975)............................................................................................ 9

### Statutes, Rules, and Regulations

34 C.F.R. § 685.209(k)(6). ..................................................................................... 8, 9, 16
88 Fed. Reg. 43,820 ....................................................................................................... 23
Fed. R. Civ. P. 24(a) .........................................................................................................11
Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................... 22
Fed. R. Civ. P. 24(b)(3) .................................................................................................... 23
U.S. Const. art. III, § 2, cl. 1 .............................................................................................. 4

## INTRODUCTION

In the span of eleven days, millions of student loan borrowers went from having full legal entitlement to loan discharge and affordable repayment under the SAVE Final Rule, to having that rule vacated by a two-sentence court order entered at the joint request of two non-adversarial parties.

The consequences for those borrowers are immediate and severe. Millions may be facing life-changing economic costs from decades of additional student loan payments. No court has found the SAVE Final Rule unlawful. No adversarial brief was filed in support of the vacatur. No party represented the interests of the borrowers affected. It is clear at this point that the Proposed Intervenors, themselves student loan borrowers, interests are no longer being protected and move to intervene to challenge the legal authority under which the vacatur was entered and to seek reconsideration of an order that substituted private negotiation for judicial resolution.

## BACKGROUND

### I. Procedural History

On February 27, 2026, this Court dismissed the case as moot. In doing so, the Court declined the parties' request to enter an order vacating the SAVE Final Rule leaving resolution of the matter to the regular rulemaking process.

Three days later, plaintiff states requested a stay of dismissal, which the Court promptly denied on March 4, 2026. The same day, plaintiff states noticed the court of its appeal to the Eighth Circuit.

On March 5, plaintiff states filed their Emergency Motion for Stay noting that defendant agreed to the relief requested. In that motion, the plaintiff states requested that the

Eighth Circuit either stay the dismissal pending appeal or reverse the dismissal and direct this Court to enter the parties joint request to vacate the SAVE Final Rule.

On March 9, the Eighth Circuit elected the latter option, directing this Court to vacate the SAVE Final Rule. This Court entered the order the following day.

## II. Factual Background

Proposed Intervenor Anna Grunseth is enrolled in SAVE and would be due for discharge next month but for the prior injunction. She borrowed $8,583 to attend Mid-State Technical College in Wisconsin Rapids, WI in 2014. Grunseth made 105 eligible payments toward the 120 payments she needs to reach loan discharge under SAVE. Under the existing SAVE regulations, she is entitled to buy back the periods of forbearance she was forced into following the injunction. Under this program, she should immediately be allowed to buy back her missing 15 payments from the 20 months of forbearance she's been in since July of 2024 for $165. On March 6, 2026, the Department of Education denied Grunseth IDR buy back and subsequent loan discharge under SAVE. If Grunseth cannot access SAVE, she could be forced to continue making payments for more than 15 years under the best available IDR option.

Proposed Intervenor William Boykin is entitled to enroll in the SAVE Plan and buy back prior periods of forbearance that would give him enough eligible payments to have his loan cancelled. Boykin was 15 months away from completing the 132 payments required of him for loan discharge under the SAVE plan when it was preliminarily enjoined in 2024. Believing public statements that the SAVE plan was illegal and that it would not be available again, Boykin applied for a different repayment plan in January 2025, which was not processed until January of 2026. In total, Boykin remained in an involuntary forbearance for 17 months. Like Grunseth, Boykin is entitled to buy back those months of forbearance to reach the required

number of payments for discharge. If Boykin cannot access SAVE, he could be forced to make payments for more than 10 years under the best available IDR option. On March 6, 2026, Boykin was unable to change his repayment plan to SAVE because the Departments IDR applications did not offer SAVE.

Proposed Intervenor Heather Havens is enrolled in SAVE and due for discharge on two of her loans today. On these two loans, Havens has made 303 qualifying payments out of the required 300 for her consolidation loans. Under the existing SAVE regulations or prior REPAYE regulations, she is entitled to have her loans cancelled with an effective date in November or December 2025. If Havens changed repayment plans, she would also be entitled to loan discharge, but the effective date would be the month she was enrolled in the new payment plan.

