**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

HEATHER HAVENS, *et al.*,

        Plaintiffs,

        v.

U.S. DEPARTMENT OF EDUCATION, *et al.*,

        Defendants.

No. 1:26-cv-816-LLA

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

On March 9, Plaintiffs filed this suit to enforce a regulation. The next day, a different court vacated that regulation at the direction of the Eighth Circuit. Plaintiffs moved to intervene in the other court, implicitly recognizing that this Court may not overturn the orders of another federal court. *See Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). But that principle is fatal to their case here. Unless the Eastern District of Missouri overturns its past decision (which is unlikely to happen unless the Eighth Circuit changes its mind first), Plaintiffs' theory of the case is legally unenforceable.

Plaintiffs seek an injunction to provide prospective relief for an *ongoing* regulatory violation, but a "court must apply the law in effect at the time it renders its decision." *Henderson v. United States*, 568 U.S. 266, 271 (2013) (citation omitted). When a change in law displaces an existing rule, the change either moots the complaint under Rule 12(b)(1) or precludes its claim to relief under Rule 12(b)(6). *See, e.g.*, *Clean Fuels All. Am. v. EPA*, 169 F.4th 307, 313 (D.C. Cir. 2026) (declaring the case moot after a change in law, because "viewing the case prospectively as petitioners request, one might say that the legal question petitioners present … no longer exists"); *Friends of the Earth, Inc. v. Weinberger*, 562 F. Supp. 265, 270 (D.D.C. 1983) (Congress may moot a pending claim by passing legislation); *Vermont v. Goldschmidt*, 638 F.2d 482, 485 (2d Cir. 1980) (declaring case moot); *id.* at 486 (Newman, J., concurring in the result) (for similar reasons, "the enactment of the new statute does not moot the claim, it defeats it on its merits"). Either way, Plaintiffs' claims fail and the Complaint should be dismissed.

1

## BACKGROUND

### I.    Factual and Regulatory Background

In 2023, Defendant U.S. Department of Education (ED) created the "Saving on a Valuable Education" (SAVE) student loan repayment plan. ED created SAVE through the final rule titled *Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43,820 (July 10, 2023) (the SAVE Plan Final Rule). Plaintiffs are four student loan borrowers who either are enrolled in, or wish to enroll in, SAVE. Compl. ¶¶ 79, 86, 90, 98, ECF 1.[1]

As relevant, the SAVE Plan Final Rule did three things. *First*, it established a formula to set a borrower's monthly repayments. *Missouri v. Trump*, 128 F.4th 979, 987-88 (8th Cir. 2025) (ordering preliminary injunction against the entire SAVE Plan Final Rule). *Second*, it forgave the balance of a borrower's loan after that borrower achieved a qualifying number of repayments; for some borrowers, SAVE shortened the payment horizon by several years. *Id. Third*, it allowed borrowers to "buy back" non-qualifying months by "making an additional payment equal to or greater than their current" monthly loan payment. 88 Fed. Reg. at 43903; 34 C.F.R. § 685.209(k)(6)(i) (2024).

SAVE offered generous terms, as Plaintiffs' court filings show. As alleged, it shortened Plaintiff Anna Grunseth's payment term from 25 to 10 years and Plaintiff William Boykin's payment term from over 20 to 11 years. *See* Compl. ¶¶ 79-80 (Grunseth), 86-88 (Boykin). Following a § 685.209(k)(6) buyback, Grunseth and Boykin would both be discharge-eligible under SAVE (and only SAVE). *See id.* ¶¶ 79 (Grunseth accumulated 105 months of credit and would have been eligible to buy back roughly 20 more months), 86-87 (Boykin accumulated 117 months of credit as of 2024 and would have been eligible to buy back 17 more months). SAVE's payment formula also lowered some borrowers' monthly payments. *See, e.g., id.* ¶ 97; *Missouri v. Trump*, 128 F.4th at 987-88 (in February 2024, over half of the borrowers enrolled in SAVE had a monthly payment of $0).

---

[1] After the vacatur of the SAVE Plan Final Rule, borrowers enrolled in SAVE will generally stay in SAVE (without its benefits) until they affirmatively "choose" a new repayment plan. *See* 20 U.S.C. § 1087e(d)(3).

