# Exhibit C

Tracking and OMB Number: (XX) 1845-0102                                   Revised: 07/01/2026

**SUPPORTING STATEMENT**
**FOR PAPERWORK REDUCTION ACT SUBMISSION**
Income Driven Repayment Request

1. **Explain the circumstances that make the collection of information necessary. What is the purpose for this information collection? Identify any legal or administrative requirements that necessitate the collection. Include a citation that authorizes the collection of information. Specify the review type of the collection (new, revision, extension, reinstatement with change, reinstatement without change). If revised, briefly specify the changes. If a rulemaking is involved, list the sections with a brief description of the information collection requirement, and/or changes to sections, if applicable.**

   The Department of Education (Department) is requesting a revision of the information collection, 1845-0102 Income Driven Repayment Request.

   The One Big Beautiful Bill Act (OBBBA) signed into law on July 4, 2025, made statutory changes to Sections 455(a), 455(d), 455(e), 455(g), and 455(q) that impact borrower eligibility, terms and conditions, and borrowers' rights and responsibilities for Direct Loans received on or after July 1, 2026. Additionally, previous provisions regulated in 34 C.F.R. 685.209 effective July 1, 2024, were invalidated as a result of court actions on March 10, 2026.

   Negotiated Rulemaking sessions took place with affected parties, the Reimagining and Improving Student Education (RISE) Committee, from September 29, 2025 – October 3, 2025, and November 3, 2025 – November 6, 2025. Consensus on the draft proposals was reached. On January 30, 2026, the Department published a Notice of Proposed Rulemaking (91 FR 4254) containing proposed regulations developed after the Negotiated Rulemaking sessions.

   Section 493C of the Higher Education Act of 1965, as amended (the HEA), authorizes the Income-Based Repayment (IBR) Plan for borrowers who obtain student loans through the Federal Family Education Loan (FFEL) Program and William D. Ford Federal Direct Loan (Direct Loan) Program. Section 455(e) of the HEA describes income-contingent repayment plans for borrowers who obtain student loans through the Direct Loan Program. Section 455(q) of the HEA describes the Repayment Assistance Plan for borrowers who obtain student loans through the Direct Loan Program. These plans are collectively referred to as income driven repayment (IDR) plans and the regulations that govern them are in 34 CFR 682.215 (for FFEL Program loans) and 685.209 (for Direct Loans). There are three income-contingent repayment plans: the Saving on a Valuable Education (SAVE) Plan (formerly REPAYE), Pay As You Earn (PAYE) Plan, and the Income-Contingent Repayment (ICR) Plan. The court action effective March 10, 2026 invalidates the SAVE Plan and the OBBBA requires the remaining income-contingent plans be sunset by July 1, 2028.

Under the statute, a borrower who wishes to repay under an IDR plan must annually provide their Adjusted Gross Income (AGI) reported to the Internal Revenue Service (IRS).  A borrower must also annually certify their family size (or number of dependents as is required for calculating the monthly payment in the Repayment Assistance Plan).

If a borrower's AGI is not available, or if the borrower believes that their current AGI does not reasonably reflect their current income, regulations allow that they may provide alternative documentation of income for purposes of determining whether they (1) qualify for the repayment plan requested, (2) qualify to continue making income-driven payments, and/or (3) calculate their monthly payment amount.

The Department is updating the currently approved IDR Request Form that is used by a borrower to enroll, recertify, or change their IDR plan to support the provisions identified by the OBBBA and court action.  Specifically, the form is being updated to add the Repayment Assistance Plan as an option for borrowers to select and revising the questions related to family size to accurately gather the borrower's number of dependents—a component unique to the Repayment Assistance Plan. Additionally, the form explains the terms of the Repayment Assistance Plan and provides notice that the PAYE and ICR plans will be sunset in 2028 (the SAVE Plan was removed in a previous version of the form as a result of a court injunction). Additional updates to improve clarity and the borrower experience as a result of these changes have also been made.

2. **Indicate how, by whom, and for what purpose the information is to be used.  Except for a new collection, indicate the actual use the agency has made of the information received from the current collection.**

The currently approved form is used by borrowers to request an IDR plan for their loans.  The form also serves as the means by which loan holders collect the information that is required to determine whether the borrower meets the eligibility requirements or repayment amount for the requested plan.  The form will continue to be used for these purposes.

