# Exhibit A

**FILED**

MAR 05 2026

U.S. Court of Appeals
Eighth Circuit

CASE No. 26-   **26-1394**

## UNITED STATES COURT OF APPEALS
### FOR THE EIGHTH CIRCUIT

STATE OF MISSOURI, et al.,
*Plaintiffs- Appellants,*

v.

DONALD J. TRUMP, in his official capacity as the President of the
United States of America, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Missouri
The Honorable District Court Judge John A. Ross
Case No. 4:24-cv-520-JAR

## EMERGENCY MOTION FOR STAY OF DISTRICT COURT
## DISMISSAL ORDER PENDING APPEAL

CATHERINE L. HANAWAY
 *Attorney General of Missouri*
LOUIS J. CAPOZZI, III
 *Solicitor General*
ATTORNEY GENERAL'S OFFICE
Post Office Box 899
Jefferson City, MO 65102
(573) 751-1800
Louis.Capozzi@ago.mo.gov

**RECEIVED**

MAR 05 2026

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................2

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................4

BACKGROUND .............................................................................................6

I.      The SAVE Plan and previous proceedings. ....................................6

II.     Despite these nearly two years of litigation, the district court *sua sponte* dismissed the case........................................................8

ARGUMENT ..................................................................................................9

I.      The States have a strong likelihood of success on the merits.........9

        A.      The SAVE Plan still is unlawful..............................................9

        B.      The parties' agreeing to settle this action did not deprive the district court of jurisdiction. ...........................................11

II.     The States face irreparable harm, and the equities strongly favor the States. .........................................................................13

III.    In the alternative, this Court should reverse the district court and direct it to enter judgment in accordance with the parties' joint motion. .................................................................................16

CONCLUSION .............................................................................................16

CERTIFICATE OF COMPLIANCE...........................................................19

CERTIFICATE OF SERVICE....................................................................20

1

# TABLE OF AUTHORITIES

Page(s)

Cases

*Baker v. Wade,*
   743 F.2d 236 (5th Cir. 1984) ........................................................................12

*Chadha v. INS,*
   634 F.2d 408 (9th Cir. 1980) .........................................................................12

*E.T. v. Paxton,*
   19 F.4th 760 (5th Cir. 2021) ..........................................................................13

*FCC v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009) ...................................................................................6, 10

*Franciscan All., Inc. v. Becerra,*
   47 F.4th 368 (5th Cir. 2022) ..........................................................................10

*FTC v. Assail, Inc.,*
   98 F. App'x 316 (5th Cir. 2004) .................................................................5, 12

*Kansas v. United States,*
   124 F.4th 529 (8th Cir. 2024) .............................................................9, 13, 15

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) .....................................................................................5, 11

*League of Women Voters of the U.S. v. Newby,*
   838 F.3d 1 (D.C. Cir. 2016) ............................................................................14

*Maxxim Med., Inc. v. Michelson,*
   182 F.3d 915, No. 99-20295, 1999 WL 423112 (5th Cir. 1999) ........4, 10

*Missouri v. Biden,*
   112 F.4th 531 (8th Cir. 2024) ........................................................................13

2

*Missouri v. Biden*,
  Nos. 24-2332, 24-2351, 2024 WL 3462265 (July 18, 2024) ..................14

*Missouri v. Trump*,
  128 F.4th 979 (8th Cir. 2025) ....................................................Passim

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)............................................................................5, 10

*Nken v. Holder*,
  566 U.S. 418 (2009)................................................................................9

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
  845 F.3d 384 (8th Cir. 2016)..............................................................12

## Statutes

5 U.S.C. § 706 ......................................................................................11

28 U.S.C. § 2106 ..................................................................................16

Pub. L. No. 119-21, 139 Stat. 337 .........................................................7

## Regulations

Reimagining and Improving Student Education,
  91 Fed. Reg. 4254 (proposed Jan. 30, 2026)..........................................8

3

## INTRODUCTION AND SUMMARY OF ARGUMENT

After nearly two years of litigation and three decisions—two from this Court—striking down student loan cancellation under the SAVE Plan as unlawful, the district court *sua sponte* dismissed for lack of subject matter jurisdiction. *See* R. Doc. 93 (Add. 1). This dismissal renders the district court's preliminary injunction and this Court's orders a "nullity," thus resurrecting the unlawful SAVE Plan. *Maxxim Med., Inc. v. Michelson*, 182 F.3d 915, No. 99-20295, 1999 WL 423112, at *3 (5th Cir. 1999) (unpublished).

