UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-00520-JAR |
| | ) | |
| DONALD J. TRUMP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

This matter is before the Court on the motion for leave to intervene filed by Proposed Intervenors William Boykin, Anna Grunseth, Heather Havens, and Elizabeth Robeson ("Proposed Intervenors"). (ECF Nos. 104, 105). Proposed Intervenors seek to intervene to file a motion asking the Court to reconsider its March 10, 2026 order (ECF No. 102) entering a final judgment in this case pursuant to the Eighth Circuit's formal mandate directing the same (ECF No. 101). The Court finds that the motion to intervene is untimely. For the reasons set forth herein, the Court will: (i) grant the motion by counsel for Proposed Intervenors to appear *pro hac vice* (ECF No. 103) by separate order entered this day; (ii) grant Proposed Intervenors' motion for leave to exceed the page limitation as to their memorandum in support of their motion to intervene (ECF No. 105); (iii) deny the motion to intervene (ECF No. 104); (iv) deny as moot the motion for leave to exceed the page limitation as to the proposed motion for reconsideration (ECF No. 106); and (v) deny as moot the proposed motion for reconsideration (ECF No. 107).

## **BACKGROUND**

This action was brought by Plaintiff States to challenge the Final Rule promulgated by the Secretary of Education implementing the Savings on Valuable Education federal student loan

repayment plan (SAVE Plan).  On June 24, 2024, the Court entered an order preliminarily enjoining Defendants from continuing to grant loan forgiveness under the SAVE Plan (*see* ECF Nos. 35, 36), and on April 14, 2025, the Court expanded that injunction at the direction of the Eighth Circuit to enjoin implementation of the entire Final Rule.  (*see* ECF No. 69).  After the change in presidential administration in January 2025, the case sat largely dormant for several months following the expansion of the preliminary injunction, as the parties took no further steps to litigate the merits of the SAVE Plan Final Rule.  On December 9, 2025, the parties notified the Court that they had settled this action and jointly requested that the Court enter a final judgment vacating the SAVE Plan Final Rule.  (*See* ECF No. 91).  Instead, on February 27, 2026, the Court dismissed the action as moot, noting the lack of adversity among the parties and finding no remaining case or controversy.  (ECF Nos. 93, 94).  Plaintiffs appealed, seeking reversal of the Court's orders dismissing the case and denying a stay of the dismissal pending appeal (*See* ECF Nos. 97-99).  On March 9, 2026, the Eighth Circuit reversed the order of dismissal and directed the Court to enter the final judgment requested by the parties.  (ECF Nos. 100, 101).  The following day, the Court entered the final judgment requested by the parties, vacating the SAVE Plan Final Rule.  (ECF No. 102).  On March 13, 2026, three days after the Court entered this final judgment, Proposed Intervenors requested to join this action for the first time to request that the Court reconsider its final judgment and remand the SAVE Plan Final Rule to the Department of Education without vacating it.  (ECF Nos. 104-108).

Proposed Intervenors are borrowers of federal student loans who were enrolled in, or eligible to enroll in, the SAVE Plan.  They contend that they gained new rights on February 27, 2026 when the SAVE Plan was revived by the order of dismissal.  They allege that once the case was dismissed, the preliminary injunction was lifted, the SAVE Plan was revived, and the

2

Department of Education should have honored its terms.  Namely, Proposed Intervenors sought to obtain an immediate discharge of certain loans under the terms of the SAVE Plan, either by having already made enough payments to obtain a discharge of their loans or by reaching that discharge threshold by immediately buying back payments they would have made while their loans were in forbearance related to this litigation.  At least two of the Proposed Intervenors also allege that they will face significant tax consequences if the effective date of their loan discharge is delayed beyond the tax holiday during which discharged student loan debt was exempted from typical taxation by the American Rescue Plan Act.[1]

Proposed Intervenors move to intervene to request that the Court reconsider its March 10, 2026 order vacating the SAVE Plan Final Rule.  They contend that the regulation cannot be vacated by agreement of the parties and without an assessment of the equities that they allege counsels in favor of remanding the SAVE Plan Final Rule without vacating it.  Plaintiffs and Defendants oppose the motion to intervene, which they argue was untimely, among other defects as to the merits.  For the reasons below, the Court agrees that the motion was untimely.

