# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HEATHER HAVENS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | No. 1:26-cv-816-LLA |

**DEFENDANTS' CORRECTED SUPPLEMENTAL BRIEF IN RESPONSE TO PLAINTIFFS' SUPPLEMENTAL DECLARATIONS**

## INTRODUCTION

Plaintiffs' supplemental declarations do not change the fundamental defects with this lawsuit that Defendants identified in their opening brief, which defeat the complaint's theory of the case and independently refute Plaintiffs' motion for emergency relief. On the merits, the non-party declarants identify no freestanding basis to revive REPAYE, so Plaintiffs' claims continue to fail for all the same reasons: under the circumstances here, the vacatur of (most of) the SAVE Plan Final Rule did not compel Defendants to reinstate REPAYE. *See* Defs.' Memo. in Support of Motion to Dismiss & Opp. to Pls.' Mot. for Preliminary Inj. & Stay at 24-30, ECF 24-1 (PI Opp.). As for the remaining preliminary-injunction factors, non-party declarations like these go at most to the public interest—not jurisdiction, the merits, irreparable harm, or the balance of the equities. *See id.* at 13 n.2. That interest has not changed. Defendants' actions have allowed three million borrowers (and counting) to enroll in the PAYE and Original ICR plans, and ten thousand borrowers (and counting) to receive loan forgiveness under those plans. *See id* at 39; Status Report of April 15, 2026 at 1, *American Fed. of Teachers v. U.S. Dep't of Educ.*, No. 1:25-cv-802-RBW (D.D.C.), ECF 63. Reinstating REPAYE would throw that result into serious jeopardy. It is not a step to be taken lightly, regardless of whether the three million borrowers are weighed against four plaintiffs, or four plaintiffs and five declarants.

Nor do the declarants pose any unique personal circumstances calling for emergency relief. They are not parties, and under *Trump v. CASA, Inc.*, 606 U.S. 831, 852-53, 861 (2025), equitable relief should go only as far as needed to deliver complete relief to the parties. In any case, the declarants' allegations of economic losses parallel Plaintiffs' own allegations of economic losses, which are classically compensable and thus cannot justify emergency relief. *See* PI Opp. at 19-20. Underscoring the interest in maintaining the status quo, the declarants combine several edge cases; represent a likely small set of borrowers; and can request a one-year forbearance while this litigation plays out.

Accordingly, Plaintiffs' motion for a preliminary injunction should still be denied, and this Court can largely disregard these non-party declarations.

## BACKGROUND

### I. Additional Loan Forgiveness Principles

Here, the declarants share a common problem: they are not eligible for either the PAYE or "New IBR" plans. *See* ECF 26 ¶ 6; ECF 26-1 ¶ 6; ECF 26-2 ¶ 5; ECF 26-3 ¶ 6; ECF 26-4 ¶ 6. Defendants' opening brief briefly introduced PAYE and IBR but did not discuss them in detail, as they were generally not relevant to the issues raised in that brief. *See* PI Opp. at 2-4. Indeed, they still are not, as non-party declarations cannot alter the claims or issues raised by the Plaintiffs themselves. Even so, some context will help explain the declarants' asserted injuries.

IBR is a statutory plan, while PAYE (like REPAYE) was created by regulation. PI Opp. at 3. A revision of the IBR statute created two versions of the IBR plan, called "Old IBR" and "New IBR." Borrowers are not eligible for New IBR if they had outstanding loans before July 1, 2014. *See* 34 C.F.R. § 685.209(b)(ii). There is only one form of PAYE. Borrowers are not eligible for PAYE if they had outstanding loans as of October 1, 2007. *See id.* § 685.209(b)(i).

As relevant, New IBR and PAYE both impose two caps on monthly payments: (1) 10% of discretionary income and (2) the payment under the 10-Year Standard plan, which effectively caps payments based on the size of the loan balance. *See id.* § 685.209(f)(2); PI Opp. at 12 n.1. REPAYE, when it existed, also capped payments at 10% of discretionary income but not the 10-Year Standard figure. *Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program*, 80 Fed. Reg. 67204, 67239 (Oct. 30, 2015). By contrast, Old IBR has the same two caps as New IBR and PAYE, except that the discretionary income-based cap is 15% and not 10%. *See* 34 C.F.R. § 685.209(f)(3). "Discretionary income" means the same thing for REPAYE, PAYE, and IBR: the difference between a borrower's adjusted gross income and 150% of the poverty guideline. *See id.* § 685.209(b)(4); 80 Fed. Reg. at 67239. (The Repayment Assistance Plan (RAP), another statutory plan that debuted in July 2026, has a different formula. Instead of offsetting adjusted gross income against the poverty guideline, RAP follows a progressive structure, so high-earning borrowers may pay more under RAP than REPAYE. *See* 34 C.F.R. § 685.209(b)(2).)

