**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HEATHER HAVENS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | No. 1:26-cv-816-LLA |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

ARGUMENT.....1

I. Plaintiffs Havens and Robeson Lack Standing for Their Form 1099-C Claims.....2

A. Plaintiffs' Alleged Form 1099-C Injuries Are Self-Inflicted.....3

B. Plaintiffs Do Not Appear to Dispute that Even a REPAYE Discharge May Still Be Classified as a 2026 Discharge.....4

C. The IRS Retains the Final Say on Taxing Plaintiffs' Discharges.....5

II. Plaintiffs' REPAYE Claims Fail.....6

A. The Agency Defended REPAYE on the Merits and in Full.....7

1. The Agency Never Accepted the Existence of a "Hybrid Rule" and Never Said REPAYE Could Survive Even If the "Hybrid Rule" Did Not.....8

2. The Agency Never Tried to Reinstate REPAYE's Monthly Payment Formula Without Its Enjoined Loan Forgiveness Provisions.....11

B. Plaintiffs Fundamentally Misconstrue *Small Refiner*.....12

1. *Small Refiner* Does Not Require a Fresh Rulemaking in Every Case.....13

2. The Agency Appropriately Considered the *Missouri* Injunctions and Opinions When Settling the Case.....15

III. Plaintiffs Confirm That Their Challenge to the SAVE Transition Stands and Falls with Their REPAYE Claim.....17

IV. Plaintiffs' SAVE Plan Final Rule Claims Rely on the Dissolution of *Missouri*'s Injunction Against that Rule, but Their Reply Brief Assumes a Different Source.....18

A. Plaintiffs' Reply Brief Mischaracterizes Their Own Theory of the Case, Which Turns on the Order Dismissing *Missouri*, and Not the Vacatur of the SAVE Plan Final Rule.....19

B. Alternatively, the Court Should Dismiss These Claims on Comity Grounds.....21

CONCLUSION.....23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Action on Smoking & Health v. Civil Aeronautics Board*,
713 F.2d 795 (D.C. Cir. 1983) .....12

*Arkema Inc. v. EPA*,
618 F.3d 1 (D.C. Cir. 2010) .....15

*Biden v. Missouri*,
145 S. Ct. 109 (2024) .....10

*Bowen v. Georgetown University Hospital*,
488 U.S. 204 (1988) .....15

*Clean Air Council v. Pruitt*,
862 F.3d 1 (D.C. Cir. 2017) .....16

*Clinton v. City of New York*,
524 U.S. 417 (1998) .....5

*Cozzi v. CIR*,
88 T.C. 435 (1987) .....2

*Gardner v. United States*,
211 F.3d 1305 (D.C. Cir. 2000) .....5

*Harper v. Virginia Dep't of Taxation*,
509 U.S. 86 (1993) .....19

*Humane Soc'y of the U.S. v. USDA*,
41 F.4th 564 (D.C. Cir. 2022) .....16

*In re Crosby*,
261 B.R. 470 (D. Kan. Bkrtcy. 2001) .....6

*In re Goebel*,
_ F.4th _, 2026 WL 2163962 (2d Cir. July 28, 2026) .....6

*Iowa v. Wright*,
154 F.4th 918 (8th Cir. 2025) .....16

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) .....21

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................5

*Missouri v. Biden*,
112 F.4th 531 (8th Cir. 2024) ........................................................16

*Missouri v. Trump*,
128 F.4th 979 (8th Cir. 2025) ........................................................7, 8, 12, 16

*Missouri v. Trump*,
2026 WL 2199020 (E.D. Mo. July 30, 2026) ........................................................19, 21, 22, 23

*Montefiore Med. Ctr. v. Kennedy*,
2025 WL 2801237 n.11 (D.D.C. Sept. 30, 2025) ........................................................14

*National Family Planning & Repro. Health Ass'n, Inc. v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006) ........................................................4

*National Fuel Gas Supply Corp. v. FERC*,
59 F.3d 1281 (D.C. Cir. 1995) ........................................................20

*Nat'l Venture Capital Ass'n v. Duke*,
291 F. Supp. 3d 5 (D.D.C. 2017) ........................................................16

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) ........................................................17

*Open Cmtys. All. v. Carson*,
286 F. Supp. 3d 148 (D.D.C. 2017) ........................................................16

*Small Refiner Lead Phase-Down Task Force v. U.S. EPA*,
705 F.2d 506 (D.C. Cir. 1983) ........................................................6, 12, 13

*Steel Co. v. Citizens for a Better Envt.*,
523 U.S. 83 (1998) ........................................................20

*Washington Metro. Area Transit Auth. v. Ragonese*,
617 F.2d 828 (D.C. Cir. 1980) ........................................................22

**Other Authorities**

Brief for Respondents, *Iowa v. Wright*,
2024 WL 3834156 (8th Cir. filed Aug. 6, 2024) ........................................................16

Reply Brief of Petitioners, *Iowa v. Wright*,
2024 WL 4204369 (8th Cir. filed Sept. 3, 2024) ........................................................16

**ARGUMENT**

In June 2024, the Department of Education partially reinstated the 2015 REPAYE Rule. It did not abandon its efforts to revive REPAYE until the Eighth Circuit enjoined REPAYE loan forgiveness in August 2024 and confirmed its injunction in February 2025. It was only after those decisions (and the passage of a law that shut down all ICR plans in three years anyway) that the agency settled the *Missouri* litigation on terms that ended REPAYE. Instead of engaging with Defendants on caselaw and the facts, Plaintiffs' reply brief inventively retells the story of the *Missouri* litigation, downplaying the Eighth Circuit at every turn based on arguments the agency did not make in 2024. But Plaintiffs' entire theory of the case hinges on the legal effect of various Eighth Circuit orders, and the agency did not err in respecting the Eighth Circuit's injunctions.

The reply brief collaterally attacks at least three decisions of the Eighth Circuit. That court enjoined loan forgiveness under REPAYE, but Plaintiffs say it never actually ruled on REPAYE. That court also enjoined the SAVE Plan Final Rule, but Plaintiffs say the Final Rule remained "operative law" until March 2026. That court also reversed the district court's February 2026 dismissal of the case—a retroactively-applicable judicial decision that fatally undermines Plaintiffs' theory that by dismissing the case, the district court dissolved the injunction against the SAVE Plan Final Rule. Even so, Plaintiffs suggest that regulatory benefits vest automatically, instantaneously, and irrevocably, such that an appellate court is powerless to correct erroneous trial court decisions. The common thread is that Plaintiffs do not believe the Eighth Circuit's rulings are legally meaningful. But Defendants must respect those rulings regardless of whether Plaintiffs believe they are correct.

In addition, Plaintiffs Havens and Robeson lack standing to demand that the agency refrain from disclosing their loan discharges to the Internal Revenue Service (IRS). Their brief fails to challenge two dispositive points: the agency previously offered borrowers the same relief Plaintiffs demand today, and even if this Court declares that Plaintiffs are entitled to discharges under REPAYE, the IRS might tax those discharges anyway. Plaintiffs seem to imply that the IRS does *not* retain the final say on taxability, but their conclusory disagreement cannot defeat a motion to dismiss. The Court should dismiss this case for the reasons explained in Defendants' opening brief and below.

