**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HEATHER HAVENS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, et al.,<br><br>Defendants. | Civil Action No. 1:26-cv-816-LLA |

**PLAINTIFFS' SURREPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

This surreply addresses only matter appearing for the first time in Defendants' reply, ECF No. 32 ("Reply"): a newly cited authority; a new waiver argument raised in a footnote; assertions that Plaintiffs failed to respond to arguments the record shows they answered; and characterizations of authority and of the record that the underlying texts contradict. Plaintiffs do not repeat their prior briefing.

## I. Havens and Robeson's Tax-Related Standing

### A. Footnote 1's New Waiver Argument Fails

For the first time, the Reply asserts that Havens "waived any standing claim" premised on her payment-delta allegation because her reply brief did not contest Defendants' recalculation. Reply 2 n.1. Standing is not allocated by waiver; the Court assesses it on the record, accepting the complaint's allegations as true at this stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). And Havens's standing rests independently on the tax injury addressed above.

### B. In re Goebel States the Standard Plaintiffs Satisfy

The Reply's newly cited authority, *In re Goebel*, --- F.4th ----, 2026 WL 2163962 (2d Cir. July 28, 2026), confirms rather than defeats standing here. In Goebel, a Chapter 7 debtor preemptively asked the bankruptcy court to declare her tax debts dischargeable before the IRS or any other actor

had taken any step toward collecting them. The Second Circuit found no injury in fact because the complaint "set forth no specific facts" suggesting the IRS had "manifested a concrete intention" to assert nondischargeability, leaving only a fear that was "necessarily conjectural." *Id.* at *4. The court reaffirmed that a future injury suffices where it is "certainly impending" or there is a "substantial risk that the harm will occur," id. at *3 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)), and it distinguished *Aetna* and *MedImmune* because those cases involved a definite adverse position taken by the adverse party or a "plaintiff's self-avoidance of imminent injury," id. at *6 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 130 (2007)).

Every fact missing in Goebel is pleaded here. Defendants have announced the transfer policy, issued Plaintiff Havens a ninety-day notice, and agreed that a discharge following a forced transfer will produce a Form 1099-C bearing a 2026 effective date. PI Reply 19, 26. The imminent act is Defendants' own, not a third party's hypothetical future decision.

**C. The Record Refutes the Assertion of Non-Response**

The Reply asserts that Plaintiffs "simply ignore[d]" Defendants' argument that the tax claims rest on speculation about the Internal Revenue Service's views and are not redressable by an order directed to the Department. Reply 3; *see id.* at 4–5. Plaintiffs answered that argument directly. See PI Reply 18 ("Filing the form is the injury itself and is redressable by this court."); id. at 19–21 (addressing the contention that "only the IRS is capable of making those final determinations"); id. at 21 (the liabilities "flow directly from Defendants' conduct, and do not rely on some indeterminate intervening event"). Indeed, the Reply itself quotes and responds to that answer. Reply 5–6 (quoting PI Reply 20). Plaintiffs' statement that "[t]he Supreme Court has already rejected precisely this view," PI Reply 20, refers to Department of *Commerce v. New York*, 588 U.S. 752, 768 (2019), which holds that standing "does not rest on mere speculation about the decisions of third parties" where the injury "relies instead

on the predictable effect of Government action on the decisions of third parties." Plaintiffs supply that citation here.

The Reply's treatment of *In re Crosby*, 261 B.R. 470 (Bankr. D. Kan. 2001), warrants one correction. The Reply distinguishes *Crosby* on the ground that "taxability appears to have been considerably more straightforward, as the IRS had already issued a regulation 'requiring a discharge of indebtedness covered by [the relevant statute] to be reported' in a 1099-C." Reply 6. This gets the facts backwards. In *Crosby*, there had been no actual taxable event, but the creditor nevertheless filed the Form 1099-C. The court held because the 1099-C had been filed, the creditor could not continue to collect on the debt because the filing was "analogous to assigning the debts to the IRS," and without the forms the debtors "would not have had to report the discharge of indebtedness income to the IRS and pay tax on it." 261 B.R. at 474. *Crosby* thus holds that the form itself rather than the underlying taxability of the event, produces the injury upon filing.

## II. *Iowa v. Wright* Resolved the Question the Reply Says It Left Open

The Reply asserts that in *Iowa v. Wright* the Eighth Circuit "did not resolve" whether vacatur of a replacement rule revives its predecessor notwithstanding an asserted shared defect, and that the panel "vacated the new rule without providing instructions on how to address the old rule." Reply 16. That characterization cannot be squared with the opinion's text. The opinion, citing *Menorah Med. Ctr. v. Heckler*, 768 F.2d 292, 297 (8th Cir. 1985), states: "the 2000 rule remains valid and will spring back into effect if this court vacates the 2024 final rule," and then went on to vacate the 2024 Rule. *Iowa v. Wright*, 154 F.4th 918, 952 (8th Cir. 2025). That statement was not an aside. In *Wright*, the agency argued that the shared defect was a reason to leave the new rule in place because vacatur would not, in practice, change one of the challenged regulatory terms and it would disrupt the statute's goals and reliance interests of third parties. *Id.* at 952–53. Acknowledging these arguments and that the

provisions within the 2020 rule were the same as the challenged provisions, and that the 2020 rule would spring back, the Eighth Circuit still vacated the 2024 rule.

## III. The Reply's Premise That Only Post Vacatur Reliance Matters Is Contradicted by the Record

The Reply asserts that "Plaintiffs do not explain why their past reliance entitles them to regulatory benefits that did not arise, under any theory, until after SAVE was enjoined." Reply 20. Plaintiffs explained precisely that. See PI Reply 36–37 ("Every payment and forbearance month underlying Plaintiffs' eligibility predates the injunction; the October 2024 entries were recorded when the Department finished counting, not when Plaintiffs finished earning."). The one-time IDR account adjustment was announced in April 2022 and completed only in October 2024. It retroactively credited qualifying months that had already elapsed. *Id.* On Defendants' own accounting, no qualifying credit accrues during the litigation forbearance. Since Plaintiffs' IDR counts exceed the required thresholds, the months that carried them past those thresholds therefore predate the injunction. What postdates the injunction is bookkeeping.

## CONCLUSION

For these reasons and those stated in Plaintiffs' opposition and reply, the Court should deny Defendants' motion to dismiss.

Dated: August 19, 2026

Respectfully submitted,

/s/ W. Austin Hinkle
William Austin Hinkle
D.C. Bar No. 90043756
Public Goods Practice LLP
1502 W 7th St. STE 100
Erie, PA 16502
(215) 931-9240

Paul Delaney Mayer (admitted pro hac vice)
D.C. Bar No. 1671773

Public Goods Practice LLP
1717 N Street NW STE 1
Washington, DC 20036

*Counsel for Plaintiffs*