**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HEATHER HAVENS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, et al.,<br><br>Defendants. | Civil Action No. 1:26-cv-816-LLA |

**SECOND SUPPLEMENTAL DECLARATION OF W. AUSTIN HINKLE**

I, W. Austin Hinkle, declare the following under penalty of perjury:

1. I am a partner at Public Goods Practice LLP and counsel for Plaintiffs in this action. I am a member of the bar of this Court. The statements in this declaration are based on my personal knowledge. I previously submitted a declaration and a supplemental declaration in this case (ECF Nos. 19-2, 29-7). I submit this second supplemental declaration in support of Plaintiffs' Notice of Recent Developments.

2. On November 2, 2026, I wrote to Defendants' counsel requesting that the Department agree not to involuntarily transfer Plaintiffs Heather Havens, Elizabeth Robeson, and Anna Grunseth off the SAVE plan until the Court rules on the pending motions and, if the preliminary-injunction ruling is appealed, until that appeal is resolved, and asking whether Defendants would join or consent to a status filing. Defendants' counsel responded on November 3, 2026, and we exchanged further messages that day and on November 6, 2026. A true and correct copy of that correspondence is attached as Exhibit 1.

3. On November 5, 2026, I sent Defendants' counsel drafts of Plaintiffs' Notice of Recent Developments and the supporting declarations and exhibits, including Mr. Boykin's

supplemental declaration and its exhibits. In the same email, I asked that the Department investigate Mr. Boykin's payment plan and correct any errors identified; ask Edfinancial to hold his October 28, 2026 IDR application and place him in a forbearance while that review is underway; and, if he should be on the $0 IDR plan he was told he was in in January 2026, reinstate that plan and hold him harmless. Defendants' counsel responded on November 6, 2026. A true and correct copy of that correspondence is attached as Exhibit 2.

4. In the same November 5 email, I asked whether Defendants would consent to the filing of the Notice. In his November 6, 2026 response, Defendants' counsel stated that Defendants "take no position on [Plaintiffs'] proposed filings." See Exhibit 2.

5. Attached as Exhibit 3 is a true and correct copy of the StudentAid.gov page titled "SAVE Plan Borrowers: FAQs About Choosing a Different Repayment Plan," located at studentaid.gov/articles/save/, as captured by the Internet Archive's Wayback Machine on October 9, 2026, the earliest capture of that page available. I retrieved it on November 5, 2026 from https://web.archive.org/web/20261009230044/www.studentaid.gov/articles/save/.

6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 9, 2026

*/s/ W. Austin Hinkle*
W. Austin Hinkle

# EXHIBIT 1

**Shi, Winston G (CIV)** Outlook

**From:** Shi, Winston G (CIV)

**Sent:** Friday, November 6, 2026 4:38 PM

**To:** Austin Hinkle; Paul Mayer

**Cc:** Pezzi, Stephen (CIV)

**Subject:** RE: Havens v. Dep't of Education, No. 26-cv-816 (LLA) — Two Requests

Austin,

We have no further information to provide at this time. If you have any further questions, please let us know.

Sincerely, Winston

---

**From:** Austin Hinkle <Austin@Publicgoodspractice.com>
**Sent:** Tuesday, November 3, 2026 9:21 PM
**To:** Shi, Winston G (CIV) <Winston.G.Shi@usdoj.gov>; Paul Mayer <Paul@Publicgoodspractice.com>
**Cc:** Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Subject:** [EXTERNAL] Re: Havens v. Dep't of Education, No. 26-cv-816 (LLA) — Two Requests

Hi Winston,

That makes sense re: wanting to read the filing before making a recommendation. I just thought if there were particular concerns in content that I could work around them. No big deal.

On the importance of understanding whether and when a bill is due, I'm a little surprised that isn't clear by this point. The transition will force significant financial consequences for the plaintiffs and basic household budgeting requires knowing what monthly payments are coming - not to mention tax consequences which could trigger other considerations for certain plaintiffs. Some degree of certainty in

what ED is going to do is not really a big ask and it would be greatly appreciated if your client could explain what's going on.