The American Rescue Plan Act excluded discharge of student loan debt from taxation through December 31, 2025. The Department determines whether to issue a 1099-C form showing taxable income based on discharged debt, based on the *effective* date of the discharge rather than the date the actual date of discharge. Proposed Intervenors understand that the effective date of discharge cannot be any earlier than the date of enrollment in the IDR plan that makes the borrower eligible for discharge. On March 6, 2026, the Department of Education denied Havens's loan discharge under SAVE. If Havens is unable to access SAVE, she maybe be forced to pay income taxes on loan discharge she would not otherwise owe, and she could be forced to pay more than $500 per month more under the best available IDR option.

Proposed Intervenor Elizabeth Robeson is due loan discharge for her two outstanding loans under SAVE. On these loans, Robeson has made 325 qualifying payments out of the 216 required. Robeson originally borrowed $12,000, but today she owes over $90,000. Under the

existing SAVE regulations or prior REPAYE regulations, she is entitled to have her loans cancelled with an effective date in April of 2024 – when she first enrolled in SAVE.

Like Havens, changing repayment plans could have significant tax consequences. Today, Robeson relies on her part-time job and Social Security payments to make ends meet. Her adjusted gross income for 2025 was approximately $8,000. If Robeson cannot access SAVE, she may be forced to pay income taxes on $90,000 of loan discharge – her tax burden may be more than she makes in an entire year. On March 4, 2026, the Department of Education denied Robeson loan discharge under SAVE.

Proposed Intervenors are plaintiffs in a case before the DC District Court filed on March 9, 2026, seeking relief under the Administrative Procedure Act for the Department of Education's failure to grant benefits under the SAVE Final Rule. Complaint, *Havens v. U.S. Dep't of Educ.*, No. 1:26-cv-00816 (D.D.C. Mar. 9, 2026), ECF No. 1.

## ARGUMENT

### III. Proposed Intervenors Have Article III standing Because Borrowers are the Group Most Affected by the Court's Decision

Intervenors easily clear the bar for Article III standing because they are borrowers under the SAVE plan who will suffer the most immediate, life altering consequences of the Court's decisions in this action. *See* U.S. Const. art. III, § 2, cl. 1.Prospective intervenors must "establish Article III standing in addition to the requirements of [Federal Rule of Civil Procedure] 24." *U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009).

To establish standing, the prospective intervenor must show at a minimum "an injury in fact, meaning the actual or imminent invasion of a concrete and particularized legal interest; a causal connection between the alleged injury and the challenged action of

defendant; and a likelihood that the injury will be redressed by a favorable decision of the court." *Kuehl v. Sellner*, 887 F.3d 845, 850 (8th Cir. 2018) (quoting *Sierra Club v. Kimbell*, 623 F.3d 549, 556 (8th Cir. 2010)).

*A. Proposed Intervenors will face significant financial injuries if the SAVE Rule is Vacated*

An injury-in-fact sufficient to confer standing is an injury "that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021).* (citation omitted). Financial harms, no matter how minor, constitute injuries-in-fact. *See*, e.g., *Czyzewski v. Jevic Holding Corp*., 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury'"); *Demarais v. Gurstel Chargo*, P.A., 869 F.3d 685, 693 (8th Cir. 2017). And future injuries can support standing so long as "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Proposed Intervenors are student loan borrowers who face immediate, concrete, and quantifiable financial harm as a direct result of the vacatur of the SAVE Final Rule. Each faces injuries that are neither abstract nor speculative. They will immediately lose benefits if the court's ruling stands.

Proposed Intervenor Havens faces two distinct cognizable financial injuries. First, because the American Rescue Plan Act excluded discharged student loan debt from taxable income only through December 31, 2025, the Department's policy to process her discharge with an effective date based on when she entered the plan which provides loan discharge, changing plans now may expose her to federal income tax liability she would not otherwise owe. If the SAVE Final Rule is not vacated, her effective date of discharge would be prior to December 31, 2025.

Second, on her remaining loans that cannot be discharged under any IDR plan, vacatur forces Havens onto a less favorable repayment plan, costing her more than $500 per month above what she would owe under SAVE. Each of these harms independently constitutes a concrete financial injury sufficient to confer standing. *See Czyzewski*, 137 S. Ct. at 983.