Plaintiffs Heather Havens and Elizabeth Robeson's claims are more complicated. They are eligible for discharges as soon as they switch to an operative repayment plan, but they would also be eligible for discharges under SAVE. They want their discharges to take place under SAVE for tax reasons. Compl. ¶¶ 91-93 (Havens), 98-101 (Robeson). For context, student loan forgiveness, like loan forgiveness in general, is treated as taxable income. 26 U.S.C. § 61(a)(11). But Congress enacted a five-year tax holiday for student loan forgiveness, which expired at the end of 2025. *See* American Rescue Plan Act of 2021 § 9675, Pub. L. 117–2, 135 Stat. 4, 185-86, *previously codified at* 26 U.S.C. § 108(f)(5) (2023). And due to processing delays, ED backdates discharges to the month the borrower became discharge-eligible, rather than using the date that the discharge is administratively processed, which can be several months later. *See generally* Compl. ¶ 92. As such, identifying the precise date the borrower became discharge-eligible can have tax consequences.

According to Plaintiffs, if they switch to a new plan in 2026 to obtain loan forgiveness, ED will classify them as 2026 dischargees because the event making them eligible for discharge was their switch to the new plan. *See id.* But if SAVE is revived, their discharges might be tax-free, because the event making them eligible for discharge was either their final qualifying payment or their enrollment in SAVE, whichever is later—and either would have happened during the five-year tax holiday. *See id.* ¶¶ 91-93, 98-99.

## II.    Procedural History

In April 2024, several states sued ED in the Eastern District of Missouri to challenge the SAVE Plan. That June, the district court issued a preliminary injunction (PI) against the "provisions of the SAVE plan that permit loan forgiveness." However, it held that those provisions were severable from the rest of the regulation, and thereby allowed borrowers to continue making payments using SAVE's monthly payment formula. *Missouri v. Biden*, 738 F. Supp. 3d 1113, 1155-56 (E.D. Mo. 2024). In February 2025, the Eighth Circuit overruled that severability analysis and ordered the district court to expand its PI to cover the entire SAVE Plan Final Rule. *Missouri v. Trump*, 128 F.4th at 997. The district court entered that injunction in April 2025. Order, *Missouri*, ECF 69. While the PI was in place, the parties jointly asked the district court to vacate (most of) the SAVE Plan Final Rule and

enter final judgment, as the Eighth Circuit had already resolved the core merits issues against the Government. *See* Joint Motion for Entry of Final Judgment, *Missouri*, ECF 91 (Dec. 9, 2025).

On February 27, 2026, the *Missouri* district court dismissed the case as moot in lieu of entering the parties' requested final judgment. *See* Memorandum & Order Dismissing Case, *Missouri v. Trump*, 2026 WL 548660 (E.D. Mo. Feb. 27, 2026). The next business day, the states moved for a stay pending appeal. Motion for Stay of Dismissal Pending Appeal, *Missouri*, ECF 95 (Mar. 2, 2026). The district court denied the stay two days later, and the states renewed their stay motion before the Eighth Circuit the day after that. Order, *Missouri*, ECF 96 (Mar. 4, 2026); Emergency Motion for Stay of District Court Dismissal Order Pending Appeal, *Missouri v. Trump*, No. 26-1394 (8th Cir. filed Mar. 5, 2026), Entry No. 5615320, attached as **Exhibit A** to the Declaration of Winston Shi (Shi Decl.). The states alternatively invited the Eighth Circuit to summarily reverse the district court. *See* Ex. A at 16 ("This Court has already determined the SAVE Plan is unlawful. … Therefore, to avoid unnecessary litigation and expenditures of this Court's resources, this Court should reverse the district court and remand with instructions to enter judgment in accordance with the parties' joint motion.").

On March 9, 2026, the *Havens* Plaintiffs filed this lawsuit. They argued that *Missouri*'s dismissal legally dissolved that case's PI against the SAVE Plan Final Rule, thereby requiring ED to revive the SAVE Plan. *See* Compl. ¶¶ 48, 75.

That afternoon, at 2:29 p.m., the *Missouri* plaintiff states alerted the Eighth Circuit to this lawsuit and warned that without emergency relief, this Court could order ED to "forgive student loans under an administrative rule that [the Eighth Circuit] already determined to be unlawful." Notice of Supplemental Authority under Rule 28(j) at 2, *Missouri v. Trump*, No. 26-1394 (8th Cir. filed Mar. 9, 2026), Entry No. 5616220, attached as **Exhibit C** to the Shi Decl.; CM/ECF Notification of Ex. C, attached as **Exhibit B** to the Shi Decl.