3. **Describe whether, and to what extent, the collection of information involves the use of automated, electronic, mechanical, or other technological collection techniques or forms of information technology, e.g. permitting electronic submission of responses, and the basis for the decision of adopting this means of collection. Please identify systems or websites used to electronically collect this information. Also describe any consideration given to using technology to reduce burden. If there is an increase or decrease in burden related to using technology (e.g. using an electronic form, system or website from paper), please explain in number 12.**

This collection was adapted for use on the Internet, so that borrowers may request an IDR plan via the Department's StudentAid.gov website, and consent to the

use of their tax information, if available.  In the event that the borrower declines consent or information from the IRS is unavailable, the borrower will still be able to complete the form electronically and upload the necessary supporting documentation, which will then be submitted to the borrower's servicer without the borrower needing to take any additional action.  The borrower will also have the option to print the form, sign it, attach the necessary supporting documentation, and send it to the borrower's loan holder.

A borrower who has previously provided consent to use tax information from the IRS will be notified of their new monthly payment prior to their annual recertification date without the need to complete the form again if they have not had any changes to their circumstances that would warrant a revision of the information provided through the consent process.  If there have been changes, the borrower can manually recertify as described above.

4. **Describe efforts to identify duplication.  Show specifically why any similar information already available cannot be used or modified for use for the purposes described in Item 2 above.**

There is no information already available from other sources that can be used to establish a borrower's eligibility or payment amount for an IDR plan.

5. **If the collection of information impacts small businesses or other small entities, describe any methods used to minimize burden. A small entity may be (1) a small business which is deemed to be one that is independently owned and operated and that is not dominant in its field of operation; (2) a small organization that is any not-for-profit enterprise that is independently owned and operated and is not dominant in its field; or (3) a small government jurisdiction, which is a government of a city, county, town, township, school district, or special district with a population of less than 50,000.**

No small businesses are affected by this information collection.

6. **Describe the consequences to Federal program or policy activities if the collection is not conducted or is conducted less frequently, as well as any technical or legal obstacles to reducing burden.**

The frequency with which a borrower requests an IDR plan is determined in accordance with statutory and regulatory requirements that are explained on the form. Less frequent data collection will not allow loan holders to process borrower requests for an IDR plan.  However, the auto-recertification process should reduce the burden for those borrowers who have not experienced a change in their financial situation in the year since their last certification.

7. **Explain any special circumstances that would cause an information collection to be conducted in a manner:**
   - **requiring respondents to report information to the agency more often than quarterly;**
   - **requiring respondents to prepare a written response to a collection of information in fewer than 30 days after receipt of it;**
   - **requiring respondents to submit more than an original and two copies of any document;**
   - **requiring respondents to retain records, other than health, medical, government contract, grant-in-aid, or tax records for more than three years;**
   - **in connection with a statistical survey, that is not designed to produce valid and reliable results than can be generalized to the universe of study;**
   - **requiring the use of a statistical data classification that has not been reviewed and approved by OMB;**
   - **that includes a pledge of confidentiality that is not supported by authority established in statute or regulation, that is not supported by disclosure and data security policies that are consistent with the pledge, or that unnecessarily impedes sharing of data with other agencies for compatible confidential use; or**
   - **requiring respondents to submit proprietary trade secrets, or other confidential information unless the agency can demonstrate that it has instituted procedures to protect the information's confidentiality to the extent permitted by law.**

   This information collection does not involve any of the conditions listed in 5 CFR 1320.5(d)(2).