The district court dismissed this case because it believed that Plaintiffs are no longer adverse to the United States in this case. R. Doc. 93 at 2–3 (Add. 2–3). The district court believed this was so because the parties negotiated a settlement agreement and, pursuant to that agreement, jointly asked the district court to convert the preliminary injunction into a permanent one. *See id.*

The district court's ruling is clearly wrong and should be stayed. This Court already found that Plaintiff-Appellants have standing to challenge the SAVE Plan, *see Missouri v. Trump*, 128 F.4th 979, 989–90 (8th Cir. 2025)—and this Court issued that ruling while the current

4

presidential administration was in office. That standing cannot suddenly disappear merely because the parties tried to negotiate a settlement. Otherwise, courts would lose jurisdiction when parties try to settle a case—something that is clearly not true. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994) (noting courts can retain jurisdiction to enforce a settlement agreement ending a case). And in this case, a finding of non-adversity is especially bizarre because common sense suggests the parties *should* settle this case. Defendants *already* vigorously defended the SAVE Plan on the merits, but this Court already rejected those merits arguments. It is hard to see the point in continuing to pursue merits litigation on a regulation this Court already found to be unlawful. Thus, especially under these circumstances, the District Court should have simply converted its preliminary injunction into a permanent one—as the parties requested. *See, e.g.*, *FTC v. Assail, Inc.*, 98 F. App'x 316, 317 (5th Cir. 2004) (per curiam).

If this Court does not promptly issue a stay, the federal government may have to start enforcing the SAVE Plan again. After all, the Administrative Procedure Act does not allow the federal government to summarily revoke a regulation. *See Motor Vehicle Mfrs. Ass'n of U.S.,*

5

*Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514–15 (2009). This reality imposes uncertainty on all parties, borrowers, and student-loan processors like MOHELA.

The Court should issue a stay to preserve its prior rulings. Plaintiff-Appellants therefore respectfully request that this Court enter an administrative stay and a stay pending appeal. In the alternative, this Court should quickly reverse the district court and direct it to enter the judgment the parties jointly moved for below. *See* R. Doc. 91 (Add. 13). In either event, Plaintiff-Appellants request that this Court provide relief by Monday, March 9.

The United States agrees to the relief requested in this motion.

## BACKGROUND

### I.    The SAVE Plan and previous proceedings.

By now, this Court is well familiar with the SAVE Rule. Originally promulgated under the Biden Administrative, the SAVE Rule was their second attempt at mass student loan cancellation. *See generally Missouri v. Trump*, 128 F.4th at 987–88. Before the rule took effect, the district court preliminarily enjoined a portion of the rule. *See id.* at 988. This Court subsequently stayed the entire rule before preliminarily enjoining

6

its entirety on appeal. *See id.* at 988, 998. This Court did so despite the change in presidential administrations while the appeal was pending.

On remand, the district court entered a preliminary injunction in accordance with this Court's judgment. *See* R. Doc. 69 (Add. 11). At that point, the parties saw little purpose in continuing to litigate an issue this Court had already all but decided. The parties therefore engaged in settlement discussions, ultimately entering a settlement agreement and jointly moving for entry of judgment. *See* R. Doc. 91 (Add. 13). The parties requested the district court enter final judgment vacating the entire SAVE Plan Final Rule (with one exception).[1] *Id.* at 3 (Add. 15).

Simultaneously with the settlement negotiations, Congress passed and the President signed into law the One Big Beautiful Bill Act, which, in part, eliminates the SAVE Plan (and other student loan forgiveness plans) on July 1, 2028. Pub. L. No. 119-21, 139 Stat. 337. The Department of Education recently issued a notice of proposed rulemaking based on the One Big Beautiful Bill Act. *See* Reimagining and Improving

---

[1] During negotiations, Defendants asked to preserve the part of the SAVE Plan that concerns the periods of deferment or forbearance that are eligible for income-driven repayment plans. R. Doc. 91 at 3 (Add. 15). Plaintiff-Appellants agreed to Defendants' request as part of the settlement agreement.