## DISCUSSION

Regardless of the basis for a motion to intervene, it must be timely.  *See* Fed. R. Civ. P. 24; *United States v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010). Timeliness is a threshold question that must be addressed at the outset.  *Ritchie Special Credit Investments*, 620 F.3d at 832.  Whether intervention is timely is determined based on a review of

---

[1] The question of whether Proposed Intervenors are entitled to these rights is the subject of a separate action brought by Proposed Intervenors against Defendants, *Havens v. Department of Education*, No. 1:26-cv-816-LLA (D.D.C.), in which Proposed Intervenors seek relief related to the alleged revival of the SAVE Plan and Defendants' alleged denial of loan forgiveness under that Plan.  The Court does not herein reach the merits of any such argument.  The Court's opinion today speaks only to Proposed Intervenors' arguments as they pertain to the timeliness of their motion to intervene in this action.

3

all circumstances, with attention to the following factors: "(1) how far the litigation had progressed at the time of the motion for intervention, (2) the prospective intervenor's prior knowledge of the pending action, (3) the reason for the delay in seeking intervention, and (4) the likelihood of prejudice to the parties in the action." *Id*. (cleaned up). If a motion to intervene is untimely, it must be denied. *NAACP v. New York*, 413 U.S. 345, 365 (1973). Upon review of the totality of the circumstances, the Court finds that Proposed Intervenors filed their motion too late and have not presented an adequate excuse for their delay.

### A. Progress of the Litigation

The progress of this litigation is substantial. In fact, it has ended but for the motion to intervene. On December 9, 2025, the parties announced that they settled this case after months of settlement discussions and jointly sought a final judgment vacating the SAVE Plan Final Rule. (ECF No. 91). Since that time, the Court entered an order of dismissal (ECF Nos. 93, 94), Plaintiffs sought an emergency stay and appealed that order of dismissal (ECF No. 98), the Eighth Circuit reversed the order of dismissal and directed the Court to enter the requested final judgment (ECF Nos. 100, 101), and the Court entered the requested final judgment as mandated (ECF No. 102). Proposed Intervenors then moved to join the action. Though the final series of events following the initial dismissal took place on an abbreviated timeline, it is clear that there was ample time to intervene before this case "progressed to the end-game." *United Food & Commer. Workers Union v. United States Dep't of Agric.*, 36 F.4th 777, 780 (8th Cir. 2022).

While Proposed Intervenors are correct that the entry of a final judgment does not categorically foreclose the opportunity to intervene, the fact that the litigation has progressed so substantially "weighs strongly against intervention." *Id*. at 781. "The general rule is that motions for intervention made after entry of final judgment will be granted only upon a strong

4

showing of entitlement and of justification for failure to request intervention sooner." *Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2011) (quoting *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 116 (8th Cir. 1976)); *see also McClain v. Wagner Elec. Corp.*, 550 F.2d 1115, 1120 (8th Cir. 1977) ("[T]here is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant. Motions for intervention after judgment ordinarily fail to meet this exacting standard and are denied.") (internal quotation marks omitted).  Proposed Intervenors have not presented a sufficiently strong justification to reopen proceedings.

### B. Prior Knowledge

As for the second factor, Proposed Intervenors do not deny that they knew of the litigation long before they attempted to intervene.  As Proposed Intervenors acknowledge, the time to intervene began to run "'as soon as it became clear' that [their] interests 'would no longer be protected' by the parties in the case." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279-80 (2022) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)). They concede that the parties' December 9, 2025 joint motion is the "earliest possible moment Proposed Intervenors could have speculated that their interests were not being protected…." (ECF No. 105-1 at p. 15; *see also* ECF No. 113 at p. 4).[2]  However, no speculation was necessary

---

[2] And it seems likely that Proposed Intervenors were aware of this action far earlier, particularly from the time the Department of Education placed the loans of borrowers enrolled in the SAVE Plan in administrative forbearance as a result of this litigation. *See, e.g.*, ECF No. 105-1 at p. 5 (referencing "the 20 months of forbearance [Proposed Intervenor Grunseth] has been in since July of 2024"; Proposed Intervenor Boykin "remained in involuntary forbearance for 17 months").  Proposed Intervenors also point to publications by the Department of Education, which apparently promulgated a number of public statements regarding this litigation and the legality of the SAVE Plan, making it significantly likely that Proposed Intervenors, like many borrowers, have known of this case for quite some time. *See Minnesota Milk Producers Ass'n v. Glickman*, 153 F.3d 632, 646 (8th Cir. 1998) (upholding district court decision to deny intervention, as the district court found it "hard to believe" the proposed intervenors lacked