New IBR and PAYE also have shorter payment horizons than Old IBR (20 versus 25 years). *See id.* § 685.209(k)(1)-(2). REPAYE, when it existed, had a payment term of 20 years for undergraduate-only borrowers and 25 years for borrowers with graduate loans. *See id.*

To sum up, historically, student loan payments were capped at 15% of discretionary income under Old IBR and required 25 years of payments before forgiveness. New IBR and PAYE lowered the cap to 10% and cut the payment term to 20 years, but the declarants were not eligible for them. In 2015, REPAYE expanded the 10% cap to a broader audience, but added two trade-offs—the removal of the 10-Year Standard cap and the inclusion of spousal income—that made it primarily attractive to single-income households with large loan balances.

## II. Overview of the Declarants

To begin, Defendants need a full set of up-to-date personal disclosures to validate a borrower's declaration. As the name "income-driven repayment" implies, Defendants require borrowers applying for IDR plans to disclose their income. (REPAYE also requires spousal income if the borrower is married.) Defendants also require family size data because the federal poverty guideline (an input for discretionary income) varies based on family size. Without a full and current data set, Defendants cannot conclusively confirm the declarants' estimated payments. *See* Corrected Second Declaration of Anthony Lowery (Second Lowery Decl.) ¶¶ 4-5.

Here, four of the five declarants (all save Jessica Southern) make roughly six figures today. *Id.* ¶¶ 8, 12, 21-23, 26. The same four declarants are not projected to receive discharges under any potentially applicable repayment plan before the ICR plans sunset as required by statute. *See id.* ¶¶ 7, 11, 18, 25.

**Rachel Smith (Higher Monthly Payments).** Smith is not eligible for either PAYE or New IBR because her loans date back to 1999. ECF 26 ¶¶ 4, 6. She says that in 2019, her income was "about $123,000" and that her family size was 1, and that her income has not "changed significantly" since then. *Id.* ¶ 8. She estimates that her monthly repayment would be $709 under REPAYE and $1,134 under RAP. *Id.* ¶¶ 8, 10.

**Jessica Haines (Higher Monthly Payments).** Haines is not eligible for either PAYE or New IBR because her loans date back to 2003. ECF 26-1 ¶¶ 4, 6. She says that she has an income of "about $111,000" and a family size of 2. *Id.* ¶ 9. She estimates that her monthly payment under REPAYE would be $654.01; under RAP, it would be $925. *Id.* ¶¶ 9-11. Defendants cannot confirm this without a spousal income statement. Second Lowery Decl. ¶¶ 14-15. Haines is married, but her payment calculations do not appear to include spousal income. *See id.*; ECF 26-1 ¶¶ 9 & n.1, 12.

**Shanna Hayes (Higher Monthly Payments).** Hayes is not eligible for either PAYE or New IBR because her loans date back to 2007. ECF 26-2 ¶¶ 4-5. She does not disclose her income on her declaration, but estimates a monthly payment under REPAYE of $591 and under RAP of $717, *id.* ¶¶ 9-10. Based on the above, the agency estimates that her current adjusted gross income is around $103,500. Second Lowery Decl. ¶¶ 22-23.

**Jill Lomheim (Higher Monthly Payments).** Lomheim is not eligible for either PAYE or New IBR because her loans date back to 2004. ECF 26-3 ¶¶ 4, 6. She says that she has an income of "about $113,000" and a family size of 3. *Id.* ¶ 11. She estimates that her monthly payment under REPAYE would be $604.73; under RAP, it would be $847. *Id.*

**Jessica Southern (Shorter Payment Term).** Southern is not eligible for either PAYE or New IBR because her loans date back to 2002. ECF 26-4 ¶¶ 4, 6. Unlike the other four borrowers, Southern is projected to receive a discharge under REPAYE before the ICR plans sunset. Second Lowery Decl. ¶ 30. (Her most recent qualifying payment would take place in 2026 due to various credits and adjustments, *id.*, so even under Plaintiffs Havens and Robeson's theory, she would not be eligible for the pre-2026 tax holiday.) She does not disclose her income or family size on her declaration, but estimates that her lowest monthly payment under a non-REPAYE plan would be $156 under Original ICR. ECF 26-4 ¶ 12. If her family size is 1, her adjusted gross income is $25,230 and her Old IBR payment would be $18/month. Second Lowery Decl. ¶¶ 37-38. If her family size is 2, her adjusted gross income is $31,000 and her Old IBR payment would be $0/month. *Id.* ¶¶ 35-36.