## I. Plaintiffs Havens and Robeson Lack Standing for Their Form 1099-C Claims

In this four-plaintiff lawsuit, two plaintiffs (Havens and Robeson) are eligible for loan forgiveness under any repayment plan, but plead that they will lose eligibility for the 2021-2025 tax holiday for student loan forgiveness unless their discharges take place under REPAYE specifically. PI Opp. at 11-12, ECF 24-1. In effect, they seek a court order blocking the agency from filing an Internal Revenue Service (IRS) Form 1099-C to disclose Plaintiffs' future loan discharges to the IRS. *See id.* at 15-16. The other two plaintiffs (Grunseth and Boykin) plead that their monthly loan payments would be cheaper under REPAYE than the next-cheapest alternative. *Id.* at 12-13.[1]

As Defendants' opening brief explains, Havens and Robeson lack standing for their tax-related challenge. *See id.* at 15-19. The reply brief defends their standing, but fails to challenge many of Defendants' key premises—each of which independently defeats standing.

*First*, Plaintiffs lack standing to sue on a self-inflicted harm. In their reply brief, Plaintiffs do not dispute (and cannot dispute) that in the lawsuit *American Federation of Teachers v. U.S. Department of Education*, No. 1:25-cv-802-RBW (D.D.C.) (*AFT v. ED*), the agency already offered borrowers the relief Plaintiffs want (that is, not filing a 1099-C) if those borrowers applied for a new repayment plan by December 31, 2025 and were immediately discharge-eligible under the new plan once the application was approved. *Id.* at 15-16. That alone is enough to render Plaintiffs' alleged injuries self-inflicted and thus to rule out standing.

*Second*, Plaintiffs may not sue the Department of Education to challenge the unknown future rulings of the IRS, which is not a party to this suit. A loan discharge occurs, for tax purposes, at "[t]he moment it becomes clear that a debt will never have to be paid." *See id.* at 17 (quoting *Cozzi v. CIR*, 88 T.C. 435, 445 (1987)). Plaintiffs want that date to be in 2025, and yet the alleged source of those rights is the March 2026 vacatur of the SAVE Plan Final Rule. Plaintiffs' Form 1099-C claims thus pose a

---

[1] On a motion to dismiss posture, the agency currently does not challenge Grunseth and Boykin's standing to demand REPAYE's monthly payment formula. As alleged, those plaintiffs would pay an extra $1,320 over two years, a figure that goes to irreparable harm and not standing. However, Havens does not contest Defendants' point that she would pay more under REPAYE than an operative plan, *see* PI Opp. at 12 & n.1, and has thus waived any standing claim for that allegation.

difficult tax question that the IRS should address in the first instance. *See id.* at 17-18. Plaintiffs' reply brief simply ignores this argument. That is another independently sufficient basis to rule out standing.

*Third*, the agency's filing of a 1099-C (or not) would not control the taxability of Plaintiffs' discharges, as the IRS retains the final say on whether a discharge is taxable. *See id.* at 18. Plaintiffs respond that a 1099-C is at least close enough to a finding of taxability for there to be standing. PI Reply at 17-18, ECF 29. But in the one case they cite for that proposition, the IRS had already provided guidance on filing a 1099-C, making the tax question in that case far more straightforward. So Plaintiffs lack standing on that basis too.

### A. Plaintiffs' Alleged Form 1099-C Injuries Are Self-Inflicted

Plaintiffs acknowledge that in *AFT v. ED*, the agency agreed to not report student loan discharges as taxable income as long as borrowers (including SAVE borrowers) applied for a new plan by the end of 2025. *See* PI Reply at 16; PI Opp. at 15-17. Even though Plaintiffs Havens and Robeson missed that deadline, they say their tax injuries are not self-inflicted because the Eastern District of Missouri did not vacate the SAVE Plan Final Rule until after the deadline. PI Reply at 16. That is irrelevant. The agency's offer did not turn on whether a borrower was enrolled in SAVE or REPAYE. So regardless of whether the non-operative plan Plaintiffs were enrolled in was SAVE or REPAYE, Plaintiffs could have applied for a new plan in 2025 and gotten an immediate discharge under that plan, thereby qualifying for the *AFT* agreement.

Plaintiffs alternatively suggest the agency could have personally informed them of the deadline and that with more information, they could have "evaluate[d] their best course of action," *see id.* at 17, but they do not explain how more information would have helped, and they cite no cases for this striking assertion. The relevant information was already public. All Plaintiffs had to do was apply.[2]

[2] Plaintiffs briefly claim the *AFT v. ED* deal was a bad deal for borrowers. But their complaints boil down to wishing that the SAVE Plan Final Rule had not been enjoined. Robeson says that SAVE shortened her payment term from 300 to 216 months, so leaving SAVE would mean forfeiting her claim to a refund for all payments made after payment 216. *See* PI Reply at 18. Havens adds that had she applied for a new plan in 2025, she would have had to "mak[e] payments [on her remaining, non-

And the D.C. Circuit has already held that a litigant cannot dispel a finding of self-inflicted harm by protesting that nobody told them about the situation. In *National Family Planning & Repro. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006), an association doubled down on its self-inflicted harm by failing to ask the administering agency about "the conflicts that it claims to spot between [an] amendment and the regulations." The panel held that when something is unclear to a regulated party, the best course of action is to ask the agency. Since the regulated party did not ask questions until it filed suit, under the circumstances, it "has *chosen* to remain in the lurch." *Id.*

Finally, Plaintiffs attempt to distinguish the entire self-inflicted harm doctrine by arguing that a self-inflicted harm must be a "substantial cause," and not just a but-for cause, of the injury. *See* PI Reply at 18. Namely, they argue that in one self-inflicted harm case (*National Family Planning*), the plaintiffs could have resolved the issue by asking the agency for information, and that "[h]ere, there is no uncertainty" because the agency has made its position on REPAYE clear. *See id.* But the clarity of the agency's position on REPAYE is not the self-inflicted harm. Plaintiffs' failure to take the agency's offer to apply for a new repayment plan is the self-inflicted harm. And it would not have been hard for Plaintiffs to take advantage of the *AFT* deal, which said simply that if borrowers applied for a new plan and were eligible for discharge under that plan before the end of 2025, the agency would classify their discharges as pre-2026 discharges and would act accordingly with the IRS.

### B. Plaintiffs Do Not Appear to Dispute that Even a REPAYE Discharge May Still Be Classified as a 2026 Discharge

In the opening brief, Defendants explained that the complaint raises a tricky tax question and that they did "not know how the IRS would classify a 2026 switch back to REPAYE." PI Opp. at 17. Because "Plaintiffs' theory of the case relies on pure speculation about the complex legal question of how the IRS might classify REPAYE discharges," and "anything the Court might say here about the legal timing of REPAYE loan discharges in 2026 would not bind the IRS," Plaintiffs' tax arguments

---

dischargeable loans] under a more expensive plan than she was entitled to." *See id.* But Robeson and Havens were enrolled in SAVE and at all relevant times, SAVE was enjoined. Robeson could not have reasonably assumed that SAVE would return, and Havens was not "entitled" to make payments under SAVE at all.

were too speculative and insufficiently redressable for standing. *Id.* at 18. Plaintiffs did not respond. Because they bear the burden of pleading standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), their failure to respond means their Form 1099-C claims should be dismissed.