Can you tell us the date that Heather Havens loans will be moved off the SAVE repayment plan? The date that Elizabeth Robeson's will be?

Thanks,

Austin

Get Outlook for iOS

---

**From:** Shi, Winston G (CIV) <Winston.G.Shi@usdoj.gov>
**Sent:** Tuesday, November 3, 2026 6:30 PM
**To:** Austin Hinkle <Austin@Publicgoodspractice.com>; Paul Mayer <Paul@Publicgoodspractice.com>
**Cc:** Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Subject:** RE: Havens v. Dep't of Education, No. 26-cv-816 (LLA) — Two Requests

Austin,

I do not know when borrowers whose 30-day period has expired will be moved to new plans. Is there a particular reason you're asking that question / some particular issue that turns on the timing of the transition?

As for your proposed supplemental filing, I asked to read your filing because I simply prefer to read a substantive filing before making a recommendation on consent.

Thanks, Winston

**From:** Austin Hinkle <Austin@Publicgoodspractice.com>
**Sent:** Tuesday, November 3, 2026 6:20 PM
**To:** Shi, Winston G (CIV) <Winston.G.Shi@usdoj.gov>; Paul Mayer <Paul@Publicgoodspractice.com>
**Cc:** Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Subject:** [EXTERNAL] Re: Havens v. Dep't of Education, No. 26-cv-816 (LLA) — Two Requests

Hi Winston,

Thanks for getting back to us so quickly, I appreciate it. I am disappointed that you cannot hold the plaintiffs in the SAVE forbearance. The alternative you suggest is obviously not addressing the harms we are concerned about, but I do appreciate you running the answer down.

Yes, Elizabeth received the final 30-day notice on October 29.

There is reporting that the first wave of borrowers who received the 30-day notice have not been transitioned off of SAVE despite the expiration of that time. Can you confirm whether our plaintiffs can expect the 30-day timeline to hold?

I will circulate a draft of what we are thinking of sharing with the court the next day or two. Is there anything you would have a particular objection to?

Thanks,

Austin

---

**From:** Shi, Winston G (CIV) <Winston.G.Shi@usdoj.gov>
**Sent:** Tuesday, November 3, 2026 6:13 PM
**To:** Austin Hinkle <Austin@Publicgoodspractice.com>; Paul Mayer <Paul@Publicgoodspractice.com>
**Cc:** Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Subject:** RE: Havens v. Dep't of Education, No. 26-cv-816 (LLA) — Two Requests

Austin,

Thanks for reaching out.

On your first request, we do not agree to exempt your clients from the SAVE transition until appellate proceedings conclude. If they prefer to not make monthly payments under an operative plan, we've previously said in this litigation that borrowers can request a forbearance.

On your second request, we do not agree to join a joint status report. If you want to file something on your own, we would have to read the draft first before deciding whether to consent.

Lastly, you mention that Heather Havens received a further 30-day notice. Will you kindly confirm that Elizabeth Robeson also received a 30-day notice? That's my understanding, but please confirm.

Sincerely, Winston

---

**From:** Shi, Winston G (CIV)
**Sent:** Monday, November 2, 2026 4:47 PM
**To:** Austin Hinkle <Austin@Publicgoodspractice.com>; Paul Mayer <Paul@Publicgoodspractice.com>
**Cc:** Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Subject:** RE: Havens v. Dep't of Education, No. 26-cv-816 (LLA) — Two Requests

Austin,

I'm adding Steve Pezzi and acknowledging receipt. We will try to get you a response by COB Wednesday.

Sincerely, Winston

---

**From:** Austin Hinkle <Austin@Publicgoodspractice.com>
**Sent:** Monday, November 2, 2026 3:57 PM
**To:** Shi, Winston G (CIV) <Winston.G.Shi@usdoj.gov>
**Cc:** Paul Mayer <Paul@Publicgoodspractice.com>
**Subject:** [EXTERNAL] Havens v. Dep't of Education, No. 26-cv-816 (LLA) — Two Requests

Winston,

I'm writing with two requests in Havens while the Court's decision on the pending motions remains outstanding.