Proposed Intervenor Elizabeth Robeson presents perhaps the starkest injury in this case. She has made 325 qualifying payments — more than one hundred in excess of the 216 required for discharge on her loans. Her right to discharge vested with an effective date of April 2024 under SAVE. Despite borrowing less than $12,000, she today owes more than $90,000, a balance that has ballooned due to years of accruing interest. Vacatur of the SAVE Rule means that a discharge she earned years ago will not be processed. Like Havens, Robeson may face severe tax consequences. Vacatur may force her to recognize $90,000 in taxable income from a discharge that, under the SAVE Final Rule, would have carried an effective date of April 2024 and been excluded from taxation.

Proposed Intervenor Anna Grunseth has made 105 of the 120 qualifying payments required for discharge on her loans. She would have crossed the discharge threshold last month but for the preliminary injunction that placed her in involuntary forbearance for 20 months. Under the SAVE Final Rule, Grunseth can credit those months of forced forbearance toward their discharge requirement by making a single payment equal to their current IDR payment amount. For Grunseth, that means a single payment of $165 would satisfy her remaining 15-payment obligation and entitle her to immediate loan discharge. Proper vacatur eliminates that buyback right entirely. Without it, Grunseth faces more than 15 additional years of loan payments under the best available alternative repayment plan.

Proposed Intervenor William Boykin was 15 months away from satisfying the 132 qualifying payments required for discharge under the SAVE Plan when the preliminary injunction issued in 2024. He remained in involuntary forbearance for 17 months. Like Grunseth, Boykin is entitled under the SAVE Final Rule to buy back those months of forbearance and satisfy his discharge requirement. Vacatur forecloses that right. Without the buyback option and without access to SAVE, Boykin faces more than 10 additional years of loan payments. His injury follows immediately and mechanically from the judgment entered below.

Taken together, Proposed Intervenors face financial injuries that are concrete, particularized, and either already realized or certainly impending. These are not generalized grievances shared abstractly by the borrowing public. Each Proposed Intervenor has a specific payment count, a specific discharge date, a specific monthly payment differential, and a specific tax exposure that flows directly from the vacatur.

### *B. Proposed Intervenors' injuries are directly and fairly traceable to the vacatur of the SAVE Final Rule*

Vacating would cause clear injury to each proposed intervenor. To establish causation, the proposed intervenor must demonstrate that the injury is fairly traceable to the defendants' conduct. *Agred Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021) (citation omitted); see *Dep't of Commerce v. New York*, *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019). ("Article III requires no more than de facto causality.").

The causal chain here requires no inference, no intermediary actor, and no speculative chain of events. The injuries described above flow directly and immediately from the disposition of the SAVE Final Rule.

Prior to the entry of final judgment, the SAVE Final Rule was the operative law governing Proposed Intervenors' loan repayment obligations. The Rule itself automatically vested Havens's and Robeson's right to discharge upon their satisfaction of the qualifying payment thresholds. *See* 88 Fed. Reg. 43,820. No application, no agency determination, and no further government action was required. Their discharges were due by operation of regulation. The outcome of this litigation and whether Proposed Intervenors receive benefits is the direct and immediate cause of their continued obligation to repay loans that should already be cancelled.

The causation is equally direct for Grunseth and Boykin. The IDR buyback provision of the SAVE Final Rule is the sole legal mechanism by which either borrower can obtain credit toward discharge for the months of involuntary forbearance they were placed in following the 2024 preliminary injunction. 34 C.F.R. § 685.209(k)(6). Without it, neither borrower has any available legal pathway to count those months toward their discharge requirement.

*C. Proposed Intervenors' injuries would be addressed by a favorable decision*

A proposed intervenor "[ ] satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself," though "[h]e need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982); *see* also *Uzuegbunam v. Preczewski, 592 U.S. 279, 280 (2021).* (effectuating "a partial remedy satisfies the redressability requirement") (internal quotes omitted). "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Redressability here is straightforward. If this Court grants the requested relief the SAVE Final Rule would be restored as operative law until the Department of Education takes administrative action to end the program, and Proposed Intervenors' injuries would be directly and immediately relieved. No additional regulatory proceeding or judicial determination stands between a favorable ruling and the benefits to which Proposed Intervenors are entitled.

Plaintiffs in this case agree. In their Emergency Motion at the Eight Circuit, plaintiff states conceded that the dismissal resurrected the SAVE Final Rule. Plaintiffs-Appellants' Emergency Motion for Stay of District Court Dismissal Order Pending Appeal at 10, *Missouri v. Trump*, Nos. 24-2332/24-2351 (8th Cir. Mar. 5, 2026), ECF No. 00805469134. Remanding the SAVE Final Rule without vacatur would have the same effect.