99 minutes later, the Eighth Circuit responded by summarily reversing the district court's dismissal of the case. It immediately issued the mandate and ordered the district court to enter final judgment as requested by the parties. Judgment, *Missouri v. Trump*, 2026 WL 696770 (8th Cir. Mar. 9, 2026), *filed on the district court docket*, *Missouri*, ECF 100 (Mar. 9, 2026), attached as **Exhibit E** to the Shi

4

Decl.; CM/ECF Notification of Ex. E, attached as **Exhibit D** to the Shi Decl.; Mandate, *Missouri v. Trump* (8th Cir. Mar. 9, 2026), *filed on the district court docket*, *Missouri*, ECF 101 (Mar. 9, 2026), attached as **Exhibit F** to the Shi Decl. The next day, the district court carried out the Eighth Circuit's directive by issuing a final judgment that, with one exception not relevant to this case, the "SAVE Plan Final Rule is hereby **VACATED** in full." Order Granting Motion for Final Judgment at 1, ECF 102 (Mar. 10, 2026), attached as **Exhibit G** to the Shi Decl.

On March 13, 2026, the *Havens* Plaintiffs moved to intervene in *Missouri*. They concurrently filed a proposed motion for reconsideration, telling the district court that the Court of Appeals had committed a "manifest error of law" by directing that court to vacate the SAVE Plan Final Rule. Motion for Leave to Intervene, *Missouri*, ECF 104 (filed Mar. 13, 2026); Memorandum in Supp. of Granting Motion for Reconsideration at 18-21, *Missouri*, ECF 106-1 (filed Mar. 13, 2026). The motion to intervene was fully briefed within a month. *See* Proposed Intervenors' Consolidated Reply to Parties' Opp'ns to Proposed Intervenors' Motion to Intervene, *Missouri*, ECF 113 (filed Apr. 6, 2026). It remains pending.

### LEGAL STANDARD

On a FED. R. CIV. P. 12(b)(1) challenge to subject-matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction "in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, on a motion to dismiss under either FED. R. CIV. P. 12(b)(1) or FED. R. CIV. P. 12(b)(6) (failure to state a claim), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory statements" and "legal conclusion[s] couched as … factual allegation[s]" are not presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (simplified). When assessing subject-matter jurisdiction, a court "may consider materials outside the pleadings," such as judicially noticeable agency materials. *Kareem v. Haspel*, 986 F.3d 859, 866 n.7 (D.C. Cir. 2021). When assessing a pleading's factual sufficiency, a court considers "the complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**ARGUMENT**

**I.    A Court May Not Award Injunctive or Declaratory Relief to Enforce a Vacated Rule**

Plaintiffs filed this lawsuit in an attempt to take advantage of a momentary and technical lapse in the series of injunctions against loan forgiveness under the SAVE Plan Final Rule. That lapse was sandwiched between two Eighth Circuit orders, neither of which this Court may review: the original February 2025 order directing a preliminary injunction, and the March 2026 order summarily reversing dismissal of the case and directing vacatur. The Complaint alleged that SAVE still existed, due to the technical consequences of the dismissal of the *Missouri* action on mootness grounds—a dismissal that, as it turns out, was short-lived. After the Eighth Circuit's timely intervention, that theory of the case is now invalid.

A "court must apply the law in effect at the time it renders its decision." *Henderson v. United States*, 568 U.S. 266, 271 (2013) (citation omitted). Therefore, a lawsuit premised on a rule that no longer exists is subject to dismissal, either because it is moot or because the complaint no longer states a claim. *See, e.g.*, *Clean Fuels All. Am. v. EPA*, 169 F.4th 307, 313 (D.C. Cir. 2026) (declaring the case moot after a change in law, because "viewing the case prospectively as petitioners request, one might say that the legal question petitioners present … no longer exists"); *Friends of the Earth, Inc. v. Weinberger*, 562 F. Supp. 265, 270 (D.D.C. 1983) (Congress may moot a pending claim by passing legislation); *Vermont v. Goldschmidt*, 638 F.2d 482, 485 (2d Cir. 1980) (declaring case moot); *id.* at 486 (Newman, J., concurring in the result) (for similar reasons, "the enactment of the new statute does not moot the claim, it defeats it on its merits").

There is no SAVE Plan Final Rule for this Court to enforce, so Plaintiffs' complaint automatically fails. The Complaint seeks only injunctive and declaratory relief—that is, *prospective* relief. Plaintiffs' three claims are thereby premised on the SAVE Plan's continued existence:

- Count One (Compl. ¶¶ 115-121) says ED "has a mandatory statutory and regulatory duty to fully implement the SAVE Final Rule" and "to offer borrowers access to the SAVE Plan."