8. **As applicable, state that the Department has published the 60 and 30 Federal Register notices as required by 5 CFR 1320.8(d), soliciting comments on the information collection prior to submission to OMB.**

   **Include a citation for the 60 day comment period (e.g. Vol. 84 FR ##### and the date of publication). Summarize public comments received in response to the 60 day notice and describe actions taken by the agency in response to these comments. Specifically address comments received on cost and hour burden. If only non-substantive comments are provided, please provide a statement to that effect and that it did not relate or warrant any changes to this information collection request. In your comments, please also indicate the number of public comments received.**

   **For the 30 day notice, indicate that a notice will be published.**
   **Describe efforts to consult with persons outside the agency to obtain their views on the availability of data, frequency of collection, the clarity of instruction and record keeping, disclosure, or reporting format (if any), and on the data elements to be recorded, disclosed, or reported.**

Tracking and OMB Number: (XX) 1845-0102                         Revised: 07/01/2026

**Consultation with representatives of those from whom information is to be obtained or those who must compile records should occur at least once every 3 years – even if the collection of information activity is the same as in prior periods.  There may be circumstances that may preclude consultation in a specific situation.  These circumstances should be explained.**

This is a request for a revision to 1845-0102 Income Driven Repayment Plan Request for the William D. Ford Federal Direct Loans and Federal Family Education Loan Programs.

This form was developed after a Negotiated Rulemaking sessions took place with affected parties, the Reimagining and Improving Student Education (RISE) Committee, from September 29, 2025 – October 3, 2025 and November 3, 2025 – November 6, 2025.

On April 20, 2026 the Department published a Federal Register Notice (91 FR 20989) inviting public comment on this collection for 60 days. Comments were received. The Department's responses to all comments is on a separate document titled *60 Day Comment Responses-1845-0102.*

The Department made several changes to the Income Driven Repayment Plan Request based on the comments received from the public during the 60-day comment period. Changes were made to provide clarifying language for borrowers regarding the termination of eligibility for the legacy plans for any borrowers with new loans as of July 1, 2026.

One commenter suggested providing additional language regarding the interest accrual under the Pay As You Earn (PAYE) which the Department agreed to modify to more accurately describe how interest accrues under that plan.

Another comment requested language be added to ensure that borrowers understand the requirements when changing from the IBR Plan to any of the repayment plans other than the Repayment Assistance Plan (RAP) or the Tiered Standard Plan. The text was updated to closely reflect the request, but the Department did adjust the language to provide additional clarity.

Additionally, the Department agreed with a comment requesting an update to the language describing the principal matching provision of RAP. The Department did not take the language suggested, but it was updated to align with the text on the www.StudentAid.gov website.

Due to a commenter's request, the Department added a row to the chart summarizing the Income-Driven Repayment plans. This row "Repayment Term" ensures that borrowers understand any forgiveness provisions included with each plan.

One commenter requested a fundamental organizational change of the fields on the form. The Department does agree that the change would be beneficial but would not be able to execute the revisions to the form and online application flow in time for when the form needs to be available. This will be a change we consider for future revisions, but the Department did modify language to provide clarity to help improve the borrower experience.

The Department added "(paid out)" to better describe what "disbursed" means on the form to improve borrower understanding based on another comment. Additionally, a commenter identified inconsistency in using the terms "received" and "disbursed". All instances of "received" were replaced with "disbursed" when referring to a borrower receiving loans means a disbursement is made.

One comment submitted pointed out a seemingly duplicative request for sharing tax information. The Department revised the language to clarify that the borrower's tax information need not be provided again if already attached due to being asked to provide it previously.

The final change to the form was based on a comment requesting modifications to the form to instruct borrowers who have a mix of RAP-eligible and RAP-ineligible loans to also complete a Fixed Repayment Plan Request to enroll the ineligible loans in Tiered Standard. Borrowers in this situation will not need to complete an additional application. The RAP-ineligible loans will automatically be placed in Tiered Standard in this scenario. The Department updated the language on the form to ensure this is explained.

This is now the request for the 30-day Notice be published in the Federal Register opening a 30-day comment period.

9. **Explain any decision to provide any payment or gift to respondents, other than remuneration of contractors or grantees with meaningful justification.**

No payments or gifts were or will be provided to respondents.