Appellate Case: 26-1394    Page: 8    Date Filed: 03/05/2026 Entry ID: 5615320

Student Education, 91 Fed. Reg. 4254 (proposed Jan. 30, 2026) (to be codified at 34 C.F.R. pts. 674, 682, and 685). Consistent with the Act, the proposed rulemaking phases out the SAVE Plan by June 30, 2028, but presently leaves the SAVE Plan intact. *See id.*

## II.    Despite these nearly two years of litigation, the district court *sua sponte* dismissed the case.

Despite the parties jointly moving for judgment in this case, the district court instead dismissed this action for lack of subject matter jurisdiction. *See* R. Doc. 93 at 3–4 (Add. 3–4). The district court reasoned that the parties lacked "adversity" because of the presidential "administration change"—such that there is no longer a live case or controversy. *See id.* at 2–3 (Add. 2–3). The district court also suggested that the States had the ability to "achieve the relief originally sought without intervention from the Court." *Id.* at 3 (Add. 3). Neither the district court's memorandum nor order discuss the preliminary injunction which was previously in place. *See* R. Doc. 69 (Add. 12).

The States moved for an administrative stay of the district court's order, *see* R. Doc. 95 (Add. 19), and the district court denied Plaintiff-Appellants' motion on March 4, *see* R. Doc. 96 (Add. 6). Plaintiff-Appellants now turn to this Court for relief.

## ARGUMENT

To be entitled to a stay of the district court's judgment pending appeal, this Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Kansas v. United States*, 124 F.4th 529, 533 (8th Cir. 2024) (per curiam) (quoting *Nken v. Holder*, 566 U.S. 418, 434 (2009)). The first two factors are the "most critical," and the second two "merge when the Government is the opposing party." *Nken*, 556 U.S. at 434–35. Plaintiff-Appellants meet all of these factors.

## I.    The States have a strong likelihood of success on the merits.

### A.    The SAVE Plan still is unlawful.

This Court has already found the SAVE Plan to be unlawful. *See Missouri v. Trump*, 128 F.4th at 991–96. Despite this Court's judgment, the district court *sua sponte* dismissed this action after the parties jointly moved the district court to convert the preliminary injunction into a permanent injunction. *See* R. Doc. 94 (Add. 5). This dismissal rendered the district court's preliminary injunction of the SAVE Plan—ordered by

9

this Court—a "nullity," effectively resurrecting the unlawful SAVE Rule. *Maxxim Med., Inc.*, 1999 WL 423112, at *3.

The district court's ruling makes no sense. The SAVE Plan is no more lawful today than it was when this Court issued its judgment. And the change in presidential administrations did not and cannot give the States "the relief originally sought without further intervention from the Court." R. Doc. 93 at 3 (Add. 3).

Even assuming that Defendants now agree with Plaintiff States on the (il)legality of the SAVE Rule, administrative rules do not "flicker in and out of existence" with presidential administrations. *See Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 375 (5th Cir. 2022). A new presidential administration cannot rescind a rule without a going through the same process as it did when in promulgated the rule in the first instance. *See State Farm*, 463 U.S. at 42 ("[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance."). And "[a]n agency may not . . . simply disregard rules that are still on the books." *Fox Television Stations*, 556 U.S. at 515. Rather, the necessary remedy under the Administrative Procedure Act is

10

to vacate the SAVE Rule, which is what the district court should have done.  *See* 5 U.S.C. § 706(2).

The preliminary injunction was the only thing preventing the SAVE Rule from going into effect.  Therefore, this Court should stay the district court's dismissal ruling, allowing the preliminary injunction to remain in place and preventing this unlawful rule from going into effect.

## B.    The parties' agreeing to settle this action did not deprive the district court of jurisdiction.

Moreover, a case does not become moot or non-adverse simply because the parties wish to settle.  *See, e.g.*, *Kokkonen*, 511 U.S. at 381–82 (noting courts can retain jurisdiction to enforce a settlement agreement ending a case).  The district court's contrary conclusion is especially erroneous because the parties have already vigorously litigated this case's merits—both before the district court and this Court.