to understand that Proposed Intervenors' interests had been abandoned at that time. The parties' joint motion to vacate the SAVE Plan "clearly indicated" the parties' mutual intent to abandon the SAVE Plan, making clear that "it was incumbent upon [Proposed Intervenors], at that stage of the proceedings, to take immediate affirmative steps to protect their interests" if they hoped to collect on any rights conferred by the SAVE Plan. *NAACP*, 413 U.S. at 367. To be sure, Proposed Intervenors assert that timeliness should be measured from the point at which it became clear to them that "the United States agreed with Plaintiffs on both the substantive law and remedial actions – namely directing this Court to vacate the SAVE Plan Final Rule with no further briefing on the substantive issues raised by OBBBA or equitable considerations of vacatur." (ECF No. 105-1 at p. 16). This aptly describes the December 9, 2025 joint motion to vacate the SAVE Plan Final Rule. Proposed Intervenors attempt to argue that this point occurred much later, on March 5, 2026, when Plaintiffs appealed the order of dismissal to the Eighth Circuit. However, the briefing in the Eighth Circuit merely reiterated the parties' mutual position that the SAVE Plan Final Rule should be vacated. Proposed Intervenors' knowledge of the case and the parties' position months before they chose to intervene weighs against their ability to intervene at this point.[3]

---

plenty of notice given their "presumably heightened awareness of and interest in" regulatory issues directly affecting them); *see also Nevilles v. EEOC*, 511 F.2d 303, 306 (8th Cir. 1975) (internal citation omitted) (affirming denial of intervention where "[t]he district court could reasonably have determined that [the proposed intervenors] did not allege or prove that they had no knowledge of the suit during its pendency which would justify the delay in filing their motion").

[3] The Court rejects Proposed Intervenors' argument that the motion should be considered timely even if measured from December 9, 2025. Proposed Intervenors argue that the parties did not point to any significant action they took in reliance on their settlement agreement or joint motion that would be disrupted by the late intervention. However, Proposed Intervenors' argument attempts to improperly shift their burden to establish timeliness to the parties and ignores the

When a proposed intervenor "was aware of the litigation for a significant period of time before attempting to intervene," this factor "weighs heavily" against intervention. *United Food & Commer. Workers Union*, 36 F.4th at 781 (quoting *In re Wholesale Grocery Prods. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017)). Proposed Intervenors did not file their motion as soon as it was clear that no party intended to champion their interest in obtaining any benefit from the SAVE Plan. To the contrary, they "had knowledge of the case and proposed relief well before" judgment was entered. *Id*. at 781. Thus, this factor weighs against them.

### C. Reason for Delay

Proposed Intervenors offer a series of arguments attempting to explain the timing of their motion, but none tips the balance in favor of excusing their delay. Their primary excuse is that they gained new interests in this action for the first time on February 27, 2026, separate from their general interest in the continued survival of the SAVE Plan. Proposed Intervenors argue that as soon as the dismissal was entered and the preliminary injunction was lifted, they gained immediate rights to obtain a discharge of their loans. According to Proposed Intervenors, "[u]nlike [their] continuous interests in the survival of the SAVE Plan Final Rule, these interests are significantly more concrete" and justify their decision to intervene once Plaintiffs sought to overturn the Court's February 27, 2026 order. (ECF No. 113 at p. 5). There are two problems with this argument. First, the Court is not convinced that Proposed Intervenors can establish the timeliness of a motion to intervene in *this* action by pointing to the moment they gained rights they raise exclusively in a *different* action. *See Havens v. Department of Education*, No. 1:26-cv-816-LLA (D.D.C.). Whether the February 27, 2026 order of dismissal required the Department

---

significant steps the parties took to defend their requested vacatur on appeal following the order of dismissal.

of Education to immediately re-operationalize the SAVE Plan to their benefit is not the subject of this case.  The Court declines to measure timeliness based on the alleged inception of interests no intervenor actually pursues here.  Second, even assuming that Proposed Intervenors gained relevant rights on February 27, 2026, their *interests* have still been tied more broadly to the validity of the SAVE Plan, which the parties abandoned on December 9, 2025.[4]  When the parties jointly sought vacatur of the SAVE Plan Final Rule, Proposed Intervenors should have taken action to preserve any rights they intended to vindicate under the SAVE Plan.  Proposed Intervenors cite no authority allowing them to bypass their first opportunity to intervene and wait for another; to the contrary, the law is clear that intervenors must act in a timely manner as soon as their interests are implicated and may not wait until the latest possible moment.  *See Minn. Milk Producers Ass'n*, 153 F.3d at 646.