## ARGUMENT

### I. Non-Party Declarations Are Relevant Only (at Most) to the Public Interest

Plaintiffs have represented that these declarations go only to "the balance of the equities and the public interest" and "raise no new claims or legal arguments." *See* Pls.' Mot. for Leave to File Supplemental Declarations in Support of Their Mot. for a Preliminary Inj. & Stay ¶ 1, ECF 23. By itself, that claim renders the declarations largely irrelevant. But it is also only half right: non-parties are relevant only (at most) to the public interest. *See Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 213 (D.D.C. 2012) (under *Winter v. NRDC*, 555 U.S. 7 (2008), non-party harm goes only to the public interest and not to irreparable harm); *see also Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018); *Church v. Biden*, 573 F. Supp. 3d 118, 14 (D.D.C. 2021).

Under *CASA*, non-parties are not relevant to the balance of the equities. If the Court can craft party-specific relief, the balance of the equities does not favor universal relief. *See* PI Opp. at 40 (citing *CASA*, 606 U.S. at 861). The balance of the equities and the public interest merge when the Government is a party, but the Government was a party in *CASA* too. Thus, the merger of the two factors is a basis to disregard the non-party declarations—not to rely on them.

### II. Five Non-Party Declarations Add Little to the Public Interest Analysis, and Three Million Borrowers Still Rely on the Status Quo

#### A. Any Public Interest in Reinstating REPAYE Is Outweighed by the Greater Public Interest in Maintaining the Status Quo

As Defendants' opening brief explained, "reinstating REPAYE would throw the *Missouri* settlement into doubt, causing major collateral damage to the nearly three million borrowers currently enrolled in PAYE and Original ICR—programs that still exist *because of* the *Missouri* settlement." PI Opp. at 39. By contrast, the public interest in restoring REPAYE, as seen through the lens of the five new declarations, is diluted thrice over. *First*, the declarants are small in number: compared to three million, nine is little more than four. *Second*, the declarants' allegations are transitory: the loss of a discount is a classically compensable economic injury, and thus "particularly unsuited for emergency relief" (not that non-parties may seek such relief). *Id.* at 38. *Third*, the public interest factor still "'rises and falls with the strength of [the movant's] showing' on the merits." *Hanson v. District of Columbia*, 120

F.4th 223, 247 (D.C. Cir. 2024) (citation omitted); *see also id.* (adding that a court "must balance the equities of the parties and the public even when a party seeks to restrain the enforcement of an allegedly unconstitutional law"). Here, the declarants add nothing to Plaintiffs' deficient merits claims.

Nor have Plaintiffs shown that the five declarants represent a meaningfully larger constituency that might shift the public interest. Rather, the declarants are edge cases that do not even purport to be broadly representative of the typical borrower.

1. To be in repayment but not eligible for PAYE, loans would have to be at least 19 years old.
2. Many declarants in that situation would have already paid off their loans in the ordinary course or obtained discharges under SAVE or Public Service Loan Forgiveness.
3. To have not received an Old IBR discharge by now, borrowers would have to be in repayment for fewer than 25 years.

The first four declarants appear to share three other distinctive traits:

4. Their discretionary incomes are high, making the delta between REPAYE's 10% income cap and Old IBR's 15% income cap look larger in absolute terms—even if it is more *manageable*.
5. They are single, or their spouses make significantly less than them. Otherwise, their monthly payments would be lower under Old IBR than REPAYE.
6. Despite their high incomes today, their loan balances still exceed $100,000. Second Lowery Decl. ¶ 5. Thus, Old IBR's balance-based payment cap does not apply. PI Opp. at 12 n.1.

In short, the declarants may well be *sui generis* or close to it. This is far from the "strong basis in evidence" required to find that the public interest supports emergency relief.

### B. Any Public Interest in Halting the SAVE Transition Is Outweighed by the Public Interest in Carrying Out Congress' Mandate to Sunset the ICR Plans

Nor should the Court rely on the declarations to enjoin the SAVE transition without reinstating REPAYE. Four of five declarants do not say they want to remain in a forbearance—they want to make payments, just under a cheaper plan than the ones Defendants currently offer. (Lomheim and Hayes have already left SAVE. *See* ECF 26-2 ¶ 8; ECF 26-3 ¶¶ 8-9.) More importantly, Congress directed Defendants to sunset the ICR plans. *See* PI Opp. at 6-9, 28-30. Whenever the

Government is "enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *CASA*, 606 U.S. at 835 (citation omitted).

Conversely, emergency relief is unnecessary to remedy any alleged injuries of the sort described by these declarants. The agency offers a menu of options to manage short-term repayment issues, all of which could mitigate any harm while this Court rules on the merits.

*One-Year Forbearance.* All five declarants say they will have to make excessive monthly payments (or in Southern's case, any monthly payments) without REPAYE. Leaving aside for now whether those payments are actually excessive—Southern might pay nothing under Old IBR, *see* Second Lowery Decl. ¶¶ 36, 38—there is one clear way for the declarants to put off monthly payments after moving to an operative repayment plan: they can unilaterally request a forbearance under 34 C.F.R. § 685.205(a)(1), under which Defendants may allow borrowers to not make payments for "poor health or other acceptable reasons." Such a forbearance may last for "up to one year," *id.* § 685.205(c)(1)(i), giving the Court enough time to decide the case "on the merits before the projected injury occurs," PI Opp. at 22—even ignoring the fact that these non-parties do not and may not seek relief in their own right.

*Public Service Loan Forgiveness.* The first four declarants say nothing about a powerful loss mitigation measure, for which all four might be eligible: Public Service Loan Forgiveness (PSLF), which provides tax-free loan forgiveness after ten years instead of REPAYE's minimum twenty. *See generally* 34 C.F.R. § 685.219(e)(1); 26 U.S.C. § 108(f)(1). All four have been in repayment for well over a decade, and all four have jobs traditionally eligible for PSLF. *See* ECF 26 ¶ 3 (Smith is a psychologist); ECF 26-1 ¶ 3 (Haines works for a university), ECF 26-2 ¶ 3 (Hayes is a teacher), ECF 26-3 ¶ 3 (Lomheim is a teacher). At minimum, the Court should not rely on these declarations without understanding the declarants' PSLF status.

*Extended Graduated Repayment Plan.* If the declarants are solely focused on lowering their short-term loan repayments, they could significantly narrow the gap to REPAYE by enrolling in the Extended Graduated Repayment Plan. For Haines, that plan starts at $691 and rises to $1,274. Second Lowery Decl. ¶ 16. For Lomheim, that plan starts at $809 and rises to $1,384. *Id.* ¶ 28.

*Relatively High Incomes.* The first four declarants quote larger projected payments than Plaintiffs Boykin and Grunseth. The latter two say that without REPAYE, they would pay $124/month and $76/month, respectively. ECF 19-4 ¶ 7 (Boykin); 19-6 ¶ 6 (Grunseth). By contrast, the four declarants would pay at least $717/month. ECF 26 ¶ 10; 26-1 ¶ 10; 26-2 ¶ 9; 26-3 ¶ 10. But there is nothing inherently improper about that. The point of income-driven repayment plans is that as a borrower makes more, they should pay more. Defendants cite their large projected payments to show injury, but what those payments really show is that their incomes are also large.

## III. The Declarants Are Not Entitled to Injunctive Relief

The declarants may not receive injunctive relief in their own right because they are not parties to this action. Under *CASA*, courts crafting relief should focus on providing "complete relief *to the plaintiffs before the court*" and not on whether a broad injunction could aid "everyone potentially affected by an allegedly unlawful act." PI Opp. at 40 (quoting *CASA*, 606 U.S. at 852). Indeed, Plaintiffs do not actually appear to request injunctive relief on the declarants' behalf. *Cf.* ECF 23 ¶ 1 (asserting that "[t]he declarations raise no new claims or legal arguments and are offered solely in support of the pending motion" for a preliminary injunction).

True, complete relief to the parties may sometimes entail incidental relief to non-parties. *See* PI Opp. at 43. But because the Court can award borrower-specific relief, *see id.* at 40-42, there is no legal basis to issue programmatic relief just because non-party borrowers repeat the borrowers' theories of harm. Rather, once a party receives complete relief, "providing relief to nonparties 'would not render [the party's] relief any more complete.'" *See id.* at 40 (quoting *CASA*, 606 U.S. at 852). The declarations may add color to *Plaintiffs'* public-interest claims, but they can do no more than that. So it remains the case that the broadest relief this Court could issue here would be limited to the four named Plaintiffs. *See id.* at 40-41 (citing *CASA*, 606 U.S. at 852-53).

## CONCLUSION

For the reasons above and in Defendants' opening brief, ECF 24-1, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: August 17, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Winston Shi*
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.: 202-880-0387
E-mail: winston.g.shi@usdoj.gov

*Counsel for Defendants*