Instead, Plaintiffs attempt to artfully foreclose relief in any future forum by suggesting that if the agency moves them to a different repayment plan, they will concede to any future tribunal that any discharges under the new plan will be classified as 2026 discharges. *See* PI Reply at 21-22 ("In fact, the IRS would be correct to require payment of taxes for the loan discharge."). In plain English, they believe that if they damage their own future litigation prospects enough, this Court will conclude only it can provide relief. This is not a productive litigation strategy. Nor would it even work. It is not enough to show that an IBR/PAYE/Original ICR discharge will be classified as a 2026 discharge (and in any case, Plaintiffs merely assume this). Plaintiffs must also show that the IRS would classify a REPAYE discharge as a 2025 discharge, notwithstanding the fact that their complaint says the 2015 REPAYE Rule became the law in March 2026.[3]

### C. The IRS Retains the Final Say on Taxing Plaintiffs' Discharges

Plaintiffs defend their tax-related theories of standing because, in their view, as soon as the agency reports a discharge as taxable income to the IRS, the report "is the … injury itself." PI Reply at 20. For this point, they cite a case about contingent tax liabilities, where "if HHS ultimately denies the State's waiver requests, New York law will automatically require [the City of New York] to make retroactive tax payments to the State." *Id.* (citing *Clinton v. City of New York*, 524 U.S. 417, 426 (1998)). But an IRS Form 1099-C is not a contingent liability. The discharge is the contingent liability.

[3] Plaintiffs' remaining arguments criticize the inconvenience of alternative fora, but their criticisms are the same garden-variety criticisms of the Tax Court and district court refund litigation that any tax litigant might make. In particular, Plaintiffs say that in special circumstances, the D.C. Circuit might allow a taxpayer to challenge a tax in district court without pre-paying her taxes. PI Reply at 22. But as their primary case explains, taxpayers can usually sue in Tax Court without pre-paying their taxes, provided the IRS sends them a deficiency notice. *See Gardner v. United States*, 211 F.3d 1305, 1311 (D.C. Cir. 2000). The D.C. Circuit's point was that when the IRS forecloses Tax Court jurisdiction by failing to send a deficiency notice, *id.* at 1307, the taxpayer might need to sue in district court, *id.* at 1311-12. The question *here* is not whether Tax Court (et al.) are ideal fora: it is whether they are adequate.

The agency has consistently argued (and it cannot reasonably be disputed) that the IRS retains the final say on tax liability, PI Opp. at 17 & n.5, and the IRS is not bound by the agency's opinion on when the latter should file a 1099-C. In plain English, even if the agency does not report the discharge to the IRS as taxable income, the IRS could still classify the discharge as taxable income anyway.

In any case, not all contingent liabilities are injuries in fact for standing purposes. Rather, "[a]s in any case involving an allegation of future injury, the question remains whether the contingent liability 'creates an imminent threat of injury.'" *In re Goebel*, _ F.4th _, 2026 WL 2163962, at *6 (2d Cir. July 28, 2026) (citation omitted). Since none of the parties actually know how the IRS would classify a discharge under REPAYE, Plaintiffs' Form 1099-C injuries are far from imminent or redressable. *See* PI Opp. at 17-18. Plaintiffs identify only one case (a 2001 bankruptcy decision) where a court treated a 1099-C as a near-guarantee of tax liability. *See In re Crosby*, 261 B.R. 470 (D. Kan. Bkrtcy. 2001). In that case, however, the question of taxability appears to have been considerably more straightforward, as the IRS had already issued a regulation "requiring a discharge of indebtedness covered by [the relevant statute] to be reported" in a 1099-C. *See id.* at 474. Likewise, the question of when the discharge took place does not appear to have been at issue, as the parties appeared to agree that the discharge took place during the 1995 tax year. *See id.* at 472.

## II. Plaintiffs' REPAYE Claims Fail

Plaintiffs say that the March 2026 vacatur of (most of) the SAVE Plan Final Rule automatically reinstated the 2015 REPAYE Rule that the SAVE Plan Final Rule modified. That is wrong. Under the D.C. Circuit's decision in *Small Refiner Lead Phase-Down Task Force v. U.S. EPA*, 705 F.2d 506, 545 (D.C. Cir. 1983), an agency is not required to reinstate an older rule that shares a legal defect with the rule that replaced it. *See* PI Opp. at 25-28. Plaintiffs' reply brief does not dispute that the Eighth Circuit enjoined REPAYE's loan forgiveness provisions in the *Missouri* case or that *Small Refiner* remains good law. Instead, Plaintiffs propose reading both cases so narrowly that they mean nothing at all.

*First*, Plaintiffs say that in *Missouri*, the Eighth Circuit never enjoined the 2015 REPAYE Rule, or at the very least never authorized the agency to disclaim REPAYE's monthly payment formula. This argument is easily disproved. The Eighth Circuit explicitly held that REPAYE and SAVE

suffered from a common legal infirmity. *Missouri v. Trump*, 128 F.4th 979, 998 (8th Cir. 2025). On that generally applicable basis, the panel enjoined REPAYE's loan forgiveness provisions. *See id.* And on appeal, the agency defended the entire 2015 REPAYE Rule on the merits, raising generally applicable arguments common to both REPAYE's loan forgiveness provisions and monthly payment formula. The reason that the Eighth Circuit did not explicitly enjoin REPAYE's monthly payment formula was that unlike the loan forgiveness provisions, the agency made no attempt to reinstate the monthly payment formula, either in conjunction with some other loan forgiveness rule or on a standalone basis.

*Second*, Plaintiffs say that even under *Small Refiner*, no matter how sharply the court vacating a replacement rule criticizes the rule it replaced, the replaced rule automatically springs back into effect (even though it suffers from the same flaw as the replacement rule) until the agency revokes the replaced rule through notice and comment. If that is true, then when settling a case, the Government may not account for a court order that enjoined one of its signature programs. Neither logic nor law requires such a confounding result. The Eighth Circuit enjoined REPAYE, and the agency was entitled to account for that injunction in deciding how to proceed in the aftermath of that injunction.

**A. The Agency Defended REPAYE on the Merits and in Full**

Plaintiffs admit the Eighth Circuit enjoined REPAYE's loan forgiveness provisions, *see* PI Reply at 4, but try to distinguish *Missouri* on the facts anyway. Their briefing misreads the *Missouri* litigation in at least two ways, both dispositive. *First*, Plaintiffs say that "no court ever adjudicated the 2015 REPAYE regulation's validity," that the Eighth Circuit's injunction applies only to the so-called "hybrid rule" that the agency (according to the state plaintiffs) fashioned after the district court's partial injunction of the SAVE Plan Final Rule, and that the Eighth Circuit "never analyzed REPAYE alone." *See id. Second*, they say that at the very least, the Eighth Circuit's opinion enjoined only REPAYE's loan forgiveness provisions and thus provides no basis to disclaim REPAYE's monthly payment formula. Thus, they say the agency should reinstate REPAYE's monthly payment formula without loan forgiveness. *See id.* at 5.

Both of these claims sharply distort the record. The agency repeatedly defended the 2015 REPAYE Rule's validity on grounds applicable to the entire rule. And its consistent position was that

if a court enjoined the SAVE Plan Final Rule in full, the next step would be to reinstate the 2015 REPAYE Rule in full. That is the same argument Plaintiffs press today, except that today, the Eighth Circuit has already rejected it. Conversely, REPAYE's monthly payment formula was designed with forgiveness in mind. The agency has never tried administering REPAYE without loan forgiveness. The same was true for SAVE. And the Eighth Circuit enjoined the SAVE Plan Final Rule in full.

**1. The Agency Never Accepted the Existence of a "Hybrid Rule" and Never Said REPAYE Could Survive Even If the "Hybrid Rule" Did Not**

Plaintiffs cannot sensibly limit the *Missouri* litigation to the so-called "hybrid rule," an inaccurate term the agency has never used. *See* PI Opp. at 5. Their argument is both logically incomplete and factually incorrect. Logically, this argument fails because it assumes REPAYE is so qualitatively different from the "hybrid rule" that the reasoning for the Eighth Circuit's injunction would not apply to REPAYE. But the agency consistently argued that the same statute (the ICR statute) authorized loan forgiveness under both the 2015 REPAYE Rule and the SAVE Plan Final Rule. Even if the "hybrid rule" were real (and it was not), the agency necessarily relied on the same authority for that rule as well. Factually, this argument fails because the Eighth Circuit clearly said its analysis applied to the 2015 REPAYE Rule: "[T]he portion of the old rule the federal officials seek to revive suffers from the same legal errors as the one challenged here [that is, the SAVE Plan Final Rule] – the Secretary [of Education] lacks the power to authorize loan forgiveness in an ICR plan." *Missouri v. Trump*, 128 F.4th at 998. Plaintiffs do not explain why REPAYE is protected from the Eighth Circuit's logic, and the Eighth Circuit held that it is not.

As Defendants explained in their opening brief, when the Eastern District of Missouri partially enjoined the SAVE Plan Final Rule, the agency reinstated the corresponding portions of the 2015 REPAYE Rule. PI Opp. at 4-6. The agency scored an initial victory by persuading the district court to leave REPAYE in place. *See id.* at 5 (citing Order of July 10, 2024, *Missouri*, ECF 54). On appeal, the plaintiff states asked the Eighth Circuit for "an immediate administrative stay blocking Defendants from continuing to unlawfully forgive student loans." Emergency Mot. for Admin. Stay Pending Ruling on Mot. for Inj. Pending Appeal at 1, *Missouri*, Entry ID No. 5412905 (8th Cir. filed July 12,

2024) (Stay Mot.). In response, the agency defended the SAVE Plan Final Rule in full, and it also defended the 2015 REPAYE Rule in full. It did not argue that the SAVE / REPAYE plan, as modified by the district court's partial injunction, rested on different legal foundations from REPAYE. Nor could it have, as the same statutory authority governed all forms of loan forgiveness under SAVE, REPAYE, and any combination thereof.

In their stay motion, the states criticized the agency for creating a so-called "hybrid rule" and said that the agency could not "mix-and-match different provisions from different repayment plans into a new 'hybrid' plan without notice and comment." *Id.* at 3. They added (correctly) that the 2015 REPAYE Rule "relied on the same exact statutory authority that the district court here said does not authorize loan forgiveness." *Id.* at 3. Thus, the states asked the Eighth Circuit to "prohibit[] Defendants from continuing to forgive principal or interest for borrowers enrolled in the 'SAVE' plan or the new 'hybrid' plan, or by otherwise using authority under [the ICR statute]." *Id.* at 7.

Although the agency *tried* to argue that the much older REPAYE plan should not have been before the courts in *Missouri*, and presented that argument to both the Eighth Circuit and Supreme Court, it did not prevail. *See* Opp. to Emergency Mot. for an Immediate Admin. Stay at 10, *Missouri*, Entry ID No. 5413114 (8th Cir. filed July 12, 2024) (Stay Opp.) (writing that "preexisting ICR plans [like REPAYE] … have not been challenged in this case and long predate plaintiffs' suit"); Response in Opp. to Emergency Mot. for Inj. Pending Appeal at 13-14, 20-21, *Missouri*, Entry ID No. 5415510 (8th Cir. filed July 19, 2024) (Injunction Opp.) (writing that it was too late for the states to challenge REPAYE, which "pre-dated the Final Rule," was not challenged in the original complaint, included a loan forgiveness component that "has been a feature of ICR plans since they have existed," and was protected by laches and/or statute of limitations defenses); App. to Vacate Inj. Pending Appeal at 18, 34, *Biden v. Missouri*, No. 24A173 (U.S. filed Aug. 13, 2024) (SCOTUS App.) (noting the 2015 REPAYE Rule had been created "nearly a decade ago," and questioning the states' ability to "challenge[] regulations issued in 2015"). These common threshold arguments were not confined to the "hybrid rule" or the REPAYE loan forgiveness provisions that formed part of that alleged rule.

The agency also unsuccessfully defended REPAYE on the merits, including both the loan forgiveness provisions and the monthly payment formula. The agency said the ICR statute authorized loan forgiveness (whether under SAVE or REPAYE). Injunction Opp. at 15-18; SCOTUS App. at 22-27. It also defended the SAVE Plan Final Rule's monthly payment formula and accrued-interest provisions by reference to REPAYE, explaining that SAVE "simply adjust[ed] [the 2015 REPAYE Rule's] figures" when revising the monthly payment formula, and that the agency had "exercised [its statutory authority to determine the amount of accrued interest to be charged] in the preexisting REPAYE plan as well" as SAVE. SCOTUS App. at 28, 31. Finally, the agency previewed that if the Court of Appeals invalidated the SAVE Plan Final Rule in full, the agency would respond by reinstating the 2015 REPAYE Rule in full: "If plaintiffs succeed in their challenge to the parts of the Final Rule amending REPAYE's payment schedules and interest benefit, then those provisions of the Final Rule will not go into effect. Instead, the regulations adopted as part of the original REPAYE, PAYE, and 1994 ICR plans would remain in force." Injunction Opp. at 21; *see also* SCOTUS App. at 34 (after the Eighth Circuit enjoined REPAYE's loan forgiveness provisions, the agency unsuccessfully asked the Supreme Court to vacate the injunction with respect to REPAYE, even if the injunction against the SAVE Plan Final Rule remained in place). Yet the Supreme Court denied the Government's stay application without comment and without any noted dissent. *Biden v. Missouri*, 145 S. Ct. 109 (2024).

None of these arguments were limited to the so-called "hybrid rule," and none turned on any unique attributes of the "hybrid rule," because from the agency's perspective, the "hybrid rule" never existed. Nor could the Eighth Circuit's eventual rejection of these arguments be limited to the so-called "hybrid rule," as the Eighth Circuit explicitly addressed REPAYE's legality and ordered accompanying injunctive relief. The agency did what Plaintiffs want the agency to do today, and the Eighth Circuit said that was wrong.

### 2. The Agency Never Tried to Reinstate REPAYE's Monthly Payment Formula Without Its Enjoined Loan Forgiveness Provisions

Nor can Plaintiffs sensibly limit the *Missouri* ruling to REPAYE's loan forgiveness provisions. REPAYE's monthly payment formula was designed with loan forgiveness in mind, and like SAVE, the agency has never tried administering REPAYE without loan forgiveness.

The parties' principal briefing on the preliminary injunction dispels Plaintiffs' interpretation of *Missouri v. Trump*. Back in the Eighth Circuit, with the stay proceedings fully briefed, the parties turned to the preliminary injunction. Both sides rejected the halfway-house proposal Plaintiffs offer today: to restore REPAYE's monthly payment formula without loan forgiveness. Both sides recognized that an important question was whether the ICR statute authorized the agency to set a monthly payment formula with payments too low to pay off the loans in full—in which case the repayment plan could not function sensibly without loan forgiveness.

The agency and the plaintiff states agreed that absent forgiveness, the balance of the loan would come due as a lump-sum payment at the end of the payment term. Thus, the more generous the monthly payment formula, the more likely borrowers would default on the lump sum.[4] *See* Appellants' Opening Brief at 32, *Missouri*, Entry ID No. 5425639 (8th Cir. filed Aug. 19, 2024) (agency arguing that requiring a lump-sum payment "based not on [the borrower's income], but rather on her outstanding balance," would "defeat[] the whole point of an 'income contingent repayment plan'"); Principal and Response Brief of Plaintiffs-Appellees at 63-64, *Missouri*, Entry ID No. 5439225 (8th Cir. filed Sept. 24, 2024) (states saying that "[t]he Secretary, by promulgating formulas too low for borrowers to repay their loans, would push borrowers into *default* at the end of 25 years because the Secretary lacks authority to forgiven unpaid balances and yet is telling borrowers *not* to repay their loans."). What the parties disagreed on was whether this practical difficulty meant Congress intended

---

[4] Take Plaintiffs as an example. If Havens and Robeson cannot afford to pay the taxes on their discharges, they surely cannot afford to pay the full amount of their discharges. But that is the natural consequence of Plaintiffs' argument that *Small Refiner* at the very least requires the agency to reinstate REPAYE's monthly payment formula, even if loan forgiveness is off the table.

for ICR plans to include loan forgiveness, or instead that Congress wanted the agency to set monthly payments high enough that repaying the eventual balance in a lump sum would be realistic.

The Eighth Circuit resolved this difficulty by enjoining the entire SAVE Plan Final Rule, writing that without forgiveness, "those borrowers will default at the end of the payment period unless they are able to pay the entire outstanding balance at once," and that "[e]ven in the SAVE Rule's discussion of how various provisions could function independently, the Secretary did not claim she would implement these regulations absent forgiveness of loans." *Missouri v. Trump*, 128 F.4th at 998. Similar reasoning applies to the 2015 REPAYE Rule.

**B. Plaintiffs Fundamentally Misconstrue *Small Refiner***

In 1983, two D.C. Circuit panels issued opinions on what courts should do after vacating a rule that replaced an earlier rule. *See Small Refiner*, 705 F.2d at 545 ("vacat[ing] the new rule without reinstating the old rule"); *Action on Smoking & Health v. Civil Aeronautics Board*, 713 F.2d 795, 797 (D.C. Cir. 1983) (*ASH II*) (vacatur of the new rule reinstates the old rule); PI Opp. at 25-28. This lawsuit closely resembles the facts of *Small Refiner*, where the old and new rules shared a common legal infirmity, and does not resemble the facts of *ASH II*, where the agency disagreed with the old rule and issued a new rule to replace it. Like *Small Refiner*, the Eighth Circuit held in *Missouri v. Trump* that SAVE and REPAYE shared a common legal infirmity—namely, that their authorizing statute did not actually authorize loan forgiveness. *See* PI Opp. at 6, 26; *Missouri v. Trump*, 128 F.4th at 998 ("[T]he portion of the old rule the federal officials seek to revive suffers from the same legal errors as the one challenged here — the Secretary lacks the power to authorize forgiveness in an ICR plan."). Plaintiffs do not appear to dispute that the Eighth Circuit identified a common legal infirmity invalidating both rules or that it issued an injunction that covered both rules. Because *Small Refiner* is on all fours, the Court should apply *Small Refiner*, not *ASH II*.

### 1. *Small Refiner* Does Not Require a Fresh Rulemaking in Every Case

Instead of distinguishing *Small Refiner* on the facts, Plaintiffs try to limit its scope, describing it as a case about courts' "equitable authority … [to] adjust the terms of vacatur to fit the specific facts." *See* PI Reply at 7-8. They note that in *Small Refiner*, the D.C. Circuit stayed its mandate so the EPA could engage in emergency rulemaking to pass a new rule that complied with its opinion. *Id.* at 7. From this, they appear to argue that the *only* thing *Small Refiner* authorizes is a stay of the mandate. *See id.* at 8 ("If Defendants believed that the REPAYE rule was unlawful at the time, they could have started rulemaking once they announced the Settlement and asked the court to vacate the rule but to stay that ruling until the new rule was finalized.").

Again, this ignores what happened in *Missouri*, where the Eighth Circuit had already directed an injunction against REPAYE loan forgiveness, and none of the D.C. Circuit's reasons for staying the mandate in *Small Refiner* applied. *Small Refiner* opted to stay its mandate to avoid a "regulatory vacuum," since by invalidating both the old and new rules on the same basis, the panel had "le[ft] EPA without a regulatory limit on small refinery lead use." *See* 705 F.2d at 546 ("[W]e delayed issuing the mandate for one week to give EPA an opportunity to issue [] an emergency rule," and the rule that the EPA eventually issued "seems … entirely appropriate"). But in *Missouri*, the Eighth Circuit did not see fit to stay its injunction against REPAYE loan forgiveness (or, for that matter, the SAVE Plan Final Rule) pending a rulemaking, and there was no analogous regulatory vacuum.

When the agency agreed to vacate SAVE and to not reinstate REPAYE, it did so against the backdrop of an injunction against both of these rules. Lifting that REPAYE injunction to "facilitate" a rulemaking to repeal the 2015 REPAYE Rule would serve no relevant policy of administrative law. Far from creating a regulatory vacuum, the *Missouri* settlement prevented one—it preserved Original ICR and PAYE. *See* PI Opp. at 39. Also, following the injunction, Congress enacted the One Big Beautiful Bill Act, which relaxed IBR's eligibility requirements. *See id.* at 6. In short, the settlement let borrowers choose from several repayment plans with less litigation risk. Plaintiff Boykin's decision to move to an operative plan confirms there was no regulatory vacuum and no emergency requiring a further rulemaking to replace both the old and new rules.

In addition, because the agency obtained relatively favorable settlement terms, revising the 2015 REPAYE Rule to comply with the Eighth Circuit's ruling would not have been productive. To comply with the Eighth Circuit's requirement that ICR borrowers repay their loans in full, REPAYE's monthly payment formula would likely have to become much more expensive, making any new REPAYE plan less attractive to borrowers than Original ICR and PAYE—whose loan forgiveness provisions remain in force largely *because* of the settlement. The agency was not required to conduct a rulemaking to create a plan that almost no borrower would actually want.

Other than that, Plaintiffs point to this Court's opinion in *Montefiore Med. Ctr. v. Kennedy*, 2025 WL 2801237, at *16 n.11 (D.D.C. Sept. 30, 2025), where the Court said *ASH II* describes what usually happens when a rule is vacated. *See* PI Reply at 6. That analogy misses the mark. In *Montefiore*, the Court did not address the specific question at issue here and is still considering the remedy. *See* 2025 WL 2801237, at *23 (ordering further briefing on whether vacatur was appropriate). By contrast, Defendants have shown that the facts of this case closely resemble *Small Refiner* and do not resemble those of *ASH II*. Plaintiffs have not disputed that fact. Because *ASH II* is not on point and *Montefiore*'s general statement of law does not speak to this particular situation, *Small Refiner* still applies.

**2. The Agency Appropriately Considered the *Missouri* Injunctions and Opinions When Settling the Case**

In a final attempt to evade *Small Refiner*, Plaintiffs argue that "litigation risk" is not a sufficient basis to disclaim a rule that purportedly springs back into effect due to a court's vacatur of a replacement rule without notice or comment. *See* PI Reply at 8-11. At the outset, this argument merely assumes that the rule actually springs back into effect even when the vacating court disapproves of the old rule. For the foregoing reasons, that is not correct. It also wrongly insinuates that all the *Missouri* preliminary injunction did was create "litigation risk."[5] Once again, that claim gives short shrift to the

[5] When Defendants explained that the *Havens* plaintiffs were inviting litigation risk in Missouri by filing this lawsuit, the risk in question was that Missouri might sue again if Defendants lost this suit. *See* PI Reply at 25 ("If the plaintiff states renewed their challenge and Defendants tried to defend REPAYE, the Eighth Circuit's published decision in *Missouri v. Trump* would likely affect the strength of the Government's merits arguments."). But when the agency settled the original *Missouri* case and agreed to not reinstate REPAYE, the injunction against REPAYE loan forgiveness was already in place.

*Missouri* litigation, through which loan forgiveness under REPAYE was enjoined and would have remained enjoined indefinitely—*under even Plaintiffs' theory*—but for the settlement. *Cf.* PI Opp. at 25 & n.7 (noting that for this reason, the Court could also dismiss Plaintiffs' REPAYE claim on redressability grounds," as the collapse of the settlement "might restore the April 2025 injunction," thereby shutting down REPAYE again). The *Missouri* injunctions were binding on the Department of Education, and the agency has to account for binding judgments and injunctions issued against it in a way that it does not for court opinions in other cases. Characterizing the *Missouri* litigation as mere "litigation risk" is a gross understatement, to put it mildly.

Relying on *Arkema Inc. v. EPA*, 618 F.3d 1 (D.C. Cir. 2010), Plaintiffs respond that even objectively unlawful regulations cannot be repealed except through the applicable procedures. *See* PI Reply at 9-10. But as a matter of judicial practice, if Plaintiffs are correct, then any number of cases where the court declares a rule invalid but lacks jurisdiction to enjoin it would have come out differently. As Defendants pointed out in their opening brief, in *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988), the agency implemented a court order invalidating but not enjoining a rule by issuing a short notice in the Federal Register "recognizing the invalidity of the rule." *Id.* at 207; PI Opp. at 26. The Supreme Court never said full notice-and-comment rulemaking was required.[6]

In any case, that is not what *Arkema* says. That case was a retroactivity case saying that an agency could not "use its new [and allegedly better] statutory interpretation to undo … completed transactions," even though it could potentially apply the rule on a "*prospective*" basis. *Id.* at 9. Thus, even if the agency *had* gone through the applicable procedures—and there, it did—the rule would have

[6] Plaintiffs note that the agency published a final rule to reopen enrollment in the Original ICR and PAYE plans, which the SAVE Plan Final Rule had initially closed. *See* PI Opp. at 10. But when the agency published that rule, the corresponding portions of the SAVE Plan Final Rule had not been enjoined and were still enforceable. *See Missouri v. Biden*, 112 F.4th 531, 534-35, 538 (8th Cir. 2024) (enjoining specific aspects of the rule, but not the entire rule). Perhaps coincidentally, the Eighth Circuit enjoined the SAVE Plan Final Rule in full shortly after the agency issued the final rule reopening Original ICR and PAYE. *See Missouri v. Trump*, 128 F.4th at 998. Under at least Plaintiffs' theory of the case, such an injunction would have automatically reopened Original ICR and PAYE enrollment. But at the time, a final rule appeared to be both prudent and necessary.

been unenforceable with respect to past transactions anyway. *Cf. id.* at 10 ("The Final Rule appears to have been properly promulgated under the Administrative Procedure Act, and we see no reason to vacate the Rule on that ground … [b]ut the Final Rule cannot have retroactive effect."). Nor do Plaintiffs' remaining cases in this circuit involve court orders directly enjoining both new and old rules. *See* PI Reply at 9.[7]

Finally, Plaintiffs argue that in September 2025, a different panel of the Eighth Circuit opined that when a court invalidates a new rule, the *ASH II* doctrine restores the old rule even if the same defect applies to both. *See* PI Reply at 10-11 (citing *Iowa v. Wright*, 154 F.4th 918, 952 (8th Cir. 2025)). That analogy fails for at least the following two reasons. *First*, as stated above, the agency has to account for directly applicable and binding injunctions in a way that it does not for court opinions in unrelated cases. *Wright* was issued seven months after *Missouri v. Trump*, and *Missouri v. Trump* explicitly said the agency should not have reinstated REPAYE following the district court's initial partial injunction against the SAVE Plain Final Rule. *Second*, Plaintiffs' summary of *Wright* is materially incomplete. The agency said that because the old and new rule shared a legal infirmity, that was a basis to leave the new rule *in place*. *See* 154 F.4th at 952-53; Brief for Respondents at 52-54, *Iowa v. Wright*, 2024 WL 3834156 (8th Cir. filed Aug. 6, 2024). The challenger responded that under *Small Refiner*, both rules should be cleared away. *See* Reply Brief of Petitioners at 44, *Iowa v. Wright*, 2024 WL 4204369 (8th Cir. filed Sept. 3, 2024). The panel did not resolve this question. Instead, it vacated the new rule without providing instructions on how to address the old rule. The agency had already said that if the

---

[7] In *Clean Air Council v. Pruitt*, 862 F.3d 1, 4-5 (D.C. Cir. 2017), the EPA effectively stayed the compliance date of a rule without notice or comment after several industry associations complained about it. Despite the complaints, it does not appear that a court actually enjoined the rule. *Cf. id.* at 15 (Brown. J., dissenting) (remarking that litigation will "surely follow" after the EPA finished its internal decision-making process). Likewise, in *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 158-59 (D.D.C. 2017), the court noted ongoing stakeholder complaints that prompted the agency to delay implementing a rule but mentioned no injunction. In *Nat'l Venture Capital Ass'n v. Duke*, 291 F. Supp. 3d 5, 10-11 (D.D.C. 2017) and *Humane Soc'y of the U.S. v. USDA*, 41 F.4th 564, 567 (D.C. Cir. 2022), the agencies' actions did not appear to be motivated by any injunctions against the rules at hand.

Court invalidated the new rule, the agency would issue a new rule, *see* Brief for Respondents at 53, so the question may have been academic.

In short, *Small Refiner* remains on all fours, and nothing in Plaintiffs' reply brief supports ignoring that precedential opinion.

### III. Plaintiffs Confirm That Their Challenge to the SAVE Transition Stands and Falls with Their REPAYE Claim

As Defendants explained in their opening brief, "Plaintiffs do not appear to object to being asked to leave SAVE in the abstract. … Rather, they object to being asked to leave REPAYE." PI Opp. at 28-29. In other words, Plaintiffs' challenge to the SAVE transition stands and falls with their REPAYE claim. Plaintiffs do not dispute this point, stating only that REPAYE is valid and that "allowing borrowers already enrolled in [REPAYE] to stay until 2028 or a valid rulemaking" will "return[] millions of borrowers to active repayment under an operative plan." PI Reply at 32-33. Thus, the parties appear to agree on this dispositive point.

Defendants add only that when Congress repealed the ICR statute in July 2025 through the OBBBA, the SAVE Plan Final Rule was enjoined in full. The OBBBA provided a three-year sunset period for the ICR statute. But that is a long way from saying that by enacting the OBBBA, Congress implicitly overruled the Eighth Circuit's decision in *Missouri v. Trump* by shoring up statutory authority for loan forgiveness under the ICR statute (but for only three years). *See generally Niz-Chavez v. Garland*, 593 U.S. 155, 167 (2021) ("[I]f that's what Congress meant, this was surely an awkward way of saying so."). The OBBBA says what it says: the agency must "take such steps as may be necessary to ensure that before July 1, 2028, each [ICR] borrower … selects" a new plan—including the borrowers on *inoperative* ICR plans like SAVE / REPAYE. PI Opp. at 29.

Plaintiffs *separately* note that on or around July 14, 2026, Heather Havens received a notice giving her 90 days to select an operative repayment plan. ECF 29-7 ¶¶ 4-5; PI Reply at 26. But they frame that notice as an irreparable harm argument, not a merits argument. *See* PI Reply at 26 (arguing that irrespective of how long it took for Plaintiffs to amend their complaint, the fact that the agency is presently moving SAVE borrowers to new plans creates the time pressure required for a preliminary

injunction). In any case, Havens' 90-day notice is fully consistent with Defendants' past statements. The agency said that "[t]he earliest date a borrower will be required to move is September 29, 2026 (90 days after July 1)." PI Opp. at 10. Havens will get two more weeks than that.

## IV. Plaintiffs' SAVE Plan Final Rule Claims Rely on the Dissolution of *Missouri*'s Injunction Against that Rule, but Their Reply Brief Assumes a Different Source

In Plaintiffs' final argument (which they did not present in their motion for a preliminary injunction and stay), Plaintiffs say that when the Eastern District of Missouri briefly dismissed *Missouri v. Trump* on mootness grounds, the order automatically dissolved the Eighth Circuit-ordered injunction against the SAVE Plan Final Rule, thereby requiring the agency to forgive their loans under that rule. Although the Eighth Circuit reversed that dismissal 11 days later, Plaintiffs insist that regulatory benefits under the SAVE Plan Final Rule are judicially irreversible. That is wrong. *See* PI Opp. at 30-36. Not only is it wrong, it is an improper collateral attack on the Eighth Circuit's reversal, so these claims could also be dismissed or stayed on comity grounds. *See id.* at 36-40.

On judicial irreversibility, Plaintiffs merely assume that they are entitled to loan forgiveness under SAVE. Their claims rely on the dissolution of the injunction against the SAVE Plan Final Rule, which the Eighth Circuit reversed with retroactive effect. Even so, the reply brief says assuming *arguendo* that Plaintiffs' benefits irreversibly vested during the 11 days the SAVE Plan Final Rule was purportedly enforceable, the agency could not retroactively strip them of their benefits by stipulating to vacate (most of) the rule. *See* PI Reply at 36-38. For the reasons outlined in the opening brief, that assumption is wrong. The relevant orders are the dismissal order and the Eighth Circuit's reversal of that order, not the Eighth Circuit's concurrent directive to vacate the SAVE Plan Final Rule.

On judicial comity, Plaintiffs argue that because they lost their motion to intervene in *Missouri*, the Eastern District of Missouri thereby forfeited its comity interests. *See id.* at 33-34. That argument unilaterally cuts the Eighth Circuit out of the comity analysis, omits that Plaintiffs caused their own loss by filing an untimely motion, and misconstrues the policies underlying the comity doctrine.

### A. Plaintiffs' Reply Brief Mischaracterizes Their Own Theory of the Case, Which Turns on the Order Dismissing *Missouri*, and Not the Vacatur of the SAVE Plan Final Rule

The SAVE Plan Final Rule-based claims exist only because the Eastern District of Missouri briefly dismissed *Missouri* on mootness grounds, in an order that was soon reversed. As the district court summarized when denying Plaintiffs' untimely motion to intervene in that action, Plaintiffs' claim thereby rests on the legal impact of the district court's order dismissing the case for lack of jurisdiction. Plaintiffs say that "as soon as the dismissal was entered … the preliminary injunction was lifted," giving them "immediate rights to obtain a discharge of their loans." *Missouri v. Trump*, 2026 WL 2199020, at *4 (E.D. Mo. July 30, 2026). Of course, that argument assumes "the February 27, 2026 order of dismissal required the Department of Education to immediately re-operationalize the SAVE Plan to [Plaintiffs'] benefit." *Id.* And under settled principles of judicial retroactivity, the Eighth Circuit's reversal of that order wipes out all theoretical consequences of that order. *See* PI Opp. at 32-33. Thus, Plaintiffs' SAVE Plan Final Rule claims should be dismissed.

Plaintiffs respond with a shell game. They say the relevant order is actually the Eastern District of Missouri's vacatur of the SAVE Plan Final Rule, so the judicial retroactivity principles articulated in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993) do not apply. *See* PI Reply at 36 ("Defendants ask this court to hold that a consent vacatur … reached back and erased benefits … [that] are final and independently cognizable[.]"); *id.* at 38 ("[T]here is no declaration of law here to apply retroactively."). That is wrong. Plaintiffs say the Court should focus on the vacatur because "[f]rom July 2023 until vacatur, the SAVE [Plan] Final Rule was operative law." PI Reply at 40. But that is an adventurous use of the word "operative," which (once again) ignores what happened in *Missouri*. As Plaintiffs elsewhere concede, the SAVE Plan Final Rule was enjoined for most of its existence. *See id.* at 39 (saying SAVE was "operationalized for nearly a year and on the books for nearly three"). Under *Harper*, the SAVE Plan Final Rule was enjoined at all relevant times as a matter of law. So no borrower could legally obtain its benefits up to the point the Rule was vacated.

Being as charitable as possible, one possible reason for Plaintiffs' confusion is that the Eighth Circuit issued one order with two holdings. *See* Ex. E ("The District Court's order of dismissal is

reversed, and the District Court is directed to enter the final judgment, as jointly requested by the parties."). But the event theoretically giving rise to benefits was the dismissal order, and the Eighth Circuit's reversal of that order is a garden-variety example of a retroactively-applicable judicial decision. The Eighth Circuit expressly overturned the district court's finding of no jurisdiction. Only after finding jurisdiction could the Eighth Circuit then issue its second holding, which directed the district court to vacate (most of) the SAVE Plan Final Rule pursuant to the settlement. *See Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.").

In any case, even taking Plaintiffs' theory at face value, it fails. As Defendants explained in their opening brief, judicial retroactivity "applies with equal force to judicial vacatur of agency rules." PI Opp. at 33 (citing *National Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir. 1995)). *National Fuel* identified four exceptions to retroactivity, and Plaintiffs assert reliance interests in the SAVE Plan Final Rule, which seems to invoke *National Fuel*'s exception for the "most compelling" reliance interests. 59 F.3d at 1288. But their reliance argument focuses exclusively on their *pre-injunction* conduct (that is, enrolling in SAVE, making payments under SAVE, and seeing other borrowers obtain loan forgiveness under SAVE). *See* PI Reply at 40.[8] Plaintiffs do not explain why their past reliance entitles them to regulatory benefits that did not arise, under any theory, until after SAVE was enjoined—benefits the agency was thereby forbidden from awarding. They identify no case saying *National Fuel* would let them rely on a rule that was enjoined "more often than not." PI Opp. at 34.

Plaintiffs alternatively argue that the vacatur of the SAVE Plan Final Rule was not a true judicial vacatur because it "was entered on consent" and was based on a preliminary injunction order, not a final merits decision. PI Reply at 39. For the reasons exhaustively outlined in Defendants' opening brief, the Court should reject this non-responsive argument. *See* PI Opp. at 4-9, 24-25.

[8] Plaintiffs do not suggest that any actions they took in purported reliance on the SAVE Plan Final Rule *after* the *Missouri* case was dismissed could meet the *National Fuel* standard. Nor could they: at most, they "spen[t] time on the usual customer service inquiries to set up a lawsuit." PI Opp. at 34.

The agency fulsomely defended the SAVE Plan Final Rule, the Eighth Circuit disagreed, and the Supreme Court denied the agency's request for emergency relief with no noted dissent. In agreeing to convert the preliminary injunction into a final judgment of vacatur, the agency appropriately determined that further litigation would be redundant.

Finally, Plaintiffs point to cases counseling against retroactive application of *administrative* decisions. *See* PI Reply at 41-42. As Defendants already explained, the Supreme Court has stated that different retroactivity principles apply to judicial decisions. *See* PI Opp. at 33 n.9 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 279 & n.32 (1994)).

**B. Alternatively, the Court Should Dismiss These Claims on Comity Grounds**

The Court should dismiss the SAVE Plan Final Rule claim based on judicial comity, even though the Eastern District of Missouri denied Plaintiffs' untimely motion to intervene in *Missouri*. *See* PI Opp. at 36-38. Here, Plaintiffs are trying to obtain the benefits of the SAVE Plan Final Rule despite the Eighth Circuit's reversal of the order that purportedly brought it back to life. That is a classic collateral attack on the Eighth Circuit's decision.

Plaintiffs principally respond that the Eastern District of Missouri has waived its comity interests over this claim. Namely, the district court recognized that the *Havens* Plaintiffs "contend that they gained new rights on February 27, 2026 when the SAVE Plan was revived by the order of dismissal," and expressly declined to "reach the merits" of that argument. 2026 WL 2199020, at *2 & n.1. It added that the *Havens* plaintiffs "will not be significantly prejudiced by denial of intervention, as they can and will pursue their rights in another action"—that is, here. *Id.* at *5. From this, Plaintiffs claim that the district court affirmatively green-lighted litigation in this forum. PI Reply at 33-34 ("The [c]ourt Defendants would have this Court defer to has held that Plaintiffs' claims belong here and refused them entry there on that ground.").

Plaintiffs' position is wrong for several reasons.

First, by focusing exclusively on the Eastern District of Missouri, Plaintiffs cut the Eighth Circuit out of the picture and thus ignore the plain realities of the *Missouri* litigation. That circuit is the forum that will review the order denying intervention in *Missouri*, should Plaintiffs appeal it. And that

circuit has already reviewed several trial court decisions in that action. As Defendants' opening brief explains, "[t]he comity interests in this action are concrete and unmistakable," because in *Missouri*, "the Eighth Circuit summarily reversed the decision on appeal 99 minutes after the State of Missouri told it about this lawsuit." PI Opp. at 36. By focusing exclusively on the district court's purported preference to have these issues litigated in this action, Plaintiffs sidestep how the Eighth Circuit might view things differently.

*Second*, Plaintiffs' argument that comity does not apply when the other forum declines to hear a dispute ignores the actual reason why Judge Ross denied their motion to intervene, and would create perverse incentives to delay otherwise meritorious interventions in the name of forum-shopping. When assessing comity, a court primarily looks at whether the lawsuit pending before it mounts a collateral attack on another court's decision—not on whether the plaintiffs (strategically or not) forfeited their chance to intervene in the other court by sitting on their rights.[9] *See Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830-31 (D.C. Cir. 1980) (explaining that the comity doctrine applies "despite [a surety company's] absence from [the earlier-filed lawsuit] in Virginia," and remarking that the surety was aware of the earlier suit). Plaintiffs say they are not collaterally attacking the Eighth Circuit's order, *see* PI Reply at 34, but Judge Ross already disposed of that argument. Although Plaintiffs had argued that they did not "seek to defend the merits of the SAVE [Plan] Final Rule," Judge Ross rightly recognized that the *Havens* plaintiffs were seeking to overturn his vacatur of that rule, which (as he reminded them) was "a foregone conclusion mandated by the Eighth Circuit." 2026 WL 2199020, at *4 n.4. Thus, what Plaintiffs are really saying is that comity does not prevent collateral attacks if they previously forfeited their chance to present a direct attack. Given how this litigation has unfolded, authorizing Plaintiffs to litigate in this forum would provide a perverse incentive for litigants to wait until intervention in the earlier-filed action is untimely before moving to

[9] Plaintiffs say that because Defendants challenged their motion to intervene in *Missouri* as untimely and their claims in this Court as barred on comity grounds (and otherwise), Defendants' position is that "no court anywhere" may "review the Department's post-judgment conduct." PI Reply at 36. But had Plaintiffs timely moved to intervene in *Missouri*, Defendants' position on intervention might have been different.

intervene. Judge Ross denied intervention because "the law is clear that intervenors must act in a timely manner as soon as their interests are implicated and may not wait until the latest possible moment." *Id.* at *4. This Court should not reward Plaintiffs' failure to follow straightforward timeliness principles by allowing them to continue forum-shopping in this district.

Finally, Plaintiffs are asking this Court to address the legal impact of the orders of the Eastern District of Missouri and the Eighth Circuit, a request that naturally should have been presented to those courts in the first instance. The Eastern District of Missouri knows better than anyone else what it means its orders to achieve, and the Eighth Circuit reversed the district court order that purportedly created the rights Plaintiffs invoke today. Plaintiffs' claims implicate at least three key questions: (1) whether Judge Ross intended to require the agency to "immediately re-operationalize the SAVE Plan" following his order dismissing the case, 2026 WL 2199020, at *4; (2) the legal effect of case dismissals on preexisting preliminary injunctions within the Eighth Circuit; and (3) whether or not the Eighth Circuit is entitled to a reasonable opportunity to decide a motion for a stay pending appeal. Judge Ross is best placed to answer the first question, and the Eighth Circuit has a strong interest in all three.

Supreme Court caselaw allows this Court to dismiss the SAVE Plan Final Rule-based claims without getting deep in the weeds of a sister court's intent. But if the Court is inclined to probe intent, comity counsels against litigating these issues in the first instance in this Court.

## CONCLUSION

The Court should dismiss the First Amended Complaint without prejudice for lack of jurisdiction, or in the alternative with prejudice for failure to state a claim.

Date: August 17, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Winston Shi*
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: 202-880-0387
Email: winston.g.shi@usdoj.gov

*Counsel for Defendants*