Since briefing closed on August 17, Ms. Havens has received a 30-day final notice in the SAVE transition, with the 30-day period running to November 18. Ms. Robeson's 90-day period ended on October 27, and Ms. Grunseth's ends on November 24.

1. Plaintiffs request that the Department agree not to involuntarily transfer Ms. Havens, Ms. Robeson, or Ms. Grunseth off the SAVE plan until the Court rules on the motion to dismiss and the motion for a preliminary injunction and, if the preliminary-injunction ruling is appealed, until that appeal is resolved. The request is limited to those three plaintiffs and to forced transfer. It

is made without prejudice to the scope of relief Plaintiffs have sought in the pending motion. If the Department agrees, we would propose submitting the agreement to the Court as a short joint stipulation.

2. We are planning to update the Court on the named plaintiffs' current status through a short factual notice with brief supplemental declarations. We would prefer to file it as a joint status report with the Department's own statement included, or, failing that, with Defendants' consent. Please let me know whether Defendants will join or consent. If the Department would like to join, we can circulate a draft Thursday morning and would ask for your portion by close of business Thursday. If Defendants neither join nor consent, Plaintiffs intend to file the notice on their own later this week and will report the Department's position on both requests.

Could you let me know the Department's position on both by close of business Wednesday, November 4? I'm glad to discuss by phone if that's easier.

Best,
Austin

# EXHIBIT 2

**Shi, Winston G (CIV)** Outlook

---

**From:** Shi, Winston G (CIV)

**Sent:** Friday, November 6, 2026 4:20 PM

**To:** Austin Hinkle; Pezzi, Stephen (CIV)

**Cc:** Paul Mayer

**Subject:** RE: Havens v Department of Education - requests

Austin,

Thanks for sending us these drafts. We take no position on your proposed filings. On the Boykin materials, we've passed them on to ED. In the meantime, we would direct your client to the usual channels for addressing these concerns.

Sincerely, Winston

---

**From:** Austin Hinkle <Austin@Publicgoodspractice.com>
**Sent:** Thursday, November 5, 2026 10:26 PM
**To:** Shi, Winston G (CIV) <Winston.G.Shi@usdoj.gov>; Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Cc:** Paul Mayer <Paul@Publicgoodspractice.com>
**Subject:** [EXTERNAL] Havens v Department of Education - requests

Hi Winston,

As I previously mentioned, we are planning to submit a notice to the Court of recent developments regarding the plaintiffs' upcoming SAVE transition. I'm attaching a draft of that notice and the supporting declarations and exhibits for your review. The declarations are still with our clients for final review and I will probably take another proofing pass before its final, so there may be small conforming edits. Please let us know if the government consents to this filing.

There is one related matter I was hoping to address rather than put in front of the Court. Plaintiff Boykin has received a range of inconsistent communications from ED and his servicer about what repayment

plan he is in. As you can see from the materials, he was told on two different occasions that he should be in a $0 IDR plan through most of next year, but this past September he started being billed at what looks like the Standard Repayment amount. Mr. Boykin flagged the issue with EdFinancial, which said it would look into it but never responded. After his account went delinquent without a response, and Edfinancial warned that it would report the delinquency to the credit bureaus, Mr. Boykin applied for a new IDR plan, but that will result in a higher monthly payment than the one he was already given under the earlier repayment schedule.

So, if you are willing to work with the Department and EdFinancial to figure out what happened on that account and correct it as necessary I would leave out the section about Mr. Boykin and his supplemental declaration. We would still file the notice, but limit it to the other three plaintiffs.

I plan to file this on Monday, November 9. Please let me know by noon on Monday whether:

1. You consent to the filing; and
2. You will agree to investigate Mr. Boykin's payment plan situation and correct any errors that are identified, and to ask Edfinancial to hold his October 28 IDR application while that review is underway and place him into a forbearance. If it turns out that Mr. Boykin should be on the $0 IDR plan he was told he was in this past January, his October application should be withdrawn, that plan reinstated, and he should be held harmless for the error. I'm asking only for the commitment by Monday; the review itself can take the time it needs.

Thanks,

Austin

# EXHIBIT 3

Home > Resource Articles > Financial Aid > SAVE Plan Borrowers: FAQs About Choosing a Different Repayment Plan

# SAVE Plan Borrowers: FAQs About Choosing a Different Repayment Plan

FINANCIAL AID · LOAN REPAYMENT 11 minutes




SHARE

# IncomeDrivenRepayment # LoanRepayment # RepaymentCalculator

A court order ended the Saving on a Valuable Education (SAVE) Plan, and, as a result, you must choose a different repayment plan. If you don't, you'll be enrolled in a fixed payment repayment plan.

We're here to help you navigate the process of understanding your options, choosing a different repayment plan, and returning to repayment. This article will answer these

common questions:

1. Why do I need to leave the SAVE Plan?
2. When am I required to change my plan?
3. What happens if I don't select another repayment plan by my deadline?
4. Which repayment plans am I eligible for?
5. How can I estimate my monthly payment and total amount paid under a different plan?
6. What if I can't afford my monthly payment under a different plan?
7. How do I enroll in a different repayment plan?
8. What should I do if I have a pending income-driven repayment (IDR) application?
9. Will my previous payments still count toward IDR discharge or Public Service Loan Forgiveness (PSLF), and how does the SAVE forbearance affect my progress?
10. If I'm pursuing PSLF, which repayment plan should I switch to?

## 1 Why do I need to leave the SAVE Plan?

A court order ended the SAVE Plan in March 2026. To learn more about that court order and its impacts, visit StudentAid.gov/courtactions. Because the SAVE Plan ended, you must select another repayment plan that you're eligible for. Not sure if you're enrolled in the SAVE Plan? You can check which repayment plan you're enrolled in on StudentAid.gov. If you never applied for or were never enrolled in the SAVE Plan because you're in school, in a grace period, or if you received a loan on/after July 1, 2026, that hasn't entered repayment, then you don't need to take any action. We recommend using the Repayment Calculator to explore your repayment options before your first payment is due.

## 2 When am I required to change my plan?

Your loan servicer will contact you with details about choosing a different repayment plan. You may have received your notice already. Most borrowers will receive notification from their servicer via email. However, if you requested not to receive communications digitally, you'll receive your notice via postal mail. Make sure your contact information is up-to-date with your servicer and in your StudentAid.gov account.

Here's a sample notice of what your servicer will send you:

aidvantage | Official Servicer of Federal Student Aid

P.O. Box 300002
Greenville, TX 75403-3002

800-722-1300

<Borrower Name>
<Borrower Address>
<Borrower Address>

**Account Number**: 9999999999999 <DATE>

<First Name>,

**SAVE Plan Update: You Have 90 Days to Select a New Repayment Plan**

A recent legal settlement ended the Saving on a Valuable Education (SAVE) Plan, and it is no longer available to borrowers. As a result of the settlement, Aidvantage was directed by the U.S. Department of Education (ED) to move all borrowers out of the SAVE Plan. **You must now select a new repayment plan.** If you're currently enrolled in the SAVE Plan but don't submit a new application for a different repayment plan within 90 days, you will be placed on the Standard Repayment Plan. If you have a new loan in repayment on or after July 1, 2026, we will place you on the Tiered Standard Plan.

Visit StudentAid.gov/repayment-calculator to estimate monthly payments, determine your eligibility, and choose the repayment plan that best meets your needs and goals.

You can find more information about the settlement at StudentAid.gov/courtactions. If you have questions, contact Aidvantage.

**Apply Faster by Sharing Your Federal Tax Information**
If you have eligible loans, applying for a new Income-Driven Repayment (IDR) plan is quick and easy if you provide consent for ED to obtain your federal tax information directly from the IRS. This allows ED to process your application faster and eliminates the time-consuming work of manually uploading your income information.

By providing consent for ED to access your federal tax information, ED can automatically recertify your IDR plan.

Visit StudentAid.gov/idr to begin your application.

**Lower Your Interest Rate on Auto Pay**
If you're not already on auto pay, sign up now to lower your interest rate on eligible federal student loans. Starting July 1, 2026, when you sign up for auto pay, the interest rate will be reduced by 1%. This interest rate reduction means you'll accrue less interest and pay off your loans faster.

To get this benefit, you must

- have Direct Loans disbursed on or after July 1, 2012;
- enroll in auto pay by 11:59 p.m. Eastern time on Sept. 30, 2026; and
- remain on auto pay and stay in active repayment on your federal student loans.

After June 30, 2028, your interest rate discount will automatically revert to 0.25%, the standard auto pay interest rate reduction.

**Beware of Scams**
Avoid student aid scams. You might be contacted by a company saying they will help you get loan discharge or cancellation for a fee. Make sure you work only with ED's office of Federal Student Aid (FSA) and its official loan servicers (like us). We will always help you for free. Our emails come only from customerservice@Aidvantage.studentaid.gov, and emails from FSA come only from noreply@studentaid.gov. Never reveal your personal information or account password to anyone.

*Example of a servicer notice informing a SAVE Plan borrower that they have 90 days to select a new repayment plan.*

Servicers started sending notices to SAVE borrowers on July 1, 2026. Because servicers are notifying SAVE borrowers in groups, it's possible that borrowers with the same servicer will have different deadlines to choose a different repayment plan. Before the end of 2026,

servicers will notify every SAVE borrower. You can confirm when your servicer sent your message by checking your inbox on your servicer's website.




*Example of a loan servicer inbox showing a SAVE Plan notice.*

Another way to confirm your deadline is by searching your personal email inbox by subject line ("You Have 90 Days to Select a New Repayment Plan" or "Final Notice – You will be Placed into a New Repayment Plan in 30 Days") or searching by your servicer's email address:

| Loan Servicer | Email Address |
|---|---|
| Aidvantage | customerservice@aidvantage.studentaid.gov |
| CRI | CRINoReply@cri.studentaid.gov |
| Edfinancial | donotreply@mail.edfinancial.studentaid.gov or info@email.edfinancial.studentaid.gov |

| | |
|---|---|
| MOHELA | noreply@mohela.studentaid.gov |
| Nelnet | nelnetnoreply@nelnet.studentaid.gov |

Once you hear from your servicer, you'll have 90 days to choose another repayment plan that you're eligible for. For example, if you received a notice from your servicer on July 1, 2026, your deadline to select a different repayment plan was Sept. 29, 2026.

If you don't act within that 90-day period, your servicer will send you a final 30-day notice. If you don't choose a different repayment plan before the final deadline, you'll be automatically enrolled in a fixed payment repayment plan.

In addition to a notice from your loan servicer, you also may have received emails from Federal Student Aid (FSA). Keep in mind that your 90-day timeline for switching plans is based on when you receive your servicer notice, not when you receive an email from FSA.

## 3 What happens if I don't select another repayment plan by my deadline?

If you don't choose another repayment plan by the servicer's final 30-day deadline, you'll automatically be enrolled in either the Standard Repayment Plan or the Tiered Standard Plan. The plan you'll be enrolled in depends on when you received your loans. If you haven't received any loans on or after July 1, 2026, then you'll be enrolled in the Standard Repayment Plan. If you received a loan on or after July 1, 2026, and that loan has entered repayment, then you'll be enrolled in the Tiered Standard Plan.

Your monthly payment on the Standard Repayment Plan or the Tiered Standard Repayment Plan may be higher than if you enroll in an income-driven repayment (IDR) plan. If your monthly payment amount goes up and you're enrolled in auto pay, then your automatic withdrawal amount will also increase. Your loan servicer will notify you about your new monthly payment amount at least 21 days before the first due date on your new repayment plan.

We highly recommend that you explore your options, including other IDR plans, and consider enrolling in an available plan today to avoid being placed into a more expensive option later.

## 4 Which repayment plans am I eligible for?

The repayment plans available to you depend on the types of federal student loans you have and the dates the loans were first paid out (i.e., disbursed).

Log in to StudentAid.gov and visit your Dashboard to confirm your loan types and disbursement dates.

If your loans were disbursed before July 1, 2026, the following fixed repayment plans are available:

- Standard Repayment Plan
- Graduated Repayment Plan
- Extended Repayment Plan

If you have a loan disbursed on or after July 1, 2026, the only fixed payment repayment plans option is the Tiered Standard Plan.

Use the chart below to see what income-driven repayment (IDR) plan(s) you're eligible for based on your situation:

# Eligible Loans for an Income-Driven Repayment (IDR) Plan

✓ ELIGIBLE ✓✓ ELIGIBLE IF CONSOLIDATED* ✗ NOT ELIGIBLE

| Loan Type | Income-Based Repayment (IBR) Plan<br>*Direct and FFEL Program loans disbursed before July 1, 2026* | Income-Contingent Repayment (ICR) Plan<br>*Direct Loans disbursed before July 1, 2026*<br>ICR ends no later than July 1, 2028 | Pay As You Earn (PAYE) Repayment Plan<br>*Direct Loans disbursed before July 1, 2026*<br>PAYE ends no later than July 1, 2028 | Repayment Assistance Plan (RAP)<br>*Direct Loans disbursed any time* |
|---|---|---|---|---|
| Direct Subsidized Loans | ✓ | ✓ | ✓ | ✓ |
| Direct Unsubsidized Loans | ✓ | ✓ | ✓ | ✓ |
| Direct PLUS Loans for graduate or professional students | ✓ | ✓ | ✓ | ✓ |
| Direct PLUS Loans for parents | ✗ | ✗ | ✗ | ✗ |
| Direct Consolidation Loans that **don't** include a Direct PLUS Loan for parents | ✓ | ✓ | ✓ | ✓ |
| Direct Consolidation Loans that **do** include a Direct PLUS Loan for parents | ✓ ** | ✓ | ✗ | ✗ |
| Subsidized Federal Stafford Loans (from the FFEL Program) | ✓ | ✗ | ✗ | ✓✓ |
| Unsubsidized Federal Stafford Loans (from the FFEL Program) | ✓ | ✗ | ✗ | ✓✓ |
| FFEL PLUS Loans made to graduate or professional students | ✓ | ✗ | ✗ | ✓✓ |
| FFEL PLUS Loans made to parents | ✗ | ✗ | ✗ | ✗ |
| FFEL Consolidation Loans that **don't** include a FFEL PLUS Loan for parents | ✓ | ✗ | ✗ | ✓✓ |
| FFEL Consolidation Loans that **do** include a FFEL PLUS Loan for parents | ✗ | ✗ | ✗ | ✗ |
| Federal Perkins Loans | ✗ | ✗ | ✗ | ✓✓ |

* Must be consolidated into a Direct Consolidation Loan
** To be eligible, borrower must make at least one payment under ICR before July 1, 2028

Federal Student Aid
An OFFICE of the U.S. DEPARTMENT of EDUCATION

*Use this chart to see which federal student loan types are eligible for IBR, ICR, PAYE, and RAP. Some loan types become eligible only after consolidation.*

**Before you consolidate: Consolidation creates a new loan and will change your repayment options. Review your personalized results and confirm how consolidation could affect your existing benefits and payment counts.**

If you have a mix of loan types or disbursement dates, some of your loans may be eligible for certain repayment plans, while others may not be. Log in to our Repayment Calculator to see repayment options based on your specific loan and income information.

## 5 How can I estimate my payment and total amount paid under a different plan?

Use our Repayment Calculator to explore your repayment options. Logging in with your StudentAid.gov account lets you import your loan and income information for more accurate results. You can find examples and screenshots in "Compare Repayment Plans With Our Repayment Calculator" article.

The Repayment Calculator can show estimates for your

- monthly payment amount;
- repayment period;
- potential Public Service Loan Forgiveness (PSLF) or income-driven repayment (IDR) discharge amount;
- principal and interest paid; and
- total amount paid over the life of the loan(s).

While we recommend you use the Repayment Calculator to see personalized estimates, here's an overview of the monthly payment amount calculation and repayment period for each repayment plan:

| IDR Plans | Monthly Payment Amount Calculation | Repayment Period |
|---|---|---|

| | | |
|---|---|---|
| Income-Based Repayment (IBR) Plan | 15% of discretionary income (10% for new borrowers)<br><br>Your monthly payment will never be more than the amount you would pay under the Standard Repayment Plan with a 10-year repayment period. | 25 years (20 years for new borrowers) in repayment<br><br>You are considered a new borrower if your first loan was made on or after July 1, 2014, or you have no loans at the time you take out a new loan on or after July 1, 2014. |
| Income-Contingent Repayment (ICR) Plan* | The lesser of 20% of discretionary income or a monthly payment on a 12-year fixed plan, adjusted based on your income | 25 years |
| Pay As You Earn (PAYE) Repayment Plan* | 10% of discretionary income<br><br>Your monthly payment must be less than what you'd pay under the Standard Repayment Plan with a 10-year repayment period. If the amount you would have to pay under the PAYE Plan is more than what you would have to pay under the Standard Repayment Plan, you won't qualify. | 20 years |

| | | |
|---|---|---|
| Repayment Assistance Plan (RAP) | 1–10% of your adjusted gross income (AGI), divided by 12<br><br>Your monthly payment amount is reduced by $50 for each dependent you claim on your federal tax return. However, your monthly payment may not be less than $10 a month. | 30 years |

*These plans will end no later than July 1, 2028

Fixed monthly payments mean you will pay the same amount every month until the loan is paid off. Graduated payments are lower at first and then increase, usually every two years.

| Fixed Repayment Plans | Monthly Payment Amount Calculation | Repayment Period |
|---|---|---|
| **Extended** | Fixed or Graduated | 25 years |
| **Graduated** | Graduated | 10 years (within 10–30 years for Consolidation Loans) |
| **Standard** | Fixed | 10 years (10–30 years for Consolidation Loans) |
| **Tiered Standard** | Fixed | 10 years for balances under $25,000<br><br>15 years for balances under $50,000<br><br>20 years for balances under $100,000<br><br>25 years for balance over $100,000 |

Before switching, compare how each repayment plan will affect your interest, principal balance, and potential discharge timeline. For example, switching to a plan with a lower monthly payment over a longer repayment period can result in more interest paid over time and increase your timeline to receive IDR discharge.

> **Borrowers who make full, on-time monthly payments on RAP will receive an interest subsidy if their monthly payments don't cover their monthly accrued interest. They may also receive a matching principal payment. Learn more about these benefits.**

## 6 What if I can't afford my monthly payment under a different plan?

If you can't afford your payment on a different plan, you can request to temporarily pause or lower your payments through short-term relief (a deferment or forbearance). If this option makes sense for you, contact your loan servicer to request a deferment or forbearance.

Interest can still accrue (add up) during periods of deferment or forbearance. Deferment and forbearance can also affect loan discharge options, such as Public Service Loan Forgiveness (PSLF) or income-driven repayment (IDR) plan discharge. If you repeatedly miss payments, the consequences become more serious over time such as negative credit impacts and more.

## 7 How do I enroll in a different repayment plan?

Use our Repayment Calculator to explore your repayment options. Logging in with your StudentAid.gov account lets you import your loan and income information for more accurate results. After reviewing your options, select "Apply" for the plan you want to enroll in, and follow the instructions to submit your application.

If you choose an income-driven repayment (IDR) application, you can submit your application online at StudentAid.gov/idr. You must first log in to your StudentAid.gov account to access the IDR application.

**Avoid scams:** Help from your federal loan servicer is free. You never have to pay a company to apply for a repayment plan or manage your federal student loans.

To apply for an IDR plan, you'll need to provide your income information. If you have Direct Loans, the easiest way to do this within the IDR application is by providing consent for us to securely access your financial information directly from the IRS. You can do this by selecting "Provide Approval" under the "Authorization To Retrieve Federal Tax Information" section of the application.

Providing consent to import your federal financial information to your IDR application allows us to process your application faster and will save you time in the future since we'll be able to automatically recertify your IDR plan each year. Alternatively, you can manually provide documentation of income, such as your most recent tax return. If you didn't file taxes, other acceptable income documentation includes paystubs or a letter from your employer.

You can learn how to check the status of your IDR application and more in our "Top FAQs About Income-Driven Repayment Plans" article.

Once you're on your IDR plan, consider signing up for auto pay to make sure your payment is on time and get a discount on your interest rate. Eligible borrowers enrolled in auto pay by Dec. 31, 2026, will benefit from a 1% interest rate reduction through June 30, 2028.

## 8 What should I do if I have a pending IDR application?

### If you have a pending SAVE Plan application

Your loan servicer will deny your SAVE Plan application. You already may have received your denial notice. If you don't apply for a different plan within 90 days of when you receive your notice, you'll receive a final 30-day notice. If you don't act by that deadline, you'll be enrolled in the plan you were on before you applied for the SAVE Plan.

Use our Repayment Calculator today to compare your options and submit a new repayment plan application. Your loan servicer will explain your account status while your new application is pending.

### If you have a pending application for another income-driven repayment (IDR) plan

Log in to StudentAid.gov and review the request on your "My Activity" page.

Your request may show a status such as "Draft," "In Progress," "Cancelled," "In Review," "Action Required," or "Completed."

If you see "Action Required," you'll need to provide more information or a manual signature.

If your servicer needs more time to process your IDR application, it may place your loans in a processing forbearance for no more than 60 days.

## 9 Will my previous payments still count toward IDR discharge or PSLF, and how does the SAVE forbearance affect my progress?

Changing repayment plans doesn't remove qualifying Public Service Loan Forgiveness (PSLF) payments or credited income-driven repayment (IDR) plan payments that you made before entering the SAVE forbearance.

Time spent in the SAVE forbearance **is not eligible for** credit toward PSLF. However, you may buy back certain months you spent in an ineligible deferment or forbearance, including the SAVE forbearance, when you already have 120 months of qualifying employment. If you're pursuing PSLF, you'll reach your required 120 qualifying monthly payments faster by starting payments on a different, PSLF-eligible repayment plan.

Time spent in the SAVE forbearance also doesn't provide credit toward IDR discharge. If you switch to an available IDR plan, you'll be eligible to have any remaining balance on your loans discharged once you reach the necessary number of payments, which depends on your repayment plan.

If you take out a new Direct Consolidation Loan, the qualifying payments made on the Direct Loans (other loan types will not be considered) included in your consolidation loan will be credited to your consolidation loan using a weighted average of those payments.

For example, a borrower with 60 qualifying payments on a Direct Loan with a balance of $30,000 who consolidates their loan with another Direct Loan with a balance of $30,000 with zero qualifying payments will have a new qualifying payment count of 30 payments credited to the new consolidation loan.

## 10 If I'm pursuing PSLF, which repayment plan should I switch to?

Qualifying repayment plans that count toward Public Service Loan Forgiveness (PSLF) include all income-driven repayment (IDR) plans:

- Income-Based Repayment (IBR) Plan
- Income-Contingent Repayment (ICR) Plan
- Pay As You Earn (PAYE) Repayment Plan
- Repayment Assistance Plan (RAP)

Payments under the Tiered Standard Plan **do not** count toward PSLF. Therefore, we recommend that you proactively apply for a different plan to avoid being automatically placed in this plan.

Use our Repayment Calculator to review your options and compare repayment options. Then, use the PSLF Help Tool to confirm that you have eligible Direct Loans and qualifying employment. We recommend you submit a PSLF form each year and when you change jobs.

*Published:* October 2026

---

## Related Articles




LOAN REPAYMENT

## How To Prepare for Student Loan Payments

# Consolidation  # IncomeDrivenRepayment  # LowerPayments




FINANCIAL AID · LOAN REPAYMENT

## Top FAQs About Income-Driven Repayment Plans

# IncomeDrivenRepayment # LoanForgiveness # LowerPayments # OnlineTools # SaveMoney




FAFSA® TIPS · FINANCIAL AID

## FAFSA® Checklist: What Students Need

# Featured  # Freshmen  # GradStudent  # Grants  # OnlineTools

## More Articles

All Articles

Financial Aid