For Havens and Robeson, remand without vacatur of the SAVE Final Rule means that their loan discharges would be required to be processed by the Department of Education without further application or agency action. Remanding the SAVE Final Rule without vacatur would provide Havens and Robeson with a loan discharge effective date prior to December 31, 2025, preserving the tax treatment of that discharge under the American Rescue Plan Act. Each of these represents a discrete, concrete injury that a favorable ruling would directly relieve. *Larson*, 456 U.S. at 243 n.15.

For Grunseth and Boykin, remanding the SAVE Final Rule without vacatur would restore the IDR buyback provision codified at 34 C.F.R. § 685.209(k)(6). For Grunseth, that provision means a single payment of $165 would satisfy her remaining obligation and entitle her to immediate loan discharge, ending a path that would otherwise extend more than 15 years. For Boykin, it means the 17 months of involuntary forbearance he accumulated can be

credited toward his discharge requirement, rather than forcing him to continue paying for more than a decade. A favorable ruling need not resolve every grievance either borrower has with the Department's administration of the loan program — it need only provide a partial remedy. *Uzuegbunam*, 592 U.S. at 279. It plainly does that.

The merits of Proposed Intervenors' underlying position, that the SAVE Final Rule was lawfully promulgated and that the consent vacatur was procedurally and substantively improper, need not be adjudicated to establish redressability. *Warth*, 422 U.S. at 500. It is enough that if this Court acts favorably, Proposed Intervenors' injuries are relieved.

## IV. Proposed Intervenors Have a Right to Intervene Under Rule 24(a)(2).

Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2) where (1) their motion to intervene is timely, (2) they assert an interest in the controversy, (3) the disposition of the case may impair or impede their ability to protect that interest, and (4) that interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a); *Swinton v. SquareTrade, Inc.*, 960 F.3d 1001, 1004 (8th Cir. 2020). Where there are doubts about the intervention, they should be resolved in favor of the intervenor. *Corby Recreation, Inc. v. General Electric Co.*, 581 F.2d 175, 177 (8th Cir. 1978).

## V. Proposed Intervenors' Motion is Timely

"In determining timeliness, factors that bear particular consideration are the reason for the proposed intervenor's delay in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993).

Proposed Intervenors “sought to intervene ‘as soon as it became clear’ that [their] interests ‘would no longer be protected’ by the parties in the case.” *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279 (2022) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)) (allowing intervention even after appellate decision was rendered, shortly after learning that the state official would cease defending the rule and within the timeframe to seek en banc review).

Federal courts, including the Eighth Circuit, have long recognized that post-judgement intervention is warranted where the interests of the intervenors are not represented and the requested action is within the timelines required for the action under the Federal Rules of Civil Procedure. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 387 (1977). Indeed, “nothing in Rule 24(a) precludes post judgment or even post-appeal intervention.” *Tweedle v. State Farm Fire & Cas. Co.*, 527 F.3d 664, 671 (8th Cir. 2008).

This motion is filed on March 13, 2026, three days after this Court entered final judgment on March 10, 2026, and four days after the Eighth Circuit reversed this Court’s prior dismissal and directed vacatur without a hearing or without providing a written opinion explaining its mandate. There is no delay to explain, no prejudice to justify, and no party who can credibly claim surprise. Under any formulation of the timeliness standard, this motion is timely.

There are three factors that bear particular consideration under the Eighth Circuit's timeliness analysis: 1) the reason for any delay in seeking intervention, 2) the stage of litigation at the time of the motion, and 3) the prejudice to existing parties from allowing intervention. All three factors weigh decisively in Proposed Intervenors' favor. *Mille Lacs Band*, 989 F.2d at 998.

*D. Proposed Intervenors Did Not Delay Once it Was Clear they Had an Interest that was not Protected by the Parties*.

There was no delay, despite this motion coming after the case was dismissed. The timeliness clock does not begin to run when a proposed intervenor first learns of the existence of an action, but rather when they knew or should have known that their interests would not be protected by the existing parties. *Cameron*, 595 U.S. at 279.

The earliest possible moment Proposed Intervenors could have speculated that their interests were not being protected was the December 9, 2025, proposed settlement and joint motion for relief. However, despite the Department's public representations that it would submit the settlement to the Court for review, it never did. Press Release, U.S. Dep't of Educ., U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan (Dec. 9, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-announces-agreement-missouri-end-biden-administrations-illegal-save-plan. The specific interest of plaintiffs could not be fully identified and there was no briefing or hearing on the merits of the settlement. Further, plaintiffs' are not aware of any Eighth Circuit court granting vacatur merely at the request of the parties without a merits decision or analysis of the equities.

Had the case proceeded in that fashion, plaintiffs' interests would have crystalized, and they could have evaluated whether the representation of the existing parties was sufficient. Potential third-party intervenors would be reasonable to wait and see how this would be addressed by the Court and parties on future briefs or hearings.

The Court resolved this ambiguity in its February 27 dismissal of the case. That dismissal, entered by this Court just fourteen days ago, left the SAVE Final Rule intact as

operative law and removed every legal barrier to Proposed Intervenors receiving the benefits to which they are entitled. At that point, there was nothing for Proposed Intervenors to intervene to protect.

Importantly, that dismissal also vested Proposed Intervenors with new interests that did not previously exist. As plaintiff states acknowledge in their appeal, that decision rendered the preliminary injunction a nullity, vesting borrowers with certain benefits under the SAVE Final Rule. Specifically, Proposed Intervenors had not previously been eligible for loan cancellation under SAVE while the preliminary injunction was in place. Once lifted, those regulatory rights materialized creating substantial new interests in this matter. Potential Intervenors could not speculate about whether the Department of Education would represent those interests in its advocacy in this matter.

The more appropriate date to consider for this inquire is March 5, 2026, when the United States agreed with Plaintiffs on both the substantive law and remedial actions – namely directing this Court to vacate the SAVE Final Rule with no further briefing on the substantive issues raised by the OBBBA or equitable considerations of vacatur. Emergency Motion for Stay at 10. Using the date where the United States agreed with Plaintiffs in a filing to the Eighth Circuit, there is clearly no delay.

In *Cameron*, the Supreme Court considered the proposed intervention of the Kentucky Attorney General after learning that the Kentucky secretary for Health and Family Services would not defend the state law regulating an abortion procedure. There, the Supreme Court found that moving to intervene within two days of learning that the secretary would not defend the suit and filing its motion seven days after the relevant Sixth Circuit

decision (within the 14-day time limit for a request for an *en banc* review). *See Cameron, 595 U.S. 267.*

Here potential intervenors are well within that guidepost. This motion to intervene is being filed within a week of becoming aware that the Department would not defend their interests and four days from the Eighth Circuit’s directive to this court; the motion for reconsideration is being filed simultaneously. Notably, the proposed intervenors in this case do not benefit from the same close working relationship that existed in *Cameron* where the attorney general was informed by the secretary directly that they were not seeking to appeal the case further.

*E. The stage of litigation.*

Final judgment was entered Tuesday. While post-judgment intervention is subject to careful scrutiny, the Supreme Court has expressly authorized intervention after an appellate decision was rendered where the proposed intervenors acted promptly upon learning that existing parties would no longer protect their interests. *Id.* The relevant question is not whether judgment has been entered, but whether the motion was filed with reasonable promptness after the intervenors' stake became clear. *Mille Lacs Band*, 989 F.2d at 998. Here, the interval between the triggering event is just days. No court could characterize that interval as untimely.

*F. Prejudice to existing parties.*

There is little immediate prejudice to the parties if intervention is granted. The plaintiff states obtained precisely the judgment they sought which requires them to take no

additional action and costs them no money to comply with. Very little reliance is created by the order where the plaintiffs do not need to take any additional action to reap the benefits of the ruling. The federal government consented to that judgment too and there is no evidence that either party has taken any action in reliance on the judgment in the three days since it was entered. No trial is scheduled, no remedial proceedings are underway, and no party faces disruption to any litigation schedule as a result of this intervention. The only parties who face immediate prejudice if intervention is denied are the Proposed Intervenors themselves. Finally, the Department of Education has not issued any public guidance on next steps for borrowers if SAVE is no longer operative.

Finally, any prejudice created by the intervention is minor because the scope of the proposed intervention is minor. Proposed Intervenors do not, at this juncture, seek to defend the merits of the SAVE Final Rule and there is no approved settlement agreement to object to. If the court grants intervention, intervenors have filed a motion for reconsideration, which the parties may incur some time costs to respond to, but additional prejudice to the parties is appropriately considered in the context of that motion to reconsider. Intervenors only seek to intervene as it relates to the appropriateness of vacatur and remedies available. Even if intervenors are ultimately successful and the SAVE plan is reinstated, there would only be marginal prejudice, as that was the status quo for nearly a year before the lawsuit.

## VI. Proposed Intervenors' Have Significant Protectable Interests in the SAVE Final Rule

To satisfy Rule 24(a)(2), a proposed intervenor must assert more than a peripheral or insubstantial interest — the interest must be "significantly protectable." *Donaldson v. United*

*States*, 400 U.S. 517, 531 (1971); *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 869 (8th Cir. 1977). That interest must be "a recognized interest in the subject matter of the litigation," *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996). This test is not a stringent one. *See Union Elec.*, 64 F.3d at 1162. That standard is readily met where, as here, the proposed intervenors are the direct and intended beneficiaries of the regulation in question and have vested legal rights earned through years of qualifying payments.

As discussed above, proposed Intervenors are not members of the general public with a generalized interest in the outcome of this litigation. Each holds a specific, individually calculable entitlement under the SAVE Final Rule that is significantly protectable within the meaning of Rule 24(a)(2).

Havens has made 303 qualifying payments on loans requiring 300 — her right to discharge vested with an effective date in November or December of 2025 by operation of the SAVE Final Rule. That vested discharge right, and her entitlement to enroll in SAVE for her remaining loans at a savings of more than $500 per month, constitutes a significantly protectable interest. So too does her exposure to federal income tax liability on a discharge that carries a 2025 effective date.

Robeson's interest is, if anything, more pronounced. She has made 325 qualifying payments on loans requiring only 216 — exceeding the threshold by more than 100 payments. Her discharge vested with an effective date of April 2024. Despite having originally borrowed less than $12,000, she today carries a balance exceeding $90,000. Her significantly protectable interest lies not only in the discharge itself but in the specific

Case 4:24-cv-00520-JAR Document 105-1 Filed 03/05/26 Page 20 of 25

effective date of that discharge, which determines whether she will be required to recognize $90,000 in taxable income.

Grunseth and Boykin each hold a significantly protectable interest in the IDR buyback provision codified at 34 C.F.R. § 685.209(k)(6).That provision is a specific regulatory right, earned through enrollment in SAVE during the period of involuntary forbearance that followed the 2024 preliminary injunction. For Grunseth, the buyback right means the difference between a single $165 payment and discharge, and more than 15 additional years of loan payments. For Boykin, it means the difference between reaching his discharge threshold now and recommencing a decade-plus repayment obligation.

## VII. Vacatur of the SAVE Final Rule Directly Impairs Proposed Intervenors' Ability to Protect Their Interests

It is not enough that a proposed intervenor holds a significantly protectable interest, that interest must be one that the "disposition of the lawsuit may as a practical matter impair or impede." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 976. "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Eischeid v. Dover Const.*, Inc., 217 F.R.D. 448, 468 (N.D. Iowa 2003) (quoting *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998)).

That standard is satisfied here in the most direct way possible: the disposition of this lawsuit, the legality of the SAVE Final Rule, does not merely threaten to impair Proposed Intervenors' interests. It could eliminate them.

The SAVE Final Rule was the sole legal source of each Proposed Intervenor's entitlement to the benefits described above. The automatic discharge provisions that vested

Havens's and Robeson's rights exist only in the SAVE Final Rule. The IDR buyback provision upon which Grunseth and Boykin rely exists only in the SAVE Final Rule.

There is no alternative regulation through which Proposed Intervenors can vindicate these interests. The prior REPAYE regulations, which the Department has in any event refused to administer by agreeing to the proposed settlement, do not contain the buyback provision. No other income-driven repayment plan provides for the automatic discharge with the effective dates to which Havens and Robeson are entitled. Proposed Intervenors have no recourse outside of this proceeding. The practical impairment is therefore total.

## VIII. Proposed Intervenors are not Adequately Represented

This is not a close question. The government is actively working against the Proposed Intervenors' interests. No presumption of adequate representation can survive that reality.

Under ordinary circumstances, when the government is a party and the matter touches on sovereign interest, a presumption arises that the government represents the interests of all its citizens. *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015). But that presumption applies only to the extent the government's interests coincide with the public interest. *Id.*; *Chiglo v. City of Preston*, 104 F.3d 185, 187-88 (8th Cir. 1997). However, where the government would be shirking its duty to advance a prospective intervenor's narrower interest at the expense of its representation of the general public interest, no presumption of adequate representation applies. *Mille Lacs Band*, 989 F.2d at 1000. Here, the exception swallows the rule.

The government represents Proposed Intervenors' interests only to the extent those interests coincide with the public interest as the government defines it. *Chiglo*, 104 F.3d at 187-88. The government has defined the public interest here as immediately ending the

SAVE Final Rule, the precise outcome that strips Havens of a discharge she earned, forces Robeson to potentially recognize $90,000 in taxable income, and forecloses Grunseth's and Boykin's only available path to loan discharge.

The federal government's recent conduct in this litigation is of an active adversary. The Department agreed with plaintiff states by consenting to that court's direction to enter final judgment to vacate the rule. In the process, throwing out hundreds of pages and thousands of hours of detailed analysis, negotiated rulemaking, and public comment on the SAVE Final Rule without so much as writing their own brief. When the Eighth Circuit issued that direction on March 9, 2026, no party objected. When this Court entered judgment on March 10, 2026, no party resisted.

The consent judgment was not the product of adversarial litigation, judicial scrutiny of the merits, or any proceeding in which the interests of enrolled borrowers were represented or considered. It was the product of a negotiated agreement between two parties who shared the same objective: elimination of the SAVE Plan. The government was not shirking its duty to advance Proposed Intervenors' narrower interests at the expense of the broader public interest. It was actively working to eliminate those interests altogether.

The plaintiff states are equally unavailing as representatives of Proposed Intervenors' interests. They initiated this litigation for the express purpose of vacating the SAVE Final Rule. Their interests are directly averse to those of every borrower who stands to benefit from the Rule.

In the past two weeks, no party in this litigation has ever represented the interests of the millions of borrowers whose rights were extinguished by the March 10 judgment without

notice, without adversarial testing, and without any opportunity to be heard. That absence is precisely what Rule 24(a)(2) exists to remedy.

## IX. Alternatively, Proposed Intervenors Should be Permitted to Intervene under Rule 24(b)

Even if this Court were to conclude that Proposed Intervenors have not established an unconditional right to intervene, permissive intervention is independently warranted. Rule 24(b) authorizes intervention where the motion is timely and the proposed intervenor has a claim or defense sharing a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(B). The Eighth Circuit has advised district courts to err on the side of granting intervention rather than denying it. *Corby Recreation*, 581 F.2d at 177.

All threshold requirements are met. As set forth above, this motion is timely — filed within four days of the final judgment. And the questions of law and fact Proposed Intervenors seek to raise are the core legal doctrine that justifies vacatur in this case. Whether the SAVE Final Rule was lawfully promulgated under the Secretary's income-contingent repayment authority, whether the consent judgment vacating the Rule was procedurally proper, and whether the Rule remains operative law given Congress's subsequent ratification of the underlying statutory authority in the One Big Beautiful Bill Act are questions that sit at the heart of this litigation. Proposed Intervenors' defense of the Rule shares every material question of law and fact with the proceedings below.

Nor will intervention cause undue delay or prejudice to the existing parties. Fed. R. Civ. P. 24(b)(3). Neither party faces any disruption to a litigation schedule, a pending hearing, or an ongoing remedial proceeding as a result of this intervention. The only consequence of allowing intervention is that the Court will have the benefit of adversarial

briefing on a judgment that was entered without any — a result that serves the interests of justice rather than undermining them.

Where no party will be prejudiced, the common questions are substantial, and the Eighth Circuit's policy favors intervention, this Court should exercise its discretion to permit it.

**CONCLUSION**

For the foregoing reasons, Proposed Intervenors ask the Court to grant their motion to intervene.

Date: March 13, 2025

Respectfully submitted,

*/s/ William Austin Hinkle*

William Austin Hinkle
Public Goods Practice LLP
1502 W 7th St.
STE 100
Erie, PA 16502
(215) 931-9240
austin@publicgoodspractice.com
313856(CA)

*Counsel for Intervenors*

## CERTIFICATE OF SERVICE

I certify that on March 13, 2026, a true and accurate copy of the forgoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, consistent with Federal Rule of Civil Procedure 5(b).

*/s/ William Austin Hinkle*

*Counsel for Intervenors*