- Count Two (Compl. ¶¶ 122-127) says ED is acting arbitrarily and capriciously by denying Plaintiffs' requests "for loan discharge under SAVE" and "for IDR[2] buy back" and by telling Plaintiffs that "SAVE plan enrollment and discharge were not available" and that "the SAVE Final Rule is enjoined."

- Count Three (Compl. ¶¶ 128-133) says that for the same reasons, ED has acted in excess of statutory authority or limitations.

*See also* Compl. Prayer for Relief ¶¶ A-C (declarations), D-F (injunctions).

Today, SAVE is not on the books, so Plaintiffs cannot "establish [their] entitlement" to loan forgiveness under that now-vacated regulation. *Vermont*, 638 F.2d at 485. Thus, the Court is "hardly in a position to order" the agency to forgive debts consistent with the SAVE regulation. *Id.* (after Congress updated a grantmaking formula, Vermont's demand to receive grants under the old formula was moot, notwithstanding an earlier district court injunction in Vermont's favor). Without the SAVE Plan Final Rule, Plaintiffs cannot enroll in the SAVE Plan, cannot make qualifying monthly payments under the SAVE Plan, cannot receive discharges under the SAVE Plan, and cannot buy back non-qualifying months under the SAVE Plan Final Rule. There is nothing for this Court to enforce.

Plaintiffs' remaining claims for declaratory relief stand or fall with the injunctive claims. "[T]he Declaratory Judgment Act 'is not an independent source of federal jurisdiction'" and does not provide a freestanding cause of action. *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)); *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Nor would the DJA allow Plaintiffs to challenge past violations of a once-enforceable regulation. Rather, a "declaratory judgment that respondent violated federal law in the past" cannot "stand on its own feet as an appropriate exercise of federal jurisdiction." *Green v. Mansour*, 474 U.S. 64, 74 (1985).

---

[2] Income-driven repayment (IDR) is an umbrella term for several student loan repayment plans. SAVE was one such IDR plan.

**II.    Alternatively, the Court Should Dismiss the Case on Grounds of Judicial Comity: Plaintiffs' Requests for Relief Clash with the Eighth Circuit's Rulings and Their Own Representations to the Eastern District of Missouri.**

In the alternative, the Court should exercise its discretion to dismiss the case on grounds of judicial comity. "When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases." *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976). The comity interests in this action are concrete and unmistakable. In *Missouri v. Trump*, the Eighth Circuit summarily reversed the decision on appeal 99 minutes after the State of Missouri told it about this lawsuit.

Plaintiffs, for their own part, are openly planning to lock horns with the Eighth Circuit—but they should do so on its own turf. If the *Missouri* court grants Plaintiffs' motion to intervene, Plaintiffs will try to overturn the Eighth Circuit-directed vacatur of the SAVE Plan Final Rule. *See Missouri*, ECF 106-1. And even if the *Missouri* court denies the motion to intervene, Plaintiffs could appeal that denial to the Eighth Circuit. "It 'is the basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'" *Klayman v. Rao*, 49 F.4th 550, 553 (D.C. Cir. 2022) (quoting *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). For example, the availability of appeal in a separate forum constitutes an adequate remedy of law, thereby precluding equitable remedies in this forum. *Wilson v. Schnettler*, 365 U.S. 381, 385 (1961). Thus, the *Missouri* litigation gives Plaintiffs "a remedy at law adequate to address any errors in the [Eighth Circuit's] judgments." *Klayman*, 49 F.4th at 553 (citing *Wilson*, 365 U.S. at 385) (where the plaintiff collaterally attacked two adverse decisions by suing the judges who ruled against him, equitable relief was unavailable, as the plaintiff had a "right to appeal … and to petition for review in the Supreme Court" in the preceding two cases).

Judicial comity makes this case a particularly poor candidate for equitable relief. Litigation in one federal forum should not be used to collaterally attack the decision of another federal forum; but today, that is the only remaining purpose the Complaint could serve. The D.C. and Eighth Circuits both have a "general policy against concurrent federal litigation," which could "generate contradictory

results that could, in turn, generate dueling appeals." *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953 (8th Cir. 2001) (first quote); *UtahAmerican Energy, Inc. v. Department of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (second quote). In plain English, "Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time." *Prudential Health Care Plan*, 259 F.3d at 954.

Instead of parallel lawsuits in separate fora racing to the finish line, the court that acquires jurisdiction first generally "should be allowed to proceed with [its case] without interference from other courts under suits subsequently instituted." *UtahAmerican Energy*, 635 F.3d at 1124 (citation omitted). Here, the court with priority is the Eastern District of Missouri. That court has been handling challenges to the SAVE Plan Final Rule since April 2024. It enjoined the loan-forgiveness provisions at the heart of this case back in June 2024. And it received the parties' joint motion to vacate the SAVE Plan Final Rule three months before Plaintiffs filed this suit. *See* Compl., *Missouri*, ECF 1 (filed Apr. 9, 2024); *Missouri v. Trump*, 738 F. Supp. 3d at 1155-56 (June 24, 2024); Joint Motion for Entry of Final Judgment, *Missouri*, ECF 91 (filed Dec. 9, 2025); Compl., ECF 1 (filed Mar. 9, 2026). The two cases are thus "'mirror-image' actions." *Stone & Webster, Inc. v. Georgia Power Co.*, 965 F. Supp. 2d 56, 64 (D.D.C. 2013), *aff'd*, 779 F.3d 614 (D.C. Cir. 2015) (dismissing the later-filed action). In *Missouri*, the Plaintiff States sued to enjoin and to vacate the SAVE Plan Final Rule. Compl. ¶¶ 178, 204 & Prayer for Relief ¶¶ (d)-(e), *Missouri*, ECF 1. In *Havens*, the plaintiff borrowers sued to enforce the SAVE Plan Final Rule. Compl. ¶ 7 ("By dismissing the [*Missouri*] lawsuit, the Court removed any legal barrier preventing borrowers from full access to the benefits of the [SAVE Plan Final Rule], including the immediate, automatic discharge of debts for eligible borrowers."). Both cannot be right—which is why the *Havens* plaintiffs moved to intervene in *Missouri*. Letting this case proceed will risk "generat[ing] contradictory results." *UtahAmerican Energy*, 635 F.3d at 1124.

For similar reasons, the *Missouri* litigation exposes Plaintiffs to judicial estoppel in this action. In their opposition to Defendants' motion for an extension of time to file this motion, Plaintiffs briefly suggested that the Court may award relief on some alternative theories. Pls.' Opp'n to Defs.' Motion for Extension & Alternative Request for Shorter Extension at 5-6 & n.2, ECF 10. But they have not

pleaded these theories here, and they disclaimed those theories in *Missouri*. Indeed, that was part of their pitch to Judge Ross in that action: they said he must let them intervene because they have "no recourse outside of [the *Missouri*] proceeding." Defs.' Reply in Supp. of Motion for Extension of Time to Respond to Pls.' Compl. at 2, ECF 11 (quoting *Missouri* Mem. in Supp. of Granting Mot. for Leave to Intervene at 17-18, filed as an exhibit in this action at ECF 11-1). If Plaintiffs are allowed to intervene in *Missouri*, "judicial acceptance of an inconsistent position in a later proceeding" may "create 'the perception that either the first or the second court was misled[.]'" *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (citation omitted). Thus, judicial estoppel would prevent Plaintiffs from repleading these alternative theories in this forum. *See, e.g.*, *Davis v. District of Columbia*, 925 F.3d 1240, 1255-57 (D.C. Cir. 2019).

* * *

Plaintiffs filed suit on the theory that the SAVE Plan Final Rule was in effect and legally enforceable. The Eighth Circuit's subsequent decision to direct vacatur of the SAVE Plan Final Rule (in all relevant respects) fatally undercut Plaintiffs' theory of the case. Because a "court must apply the law in effect at the time it renders its decision," *Henderson*, 568 U.S. at 271, Plaintiffs are not entitled to an injunction compelling loan forgiveness under the SAVE Plan Final Rule. There is no regulation to enforce. Nor is declaratory relief available to establish a hypothetical "violat[ion] [of] federal law in the past." *Green*, 474 U.S. at 74. Plaintiffs' claims are moot; alternatively, they cannot state a claim.

## CONCLUSION

The Complaint should be dismissed without prejudice for lack of jurisdiction, or in the alternative, with prejudice for failure to state a claim.

Date:   June 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Winston Shi*
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: 202-880-0387
Email: winston.g.shi@usdoj.gov

*Counsel for Defendants*

11