10. **Describe any assurance of confidentiality provided to respondents and the basis for the assurance in statute, regulation, or agency policy. If personally identifiable information (PII) is being collected, a Privacy Act statement should be included on the instrument. Please provide a citation for the Systems of Record Notice and the date a Privacy Impact Assessment was completed as indicated on the IC Data Form. A confidentiality statement with a legal citation that authorizes the pledge of confidentiality should be provided.[1] If the collection is subject to the Privacy Act, the Privacy Act statement is deemed sufficient with respect to confidentiality. If there is no expectation of confidentiality, simply state that the Department makes no pledge about the confidentiality of the data. If no PII will be collected, state that no assurance of confidentiality is provided to respondents. If the Paperwork Burden Statement is not included physically on a form, you may include it here. Please ensure that your response per respondent matches the estimate provided in number 12.**

---

[1] Requests for this information are in accordance with the following ED and OMB policies: Privacy Act of 1974, OMB Circular A-108 – Privacy Act Implementation – Guidelines and Responsibilities, OMB Circular A-130 Appendix I – Federal Agency Responsibilities for Maintaining Records About Individuals, OMB M-03-22 – OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, OMB M-06-15 – Safeguarding Personally Identifiable Information, OM:6-104 – Privacy Act of 1974 (Collection, Use and Protection of Personally Identifiable Information)

Tracking and OMB Number: (XX) 1845-0102                    Revised: 07/01/2026

The form includes a Privacy Act Notice that (1) informs the borrower of the statutory authority for the information collection, (2) explains that providing the requested information is mandatory to request an IDR plan, and (3) identifies the routine uses of  the information collected on the form, to whom the information may be disclosed, and explains the circumstances under which such disclosures may occur.

11.    **Provide additional justification for any questions of a sensitive nature, such as sexual behavior and attitudes, religious beliefs, and other matters that are commonly considered private.  The justification should include the reasons why the agency considers the questions necessary, the specific uses to be made of the information, the explanation to be given to persons from whom the information is requested, and any steps to be taken to obtain their consent.**

The form does not request any sensitive information.

12.    **Provide estimates of the hour burden for this current information collection request. The statement should:**

- **Provide an explanation of how the burden was estimated, including identification of burden type: recordkeeping, reporting or third party disclosure.  Address changes in burden due to the use of technology (if applicable). Generally, estimates should not include burden hours for customary and usual business practices.**
- **Please do not include increases in burden and respondents numerically in this table. Explain these changes in number 15.**
- **Indicate the number of respondents by affected public type (federal government, individuals or households, private sector – businesses or other for-profit, private sector – not-for-profit institutions, farms, state, local or tribal governments), frequency of response, annual hour burden. Unless directed to do so, agencies should not conduct special surveys to obtain information on which to base hour burden estimates.  Consultation with a sample (fewer than 10) of potential respondents is desirable.**
- **If this request for approval covers more than one form, provide separate hour burden estimates for each form and aggregate the hour burden in the table below.**
- **Provide estimates of annualized cost to respondents of the hour burdens for collections of information, identifying and using appropriate wage rate categories. Use this site to research the appropriate wage rate. The cost of contracting out or paying outside parties for information collection activities should not be included here.  Instead, this cost should be included in Item 14. If there is no cost to respondents, indicate by entering 0 in the chart below and/or provide a statement.**

The Department continues to  estimate 9,500,000 borrowers will use the IDR

Tracking and OMB Number: (XX) 1845-0102                    Revised: 07/01/2026

Request Form for a total of 3,135,000 burden hours.

### Estimated Annual Burden and Respondent Costs Table

| Information Activity or IC (with type of respondent) | Number of Respondents | Number of Responses | Average Burden Hours per Response | Total Annual Burden Hours | Estimated Respondent Average Hourly Wage | Total Annual Costs (hourly wage x total burden hours) |
|---|---|---|---|---|---|---|
| Individual | 9,500,000 | 9,500,000 | .33 | 3,135,000 | $23.80 | $74,613,000 |
| For-Profit Institutions | | | | | | |
| Private Institutions | | | | | | |
| Public Institutions | | | | | | |
| Annualized Totals | 9,500,000 | 9,500,000 | .33 | 3,135,000 | $23.80 | $74,613,000 |

For individuals we have used the median hourly wage for all occupations, $23.80 per hour according to BLS. https://www.bls.gov/oes/current/oes_nat.htm#00-0000 .

*Please ensure the annual total burden, respondents and response match those entered in IC Data Parts 1 and 2, and the response per respondent matches the Paperwork Burden Statement that must be included on all forms.*

13. **Provide an estimate of the total annual cost burden to respondents or record keepers resulting from the collection of information.  (Do not include the cost of any hour burden shown in Items 12 and 14.)**

   ▪ **The cost estimate should be split into two components: (a) a total capital and start-up cost component (annualized over its expected useful life); and (b) a total operation and maintenance and purchase of services component.  The estimates should take into account costs associated with generating, maintaining, and disclosing or providing the information.  Include descriptions of methods used to estimate major cost factors including system and technology acquisition, expected useful life of capital equipment, the discount rate(s), and the time period over which costs will be incurred.  Capital and start-up costs include, among other items, preparations for collecting information such as purchasing computers and software; monitoring, sampling, drilling and testing equipment; and acquiring and maintaining record storage facilities.**
   ▪ **If cost estimates are expected to vary widely, agencies should present ranges of cost burdens and explain the reasons for the variance.  The cost of contracting out information collection services should be a part of this cost burden estimate.  In developing cost burden estimates, agencies may consult with a sample of respondents (fewer than 10), utilize the 60-day pre-OMB submission public comment process and use existing economic or regulatory impact analysis**

Tracking and OMB Number: (XX) 1845-0102                    Revised: 07/01/2026

**associated with the rulemaking containing the information collection, as appropriate.**

- **Generally, estimates should not include purchases of equipment or services, or portions thereof, made: (1) prior to October 1, 1995, (2) to achieve regulatory compliance with requirements not associated with the information collection, (3) for reasons other than to provide information or keep records for the government or (4) as part of customary and usual business or private practices. Also, these estimates should not include the hourly costs (i.e., the monetization of the hours) captured above in Item 12.**

**Total Annualized Capital/Startup Cost : **
**Total Annual Costs (O&M)                 : _____**
**Total Annualized Costs Requested        : **

There are no capital/startup costs to respondents, nor are there any annual costs to respondents associated with operating or maintaining systems or purchasing services.

14. **Provide estimates of annualized cost to the Federal government. Also, provide a description of the method used to estimate cost, which should include quantification of hours, operational expenses (such as equipment, overhead, printing, and support staff), and any other expense that would not have been incurred without this collection of information. Agencies also may aggregate cost estimates from Items 12, 13, and 14 in a single table.**

There is no additional cost to the Federal Government.

15. **Explain the reasons for any program changes or adjustments. Generally, adjustments in burden result from re-estimating burden and/or from economic phenomenon outside of an agency's control (e.g., correcting a burden estimate or an organic increase in the size of the reporting universe). Program changes result from a deliberate action that materially changes a collection of information and generally are result of new statute or an agency action (e.g., changing a form, revising regulations, redefining the respondent universe, etc.). Burden changes should be disaggregated by type of change (i.e., adjustment, program change due to new statute, and/or program change due to agency discretion), type of collection (new, revision, extension, reinstatement with change, reinstatement without change) and include totals for changes in burden hours, responses and costs (if applicable).**

   **Provide a descriptive narrative for the reasons of any change in addition to completing the table with the burden hour change(s) here.**

|  | **Program Change Due to New Statute** | **Program Change Due to Agency Discretion** | **Change Due to Adjustment in Agency Estimate** |
|---|---|---|---|
| **Total Burden** |  |  |  |
| **Total Responses** |  |  |  |

Tracking and OMB Number: (XX) 1845-0102                          Revised: 07/01/2026

| Total Costs (if applicable) | | | |
|---|---|---|---|

The Department continues to estimate 9,500,000 responses and 3,135,000 hours of burden.

16. **For collections of information whose results will be published, outline plans for tabulation and publication.  Address any complex analytical techniques that will be used.  Provide the time schedule for the entire project, including beginning and ending dates of the collection of information, completion of report, publication dates, and other actions.**

The results of this collection of information will not be published.

17. **If seeking approval to not display the expiration date for OMB approval of the information collection, explain the reasons that display would be inappropriate.**

The Department is not seeking this approval.

18. **Explain each exception to the certification statement identified in the Certification of Paperwork Reduction Act.**

The Department is not requesting any exceptions to the Certification for Paperwork Reduction Act Submissions of OMB Form 83-1.