The district court erred in finding that the parties lacked adversity because the Defendants did not "seek further review of the preliminary injunction" and did not take "further steps to defend the Final Rule or the SAVE plan."  R. Doc. 93 at 2 (Add. 2).  To start, as a general matter, Defendants are permitted to make "a sound strategic assessment of the case's strengths and weaknesses" and not seek further appellate review

11

without making the parties non-adverse. *See Baker v. Wade*, 743 F.2d 236, 243 (5th Cir. 1984). Further, in this case specifically, this Court ruled that the SAVE Plan was unlawful. *See Missouri v. Trump*, 128 F.4th at 991–96. As the district court was bound by law of the case, it would have been futile for Defendants to continue to make the same arguments that this Court had rejected and that the district court "c[ould not] revisit . . . on remand." *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384, 391 (8th Cir. 2016). Allowing the dismissal to remain in this case "would implicitly approve the untenable result" that unconstitutional rules could become effective simply because the previous administration is no longer in office to defend their illegal rules. *See Chadha v. INS*, 634 F.2d 408, 420 (9th Cir. 1980) (Kennedy, J.) (holding that agencies cannot escape adversity "by agreeing that what they did was unconstitutional").

With this case's merits having effectively already been decided, the parties jointly asked this Court to enter judgment—a formality designed to prevent the wasting of judicial resources on duplicative merits litigation. *See, e.g.*, *Assail, Inc.*, 98 F. App'x at 317 (noting district courts

12

"ha[ve] the power to convert" preliminary relief into permanent relief).
This does not mean the district court was divested of jurisdiction.

## II. The States face irreparable harm, and the equities strongly favor the States.

This Court already ruled that "the states [had] show[n] irreparable harm through MOHELA's lost servicing fees" if the SAVE Rule were not enjoined. *Missouri v. Trump*, 128 F.4th at 996. This irreparable harm is the same today as it was when this Court issued its ruling. "[T]he States cannot turn back the clock on any loans that [are] forgiven." *Missouri v. Biden*, 112 F.4th 531, 538 (8th Cir. 2024) (per curiam).

In contrast, Defendants face no harm from an order staying the dismissal in this case. Neither Defendants nor third-party borrowers—who were not having their loans forgiven by the enjoined SAVE Rule—will be harmed by this Court staying the district court's dismissal order.

In these circumstances, the only equitable course is maintain the status quo, which is "an important consideration in granting [or denying] a stay." *Kansas*, 124 F.4th at 534 (quoting *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021)) (alteration in original). As this Court has recognized, pre-SAVE Rule implementation represents the status quo in this case. *See Missouri v. Biden*, 112 F.4th at 538. Moreover, until the district

13

court's dismissal, the SAVE Rule had been fully enjoined (or stayed) since July 18, 2024. *See Missouri v. Biden,* Nos. 24-2332, 24-2351, 2024 WL 3462265 (July 18, 2024) (granting administrative stay prohibiting Department of Education "from implementing or acting pursuant to the Final Rule"). So whether this Court looks at the moment before this action was file or the moment before this dismissal, the SAVE Rule not being in effect is the status quo.

Turning to public interest, it likewise "counsels in favor of maintaining the status quo." *Kansas*, 124 F.4th at 534. "There is generally no public interest in the perpetuation of unlawful agency action," or in this case the resurrection of an unlawful agency action. *Missouri v. Trump*, 128 F.4th at 997 (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

As if that were not enough, the district court's dismissal has injected "chaos and uncertainty" into the status of the SAVE Plan. Adam Minksy, *6 Key Points For Student Loans After Shock Court Decision Preserves Repayment Plan, For Now*, Forbes (Mar. 2, 2026, at 9:59am

14

ET).[2]  Some commentators have suggested that the Department of Education could "resume payments," Elizabeth Guevara, *What's Next For The SAVE Plan? What Student Loan Borrowers Need To Know*, Investopedia (Mar. 2, 2026 5:39pm ET),[3] and that this "legal development . . . could actually lead to . . . an *acceleration* in discharges for federal student loans," Adam Minksy, *Student Loan Forgiveness May Be About To Accelerate After Big Legal Update*, Forbes (Mar. 3, 2026, at 9:57am ET).[4]  And it is not just borrowers who are confused about the status of the SAVE Rule, but the student loan industry itself.  The public interest is served through preventing an unlawful agency rule from taking effect and from minimizing the uncertainty about the rule's status.

---

[2] https://www.forbes.com/sites/adamminsky/2026/03/02/6-key-points-for-student-loans-after-shock-court-decision-upends-education-departments-plans/.

[3]   https://www.investopedia.com/what-s-next-for-the-save-plan-what-student-loan-borrowers-need-to-know-11917662.

[4]   https://www.forbes.com/sites/adamminsky/2026/03/03/student-loan-forgiveness-may-be-about-to-either-stall-out-or-accelerate/.

15

## III.  In the alternative, this Court should reverse the district court and direct it to enter judgment in accordance with the parties' joint motion.

This Court has already determined the SAVE Plan is unlawful. Based on this ruling, the parties entered into a settlement agreement and jointly moved for entry of judgment.  *See* R. Doc. 91 (Add. 13).  There is no action left to resolve this case but to enter final judgment vacating the unlawful SAVE Plan.  Therefore, to avoid unnecessary litigation and expenditures of this Court's resources, this Court should reverse the district court and remand with instructions to enter judgment in accordance with the parties' joint motion.  *See* 28 U.S.C. § 2106.

## CONCLUSION

This Court should stay the district court's dismissal order, thus ensuring that the SAVE Rule remains preliminarily enjoined.  In the alternative, the Court should quickly reverse and direct the district court to enter the final judgment the parties jointly requested.

16

Dated: March 4, 2026

Respectfully submitted,

CATHERINE L. HANAWAY
Attorney General of Missouri

JAMES UTHMEIER
Attorney General of Florida

*/s/ Louis J. Capozzi III*
Louis J. Capozzi, III, #77756(MO)
  *Solicitor General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax. (573) 751-0774
Louis.Cappozi@ago.mo.gov

David Wehirst
  *Chief Deputy Attorney General*
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
david.dewhirst@myfloridalegal.com

*Counsel for Plaintiff*
*State of Missouri*
*Lead Counsel for State Plaintiffs*

*Counsel for the State of Florida*

CHRISTOPHER M. CARR
Attorney General of Georgia

TIM GRIFFIN
Attorney General of Arkansas

John Henry Thompson
  *Solicitor General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
jhthompson@law.ga.gov

Autumn Hamit Patterson
  *Solicitor General*
Dylan L. Jacobs
  *Deputy Solicitor General*
Office of the Arkansas Attorney
  General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-3661
autumn.patterson@arkansasag.gov
dylan.jacobs@arkansasag.gov

*Counsel for State of Georgia*

*Counsel for State of Arkansas*

17

DREW H. WRIGLEY
Attorney General of North Dakota

Philip Axt
  *Solicitor General*
North Dakota Attorney General's
  Office
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Telephone: (701) 328-2210
pjaxt@nd.gov

*Counsel for State of North Dakota*


DAVE YOST
Attorney General of Ohio

Mathura J. Sridharan
  *Solicitor General*
Office of the Attorney General
365 East Broad Street
Columbus, Ohio 43215
Phone: (614) 466-8980
mathura.sridharan@ohioago.gov

*Counsel for Plaintiff State of Ohio*

GENTNER DRUMMOND
Attorney General of Oklahoma

Gentner Drummond, OBA #16645
  *Attorney General*
Garry M. Gaskins, II, OBA #20212
  *Solicitor General*
Office of the Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:  (405) 521-3921
Fax:  (405) 522-4815
gentner.drummond@oag.ok.gov
garry.gaskins@oag.ok.gov

*Counsel for*
*State of Oklahoma*

18

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 2,585 words as determined by the word-counting feature of Microsoft Word 2016.

This motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 2016 in 14-point proportionally spaced Century Schoolbook font.

And this motion complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses using Windows Defender and no virus was detected.

*/s/ Louis J. Capozzi III*
Louis J. Capozzi, III

19

## CERTIFICATE OF SERVICE

I certify that on March 4, 2026, I electronically filed the foregoing motion with the Clerk of the Court by using the CM/ECF system, and that the CM/ECF system will accomplish service on all parties represented by counsel who are registered CM/ECF users. *See* Fed. R. App. P. 25(c)(2).

*/s/ Louis J. Capozzi III*
Louis J. Capozzi, III

20