Proposed Intervenors also point to conflicting communications they received from the Department of Education, which they argue obfuscated when and whether there was a need to intervene in this action.  The Court recognizes that the Department of Education's communications to the public and to borrowers have caused profound confusion in a number of respects including with respect to the length of time borrowers would be allowed to remain enrolled in the SAVE Plan, both in light of this litigation and the One Big Beautiful Bill Act that contemplated a years-long phasing out of the SAVE Plan ending in 2028.  However, regardless

---

[4] Proposed Intervenors attempt to reframe the relevant timeline by representing that they seek only reconsideration of the final judgment and "do not, at this juncture, seek to defend the merits of the SAVE Final Rule."  (ECF No. 105-1 at p. 18).  But their proposed relief contradicts this argument.  In their proposed motion for reconsideration, Proposed Intervenors ask the Court to reverse course and remand the SAVE Plan Final Rule to the Department of Education *without vacating it*.  The time for Proposed Intervenors to weigh in on the propriety of vacatur arose directly after the parties jointly requested vacatur on December 9, 2025, and not after vacatur became a foregone conclusion mandated by the Eighth Circuit Court of Appeals.

of how quickly time would run out on the SAVE Plan, the ultimate conclusion was set: the parties were working to end the SAVE Plan. Even if their belief that the SAVE Plan would survive for some length of time was true, Proposed Intervenors were not permitted to wait for the latest possible opportunity to intervene. *Minn. Milk Producers Ass'n*, 153 F.3d at 646. The Court finds no adequate justification for Proposed Intervenors' delay.

### D. Prejudice

As for the final factor, the Court must consider "whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995) (citing *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998-99 (8th Cir. 1993)). Here, the prejudice is obvious. Allowing Proposed Intervenors to join this litigation despite their delay would require the parties to relitigate matters that have been definitively settled. *Planned Parenthood of the Heartland*, 664 F.3d at 718 (internal citations omitted) ("[T]he parties would be prejudiced because final judgment on their settlement ha[s] already been entered."). Requiring the parties to brief the merits of a judgment that has already been jointly requested, considered, appealed, and entered as mandated by the Eighth Circuit Court of Appeals is prejudicial. *See Minn. Milk Producers Ass'n*, 153 F.3d at 646 (upholding denial of intervention as untimely where movants' delayed eleventh-hour intervention "would prejudice [the plaintiffs], who would be forced to respond to the movants' arguments" after the close of the case). The relief Proposed Intervenors seek is also far more extensive than one round of additional briefing. They fail to acknowledge the monumental upheaval the parties face if the case they settled is entirely reopened as a result of the proposed motion for reconsideration, especially if the Court takes Proposed Intervenors' suggestion to remand the

9

SAVE Plan Final Rule for agency consideration without vacating it.  Moreover, Proposed Intervenors will not be significantly prejudiced by denial of intervention, as they can and will pursue their rights in another action.  *See Green v. City of St. Louis*, No. 4:15-cv-1433-RWS, 2022 WL 4119853, at *3 (E.D. Mo. Sept. 9, 2022) (intervention denied where movants "may pursue [their] claims in a separate action"); *see also Ritchie Special Credit Investments*, 620 F.3d at 834 (concluding there would be "no prejudice" to movant if intervention was denied because movant had another venue in which to vindicate their rights).

### CONCLUSION

For the reasons stated herein, the Court finds that the relevant factors weigh against intervention.  Proposed Intervenors' motion is untimely given the substantial progress of this litigation, their prior knowledge of this action and the parties' position, the insufficiency of their proposed excuses for delay, and the prejudice the parties would face if this case is reopened.

Accordingly,

**IT IS HEREBY ORDERED** that Proposed Intervenors' motion for leave to exceed the page limitation as to their memorandum in support of their motion to intervene [ECF No. 105] is **GRANTED**, but Proposed Intervenors' motion to intervene [ECF No. 104] is **DENIED**.

**IT IS FURTHER ORDERED** that Proposed Intervenors' motion for leave to exceed the page limitation as to their proposed motion for reconsideration [ECF No. 106] and the proposed motion for reconsideration [ECF No. 107] are **DENIED** as moot.

Dated this 30th Day of July, 2026.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE